## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA

JOHN STANA and RANDALL WAGNER, individually and on behalf of all others similarly situated,

        Plaintiffs,

    v.

SAS INSTITUTE INC., THE BOARD OF DIRECTORS OF SAS INSTITUTE INC., THE RETIREMENT COMMITTEE OF SAS INSTITUTE INC., and JOHN DOES 1-30,

        Defendants.

Case No. 5:24-CV-00105-D

---

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS THE AMENDED COMPLAINT

WOMBLE BOND DICKINSON (US) LLP

Pressly M. Millen (NC Bar No. 16178)
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Phone:  1.919.755.2135
Fax:  1.919.755.6067
press.millen@wbd-us.com

MORGAN, LEWIS & BOCKIUS LLP

Deborah S. Davidson
Matthew A. Russell
110 North Wacker Drive, Suite 2800
Chicago, IL 60606
Phone:  1.312.324.1000
Fax:  1.312.324.1001
deborah.davidson@morganlewis.com
matthew.russell@morganlewis.com

Jared R. Killeen
2222 Market Street
Philadelphia, PA 19103
Phone:  1.215.963.5478
Fax:  1.215.963.5001
jared.killeen@morganlewis.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................... 1

II. BACKGROUND ................................................................................................. 5

    A. The Plan ................................................................................................. 5

    B. The JPM TDFs ...................................................................................... 5

    C. Plaintiffs' Comparator TDFs ................................................................ 7

    D. The Investor Fund and Plaintiffs' Alleged Comparators ...................... 8

    E. Plaintiffs And Their Plan Investments .................................................. 9

III. ARGUMENT ...................................................................................................... 9

    A. Applicable Pleading Standards .............................................................. 9

    B. Plaintiffs Do Not State a Plausible Challenge to the JPM TDFs. ........ 10

        1. The Court Cannot Infer Imprudence Merely Because the JPM TDFs Allegedly Underperformed a Few Other TDFs at Certain Times. .................................................................................... 11

        2. The Comparator TDFs Are Not Meaningful Benchmarks. ..................... 14

        3. The JPM TDFs Did Not Perform Poorly, Even on Plaintiffs' Terms. ...................................................................................... 19

        4. Allegations About the Plan's IPS Do Not Advance Plaintiffs' Claims. ...................................................................................... 23

    C. Plaintiffs Do Not State a Plausible Challenge to the Investor Fund. ................... 24

        1. Plaintiffs Do Not Have Standing to Challenge the Investor Fund. ........... 24

        2. The Court Cannot Infer Imprudence Merely Because the Investor Fund Allegedly "Underperformed" Other Funds at Certain Times. ......... 25

        3. Plaintiffs Identify No "Meaningful Benchmark" for the Investor Fund. ....................................................................................... 26

        4. The Investor Fund Did Not Perform Poorly, Even on Plaintiffs' Terms. ..................................................................................... 27

    D. Plaintiffs' Derivative Failure-To-Monitor Claim Fails as a Matter of Law. ....... 29

IV. CONCLUSION .................................................................................................. 29

i

**Page(s)**

**Federal Cases**

*Albert v. Oshkosh Corp.*,
   47 F.4th 570 (7th Cir. 2022) ..................................................................................2, 10

*Ali v. Hogan*,
   26 F.4th 587 (4th Cir. 2022) ...........................................................................................24

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
   579 F. Supp. 3d 1133 (N.D. Cal. 2022) ...............................................................8, 13

*Antoine v. Marsh & McLennan Cos., Inc.*,
   No. 22-cv-6637, 2023 WL 6386005 (S.D.N.Y. Sept. 30, 2023) ...........................13, 21, 22, 25

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................................................9, 10

*Beldock v. Microsoft Corp.*,
   No. 22-cv-1082, 2023 WL 3058016 (W.D. Wash. Apr. 24, 2023) ........................2, 13, 14, 19

*Bracalente v. Cisco Sys., Inc.*,
   No. 22-cv-04417, 2023 WL 5184138 (N.D. Cal. Aug. 11, 2023) ...............................12, 13, 14

*Bracalente v. Cisco Sys.*,
   No. 22-cv-04417, 2024 WL 2274523 (N.D. Cal. May 20, 2024).........................12, 13, 16, 24

*Cho v. Prudential Ins. Co. of Am.*,
   No. 19-cv-19886, 2021 WL 4438186 (D.N.J. Sept. 27, 2021).................................................21

*Copperstone v. TCSI Corp.*,
   No. 97-cv-3495, 1999 WL 33295869 (N.D. Cal. Jan. 19, 1999)............................................19

*David v. Alphin*,
   No. 07-cv-11, 2008 WL 5244504 (W.D.N.C. Dec. 15, 2008)................................................24

*Davis v. Old Dominion Freight Line, Inc.*,
   No. 22-cv-990, 2023 WL 5751524 (M.D.N.C. Sept. 6, 2023) .................................................24

*Davis v. Salesforce.com Inc.*,
   No. 20-cv-01753, 2021 WL 1428259 (N.D. Cal. Apr. 15, 2021)............................................17

*Davis v. Salesforce.com, Inc.*,
   No. 21-cv-15867, 2022 WL 1055557 (9th Cir. Apr. 8, 2022)................................2, 15, 16, 17

ii

*Davis v. Wash. Univ. in St. Louis*,
  960 F.3d 478 (8th Cir. 2020) .................................................................2, 11, 14, 16

*DeBruyne v. Equitable Life Assurance Soc'y of the U.S.*,
  920 F.2d 457 (7th Cir. 1990) ...................................................................................10

*Enos v. Adidas Am., Inc.*,
  No. 19-cv-01073, 2021 WL 5622121, *R. & R. adopted*, No. 19-cv-01073,
  2021 WL 5611481 (D. Or. Nov. 30, 2021)................................................................16

*Evans v. Assoc. Banc-Corp.*,
  No. 21-cv-60, 2022 WL 4638092 (E.D. Wis. Sept. 30, 2022) ..................................21

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014)..........................................................................3, 4, 10, 17

*Forman v. TriHealth, Inc.*,
  40 F.4th 443 (6th Cir. 2022) ...................................................................................12

*Gonzalez v. Northwell Health, Inc.*,
  632 F. Supp. 3d 148 (E.D.N.Y. 2022) .......................................................................21

*Hall v. Capital One Fin. Corp.*,
  No: 22-cv-00857, 2023 WL 2333304 (E.D. Va. Mar. 1, 2023)....................................... *passim*

*Hughes v. Nw. Univ.*,
  595 U.S. 170 (2022)....................................................................................11, 12, 20

*Jenkins v. Yager*,
  444 F.3d 916 (7th Cir. 2006) ...................................................................................22

*Johnson v. Parker-Hannifin Corp.*,
  No. 21-cv-00256, 2023 WL 8374525 (N.D. Ohio Dec. 4, 2023) ...........................16

*Kendall v. Pharm. Prod. Dev., LLC*,
  No. 20-cv-71, 2021 WL 1231415 (E.D.N.C. Mar. 31, 2021)......................................... *passim*

*Laboy v. Bd. of Trs. of Bldg. Serv.*,
  513 F. App'x 78 (2d Cir. 2013) ...................................................................................2

*Lange v. Infinity Healthcare Physicians*,
  No. 20-cv-737, 2021 WL 3022117 (W.D. Wis. July 16, 2021)...............................25

*In re LinkedIn ERISA Litig.*,
  No. 20-cv-05704, 2021 WL 5331448 (N.D. Cal. Nov. 16, 2021) ...................................18, 25

*Matney v. Barrick Gold of N. Am.*,
  80 F.4th 1136 (10th Cir. 2023) ....................................................................... *passim*

iii

*Matousek v. MidAmerican Energy Co.*,
  51 F.4th 274 (8th Cir. 2022) ...............................................................................3, 10, 15, 18

*Meiners v. Wells Fargo & Co.*,
  898 F.3d 820 (8th Cir. 2018) ........................................................................ *passim*

*In re Omnicom ERISA Litig.*,
  No. 20-cv-4141, 2021 WL 3292487 (S.D.N.Y. Aug. 2, 2021)..................................25

*Partida v. Schenker, Inc.*,
  No. 22-cv-09192, 2024 WL 1354432 (N.D. Cal. Mar. 29, 2024) ....................................13, 16

*Patterson v. Morgan Stanley*,
  No. 16-cv-6568, 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019)..............................12, 21, 24, 25

*Phillips v. Cobham Advanced Elec. Sols.*,
  No. 23-cv-03785, 2024 WL 3228097 (N.D. Cal. June 28, 2024).....................................13, 14

*Plasterers' Loc. Union No. 96 Pension Plan v. Pepper*,
  663 F.3d 210 (4th Cir. 2011) ...................................................................................10

*Singh v. Deloitte LLP*,
  650 F. Supp. 3d 259 (S.D.N.Y. 2023).......................................................................25

*Smith v. CommonSpirit Health*,
  37 F.4th 1160 (6th Cir. 2022) ........................................................................ *passim*

*Speaks v. U.S. Tobacco Coop., Inc.*,
  486 F. Supp. 3d 974 (E.D.N.C. 2020).........................................................................9

*PBGC ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv.Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013)......................................................................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)....................................................................................................5

*Thole v. U.S. Bank N.A.*,
  590 U.S. 538 (2020)..................................................................................................24

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)..................................................................................................24

*Tullgren v. Booz Allen Hamilton*,
  No. 22-cv-00856, 2023 WL 2307615 (E.D. Va. Mar. 1, 2023)....................................... *passim*

*Veney v. Wyche*,
  293 F.3d 726 (4th Cir. 2002) ...................................................................................23

iv

*Wehner v. Genentech, Inc.*,
   No. 20-cv-06894, 2021 WL 2417098 (N.D. Cal. June 14, 2021).............................18

*White v. Chevron Corp.*,
   No. 16-cv-0793, 2017 WL 2352137 (N.D. Cal. May 31, 2017)..............................11

*Wilcox v. Georgetown Univ.*,
   No. 23-cv-7059, 2024 WL 1739266 (D.C. Cir. Apr. 23, 2024) .............................25

**Federal Statutes**

29 U.S.C. § 1104(a)(1)(B) ......................................................................................1, 2

Case 5:24-cv-00105-D-RN     Document 18     Filed 07/15/24     Page 6 of 35

## I.     INTRODUCTION

SAS Institute Inc. ("SAS") is a technology and data-analytics company based in Cary, North Carolina.  Among other benefits, SAS offers its employees an opportunity to save for retirement through a 401(k) plan, the SAS Retirement Plan ("Plan").  In their First Amended Complaint ("Amended Complaint" or "FAC"), Plaintiffs John Stana and Randall Wagner challenge SAS' decision to continue offering two investment options in the Plan, out of more than 20 funds available to participants since 2018.[1]  Plaintiffs' primary challenge is to the JPMorgan SmartRetirement Passive Blend Target Date Funds ("JPM TDFs"), a popular, highly rated, and low-cost suite of target-date funds ("TDFs").  Plaintiffs also challenge the American Funds Fundamental Investor Fund ("Investor Fund"), another highly rated investment.

Plaintiffs allege nothing about the *process* Defendants used to select or monitor these investments, the proper focus of an imprudence claim under ERISA.  29 U.S.C. § 1104(a)(1)(B); *Kendall v. Pharm. Prod. Dev., LLC*, No. 20-CV-71, 2021 WL 1231415, at *3 (E.D.N.C. Mar. 31, 2021) (Dever, J.).  Instead, Plaintiffs claim the challenged funds were imprudent merely because SAS could have selected different investments that, in hindsight, may have generated even better returns.  For several independent reasons, the Amended Complaint fails to state a claim as a matter of law.

***First***, Plaintiffs cannot plausibly plead a fiduciary breach based on investment performance alone.  As courts both within and beyond the Fourth Circuit have held, "ERISA simply does not provide a cause of action for fiduciary breaches based solely on a fund participant's disappointment in the fund's performance."  *Hall v. Capital One Fin. Corp.*, No: 22-cv-00857, 2023 WL 2333304, at *6 (E.D. Va. Mar. 1, 2023) (dismissing similar challenge to TDFs); *Tullgren v. Booz Allen*

---

[1] The original complaint included a third named plaintiff, Betsy Enstrom, who was dropped from the Amended Complaint.  *See* Dkt. No. 1.

*Hamilton*, No. 22-cv-00856, 2023 WL 2307615, at *6 (E.D. Va. Mar. 1, 2023) (same); *see also Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1154 n.15 (10th Cir. 2023); *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022); *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822-23 (8th Cir. 2018); *Laboy v. Bd. of Trs. of Bldg. Serv.*, 513 F. App'x 78, 79-80 (2d Cir. 2013); *Beldock v. Microsoft Corp.*, No. 22-cv-1082, 2023 WL 3058016, at *3 (W.D. Wash. Apr. 24, 2023) (collecting cases). Different investment strategies are *expected* to perform differently in varying market conditions for all sorts of reasons, and it is always possible to find some other fund that performed better during a particular period. That is why "[m]erely pointing to another investment that has performed better in a . . . snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision." *CommonSpirit*, 37 F.4th at 1166. That is all Plaintiffs do here, and so their claims fail.

**Second**, even if relative performance alone could support a fiduciary-breach claim, the Amended Complaint does not allege a sound basis of comparison for the funds Plaintiffs challenge. Every Court of Appeals to address similar claims—including the Sixth, Seventh, Eighth, Ninth, and Tenth Circuits—has held that to plausibly allege that a "prudent fiduciary in like circumstances" would have removed a given investment, 29 U.S.C. § 1104(a)(1)(B), the complaint must at least establish a "meaningful benchmark" for evaluating the fund at issue.[2] This Court also has agreed in dismissing similar claims (filed by Plaintiffs' same counsel) that a 401(k) plan's funds were too expensive. *Kendall*, 2021 WL 1231415, at *4, *6. This "challenging" pleading burden demands more than simply *declaring* that an alternative is "similar" or finding a few funds with "some similarities." *Id.* Rather, Plaintiffs must plead non-conclusory facts showing the

---

[2] *See CommonSpirit*, 37 F.4th at 1166; *Albert v. Oshkosh Corp.*, 47 F.4th 570, 581 (7th Cir. 2022), *reh'g denied*, No. 21-2789, 2022 WL 4372363 (7th Cir. Sept. 21, 2022); *Meiners*, 898 F.3d at 822; *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020); *Davis v. Salesforce.com, Inc.*, No. 21-cv-15867, 2022 WL 1055557, at *2 n.1 (9th Cir. Apr. 8, 2022); *Matney*, 80 F.4th at 1148.

proposed comparators are, in fact, comparable, such that their relative performance might allow the Court to draw a reasonable inference of an imprudent *process* for monitoring the funds being challenged. *See, e.g.*, *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 281 (8th Cir. 2022).

Plaintiffs do not even try to satisfy this pleading burden. The Amended Complaint alleges nothing about the JPM TDFs' underlying investments, asset allocations, strategies, risk profiles, or fees. It likewise does not say whether Plaintiffs' proposed "comparator TDFs" are like the JPM TDFs in *any* of these respects. As for the Investor Fund, Plaintiffs only declare that a handful of cherry-picked funds are "similar" merely because they—along with more than *1,400 other* funds— fall within the same broad "category" assigned by Morningstar, an independent investment-research company. FAC ¶¶ 75, 90. These allegations fall far short of Plaintiff's pleading burden.

Regardless, public information confirms these funds are different in critical ways. As one example, the JPM TDFs use a "to retirement" strategy, meaning they reach their most conservative asset allocation *at* the designated retirement date (e.g., 2050). By contrast, all but one of Plaintiffs' comparator TDFs use a "through retirement" strategy, meaning they continue to de-risk years or even decades *after* the target date. Comparing funds with such apples-to-oranges strategies does not sustain a fiduciary-breach claim. *See, e.g.*, *Hall*, 2023 WL 2333304, at *6 (dismissing complaint that "remain[ed] silent on whether the Comparator TDFs use 'through' or 'to' retirement glidepaths"); *Tullgren*, 2023 WL 2307615, at *6 (same); *Matney*, 80 F.4th at 1154 n.14 (same).

***Third***, even if Plaintiffs' comparator funds *were* "meaningful benchmarks" (they are not), the JPM TDFs and Investor Fund did not perform poorly by comparison. To the contrary, the Amended Complaint's own allegations and graphs undermine Plaintiffs' claims by focusing on modest, short-term performance of a magnitude that courts routinely find insufficient to suggest a fiduciary breach. In fact, the Amended Complaint itself shows the JPM TDFs and Investor Fund often *outperformed* Plaintiffs' comparators—and their own attorneys have even cited the JPM

3

TDFs as a *prudent* alternative to different TDFs in other litigation.  Moreover, the market's strong endorsement of both the JPM TDFs and Investor Fund, as reflected in the same public sources Plaintiffs cite, only confirms the implausibility of their contention that these funds were among "the worst" in the market or wholly unsuitable for inclusion in any 401(k) plan.  FAC ¶ 91.

**Fourth**, Plaintiffs' tacked-on allegation that Defendants violated the Plan's Investment Policy Statement ("IPS") adds nothing.  At no point did the IPS require removing either the JPM TDFs or the Investor Fund; to the contrary, the IPS says merely that, "*[i]n [their] discretion,*" the fiduciaries "*may* decide to place a fund on a 'watch list' if the fund has not met its performance objectives."  Ex. A, Decl. of J. Killeen, Ex. 1, Dec. 2022 IPS (emphasis added).[3]  Far from suggesting imprudence, the IPS underscores the Plan fiduciaries' robust monitoring process.

**Fifth**, all else aside, the Court should dismiss Plaintiffs' challenge to the Investor Fund because neither of the Plaintiffs ever selected it, meaning they lack Article III standing to assert this claim.

**Finally**, the Court should dismiss Count II's derivative claim that SAS and its Board of Directors ("Board") breached their duty to monitor the Retirement Committee (the "Committee"), because Plaintiffs do not plausibly allege any underlying breach by the Committee.

For all of these reasons, the Court should dismiss the Amended Complaint with prejudice.

---

[3] Exhibits to this brief, cited herein as "Ex. _," are attached to the Declaration of J. Killeen and Index of Exhibits.

## II. BACKGROUND[4]

### A. The Plan

The Plan is a participant-directed, defined contribution plan under ERISA. FAC ¶ 43. This means participants can design their own individualized portfolio from a menu of investment options. *Id.* ¶¶ 6-7, 13, 43. SAS' Board delegated authority to the Committee, which in turn is responsible for selecting and monitoring the Plan's investment options. *Id.* ¶¶ 28, 31. As the Amended Complaint acknowledges, the Committee also engaged an outside investment consultant, Aon Investments, to assist it in overseeing Plan investments. *Id.* ¶ 20.

Throughout the putative class period, the Plan's investment options have spanned the risk/reward spectrum and various asset categories (*e.g.*, bonds; small-, mid-, and large-cap stocks; and international equities). The Plan offers a mix of actively managed funds and passively managed index funds, the JPM TDFs, and a stable value fund. *See* Ex. 2, 2022 Form 5500, at Sched. H, line 4i (PDF p. 37). The Plan offers most of these options—including the JPM TDFs—as collective investment trusts ("CITs"), a low-cost investment vehicle available only to certain qualified plans. *Id.*; *see also* FAC ¶ 16.

### B. The JPM TDFs

As the Amended Complaint explains, TDFs "are designed to provide a single diversified investment vehicle" for participants who prefer a simpler way to invest for retirement. FAC ¶ 15.

---

[4] This summary is based on the Amended Complaint and public documents cited therein. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (courts may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"). Courts routinely consider similar documents in resolving motions to dismiss ERISA claims. *See, e.g.*, *CommonSpirit*, 37 F.4th at 1168 (district court properly considered fund-related data "because it was central to [plaintiff's claim], publicly available, and judicially noticeable"); *Meiners*, 898 F.3d at 823 (district court properly considered fund prospectuses). Should the Court find that it cannot consider a particular document at this stage, Defendants respectfully ask that the Court exclude such document, rather than convert this into a motion for summary judgment.

TDFs invest in an underlying portfolio that gradually rebalances toward a more conservative asset allocation as the selected "target" retirement year approaches. *Id.* Like most TDF series, the Plan offers multiple "vintages" of the JPM TDFs, which cover each five-year period from 2020 through 2060, as well as a "Retirement" vintage. *Id*. ¶¶ 14-19; Ex. 2, 2022 Form 5500 at PDF p. 37.

A TDF's initial asset allocation—when the retirement date is decades away—consists primarily of equity investments, which have greater potential for returns and growth but also can be more volatile and carry greater risk. *See, e.g.*, Ex. 3, *Target Date Retirement Funds – Tips for ERISA Plan Fiduciaries* (U.S. Dept. of Labor, Feb. 2013). As the target date approaches (and sometimes continuing after retirement), the asset allocation "de-risks" to a greater proportion of conservative, less volatile investments (such as bonds or cash instruments). *Id.* This ongoing shift in asset allocation over time is called the fund's "glide path." *Id.*

Different TDFs use different glide path strategies. In particular, the Department of Labor emphasizes that "[i]t is important to know whether [the] glide path uses a 'to retirement' or a 'through retirement' approach." Ex. 3. A TDF with a "to retirement" strategy gradually reduces equity exposure sooner, so the fund reaches its most conservative allocation *at* the stated retirement date. *Id.* By contrast, a "through retirement" approach gradually reduces equity exposure through and *beyond* the target date, so that the fund does not reach its most conservative asset allocation until many years after retirement. *Id.* The JPM TDFs use a "to retirement" strategy. *See* Ex. 4, *Morningstar 2020 Target-Date Strategy Landscape* ("2020 Morningstar Rpt.") at 7.

TDFs have other key differences. For example, like other investments, TDFs may be characterized as "actively" or "passively" managed.[5] And some TDFs use a "blend" or "hybrid"

---

[5] In an actively managed investment, "the portfolio manager actively makes investment decisions and initiates buying and selling of securities in an effort to maximize return" and outperform the market. *CommonSpirit*, 37 F.4th at 1163 (citation omitted). In a passively managed (or "index")

6

strategy, meaning they invest in both passively and actively managed underlying funds. *See* Ex. 5, *Morningstar 2021 Target-Date Strategy Landscape* ("2021 Morningstar Rpt.") at 24. As their name suggests, the JPM TDFs use a "blend" approach. *Id.*

Different TDF managers also use materially different strategies for a fund's underlying investments. For example, according to Morningstar—which Plaintiffs allege "is used and trusted by virtually all financial professionals and fiduciaries" (FAC ¶ 63)—the managers of the JPM TDFs "mix it up on the equity side," by using passively managed index funds in asset categories for which it is more difficult to outperform the market using active management (e.g., large-cap stocks), while using "active emerging-markets equity managers, an asset class where cheap active funds have had solid odds of success over the last decade." Ex. 5, 2021 Morningstar Rpt. at 26.

### C. Plaintiffs' Comparator TDFs

Plaintiffs compare the JPM TDFs to a random selection of allegedly "similar" TDFs— although the Amended Complaint is not clear about the funds on which it relies. First, Plaintiffs define a set of "Comparator Funds" to include four TDF families: (1) the T. Rowe Price Retirement Target Date Funds; (2) the American Funds Target Date Retirement Funds; (3) the TIAA-CREF Lifecycle Index Funds; and (4) the MFS Lifetime Target Date Series. FAC ¶ 71. Ignoring its own defined term, however, the Amended Complaint elsewhere cites two other TDF suites: the T. Rowe Price Retirement Hybrid Target Date Funds (*id.* ¶ 78), and the MassMutual Select T. Rowe Price Retirement Funds (*id.* ¶ 88). Collectively, Defendants will refer to this random assortment as the "Comparator TDFs." The Amended Complaint then compares *only* the trailing three-year annualized returns of a *single* JPM TDF vintage (2040) to those of a single vintage of

---

fund, by contrast, the managers create "a fixed portfolio structured to match the overall market or a preselected part of it," and returns therefore are intended to track, not outperform, the designated market index. *Id.* (citation omitted).

five Comparator TDFs (omitting the MassMutual fund). *Id.* ¶ 78. It also compares three vintages of the JPM TDFs (2020, 2030, and 2040) to corresponding vintages of five Comparator TDFs (omitting the TIAA-CREF funds) based on several "Modern Portfolio Theory" metrics. *Id.* ¶ 88.

The Amended Complaint does not allege any facts about the Comparator TDFs, such as their holdings, risk profiles, asset allocations, fees, or whether they use a "to" or "through" glidepath. Public information, however, confirms that *unlike* the JPM TDFs, all but one Comparator TDF uses a "through" strategy. Ex. 4, 2020 Morningstar Rpt. at 7; *see also Hall*, 2023 WL 2333304, at *6 & n.5 (relying on publicly available Morningstar "Target-Date Strategy Landscape" documents to dismiss similar claim challenging TDF suite); *Tullgren*, 2023 WL 2307615, at *6 & n.4 (same); *CommonSpirit*, 37 F.4th at 1168 (same); *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1145 (N.D. Cal. 2022) (taking judicial notice of Morningstar report), *appeal pending*, No. 22-16268 (9th Cir. Aug. 22, 2022). The same sources also show that, unlike the JPM TDFs' "blend" strategy, at least two Comparator TDFs (American Funds and T. Rowe Price) invest *only* in actively managed funds, Ex. 4, 2020 Morningstar Rpt. at 12, 29, while another (TIAA-CREF) invests *only* in passively managed funds, Ex. 6, *At-a-Glance: TIAA-CREF Lifecycle Index Funds*.

Plaintiffs also compare the JPM TDFs to the Morningstar Lifetime Moderate Index. FAC ¶ 78. This Morningstar Lifetime Moderate Index, however, is not an investable fund, but rather a composite index based on the average returns of the hundreds of different TDFs within a broader category—meaning it includes TDFs with "to," "through," active, passive, and "blend" or "hybrid" strategies. *Hall*, 2023 WL 2333304, at *7 (rejecting comparison of BlackRock TDFs to the S&P Index because "the S&P Index is not an actual fund"); *Tullgren*, 2023 WL 2307615, at *7 (same).

### D. The Investor Fund and Plaintiffs' Alleged Comparators

Plaintiffs likewise base their challenge to the Investor Fund on comparisons to a few other

funds. The Amended Complaint labels three funds as "Large Blend Comparators": (1) the JPMorgan US Equity Fund; (2) the Jensen Quality Growth Fund; and (3) the Touchstone Large Cap Focused Fund. FAC ¶ 90. But Plaintiffs then use different funds in comparing trailing three-year returns and other metrics, replacing the Jensen Fund with the State Street US Core Equity Fund. *Id.* ¶¶ 93, 95. Together, Defendants refer to these as the "Investor Fund Comparators."

The Amended Complaint alleges nothing about the Investor Fund or the Investor Fund Comparators, such as their holdings, asset allocations, risk profiles, fees, or other attributes. Instead, Plaintiffs merely declare that these other funds are "meaningful comparators," because "Morningstar places all four funds in the Large Blend Category"—which, by Plaintiffs' own admission, had more than *1,400 funds* in 2018. *Id.* ¶¶ 75, 90-92. Plaintiffs also allege the Investor Fund's trailing three-year annualized returns lagged Morningstar's Large Blend Index, *id.* ¶¶ 90-91, leaving these allegations with the same deficiencies as those concerning the JPM TDFs.

### E. Plaintiffs And Their Plan Investments

Plaintiffs are two former SAS employees and current or former Plan participants. FAC ¶¶ 20-21. Together, they allege that, during the putative class period, they invested their Plan accounts in two vintages of the JPM TDFs: the 2025 and 2030 funds. *Id.* Neither Plaintiff alleges that he ever invested in the Investor Fund. *See id.*

## III. ARGUMENT

### A. Applicable Pleading Standards

Plaintiffs must plead "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Speaks v. U.S. Tobacco Coop., Inc.*, 486 F. Supp. 3d 974, 980 (E.D.N.C. 2020) (Dever, J.), *aff'd*, 31 F.4th 838 (4th Cir. 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must disregard legal assertions and "mere conclusory statements," which are not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 678. A claim is not plausible if the "well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. That is, alleging facts that are equally consistent with both lawful and unlawful conduct does not "nudge" a claim "from conceivable to plausible." *Id.* at 680 (citation omitted).

In the ERISA context, a motion to dismiss is an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014); *see also Albert*, 47 F.4th at 577. Among other reasons, "the prospect of discovery" in these cases is "ominous" and "elevates the possibility that a plaintiff with a largely groundless claim will simply take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value." *PBGC ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.* ("*St. Vincent*"), 712 F.3d 705, 718-19 (2d Cir. 2013) (citation omitted). Therefore, courts must apply "careful, context-sensitive scrutiny of a complaint's allegations." *Dudenhoeffer*, 573 U.S. at 425.

### B. Plaintiffs Do Not State a Plausible Challenge to the JPM TDFs.

Plaintiffs' primary claim is that Defendants breached ERISA's duty of prudence by offering the JPM TDFs in the Plan. However, ERISA requires "prudence, not prescience," *DeBruyne v. Equitable Life Assurance Soc'y of the U.S.*, 920 F.2d 457, 465 (7th Cir. 1990) (citation omitted), and "[c]ourts do not measure a fiduciary's prudence using 20/20 hindsight." *Kendall*, 2021 WL 1231415, at *3. Rather, the fiduciary "process is what ultimately matters, not the results." *Matousek*, 51 F.4th at 278; *see Plasterers' Loc. Union No. 96 Pension Plan v. Pepper*, 663 F.3d 210, 216 (4th Cir. 2011). Here, Plaintiffs say nothing about Defendants' process for monitoring the JPM TDFs (aside from conceding the fiduciaries adopted a written IPS and engaged an expert investment advisor to help, FAC ¶¶ 20, 25). Therefore, Plaintiffs must allege "circumstantial factual allegations" from which the Court "may reasonably *infer* . . . the process was flawed." *St. Vincent*, 712 F.3d at 718-19 (emphasis added) (internal quotations and citation

10

omitted); *see also Kendall*, 2021 WL 1231415, at *4 (same).

The Amended Complaint comes nowhere close to meeting these standards. Plaintiffs' claim boils down to just one circumstantial "fact" to support their imprudence theory: Defendants did not remove the JPM TDFs from the Plan when a few other TDFs, chosen by Plaintiffs, had, at times, better short-term returns. The performance differentials Plaintiffs cite are neither remarkable nor anywhere near the magnitude that could sustain a claim that offering the JPM TDFs fell outside "the range of reasonable judgments a fiduciary may make." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022).

### 1. The Court Cannot Infer Imprudence Merely Because the JPM TDFs Allegedly Underperformed a Few Other TDFs at Certain Times.

The Amended Complaint rests on a single theory of fiduciary breach: some vintages of the JPM TDFs had lower returns during parts of the putative class period than some other TDFs. Courts have widely rejected this theory of liability, both within the Fourth Circuit and beyond.

Nothing in ERISA requires selecting "the best performing fund." *Meiners*, 898 F.3d at 823. Accordingly, "[i]t is uniformly recognized imprudence cannot be inferred based solely on allegations identifying the existence of . . . better performing alternative funds." *Matney*, 80 F.4th at 1154 n.15 (collecting cases).[6] The Sixth Circuit recently elaborated on these principles:

> Disappointing performance in the near term and higher costs do not by themselves show "deficient decision-making, especially when we account for competing explanations and other common sense aspects of long-term investments." Different services, investment strategies, and investor preferences invariably lead to a spectrum of options—and in turn a spectrum of . . . performance outcomes. As a result, side-by-side comparisons "of how two funds performed in a narrow window

---

[6] *See, e.g.*, *Wash. Univ.*, 960 F.3d at 486 (affirming dismissal despite "no question" that one fund "performed more poorly than [comparators] over certain periods of time"); *Meiners*, 898 F.3d at 822-23 ("[T]hat one fund with a different investment strategy ultimately performed better does not establish anything about whether the Wells Fargo TDFs were an imprudent choice."); *White v. Chevron Corp.*, No. 16-cv-0793, 2017 WL 2352137 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453, 455 (9th Cir. 2018) ("[p]oor performance, standing alone, is not sufficient to create a reasonable inference that plan administrators" acted imprudently).

11

> of time, with no consideration of their distinct objectives, will not tell a fiduciary which is the more prudent long-term investment option."

*Forman v. TriHealth, Inc.*, 40 F.4th 443, 449 (6th Cir. 2022) (citations omitted).

This formulation makes sense, as a fiduciary's task is prospective. Prudent fiduciaries therefore should *not* focus solely on past performance, but rather must consider how an investment is expected to perform in the future (among other factors). *See, e.g.*, *Kendall*, 2021 WL 1231415, at \*3. "ERISA does not require clairvoyance on the part of plan fiduciaries, nor does it countenance opportunistic Monday-morning quarter-backing on the part of lawyers and plan participants who, with the benefit of hindsight, have zeroed in on the underperformance of certain investment options." *Patterson v. Morgan Stanley*, No. 16-cv-6568, 2019 WL 4934834, at \*17 (S.D.N.Y. Oct. 7, 2019). Further, imposing ERISA liability where a claim is based solely on purported underperformance would contradict the Supreme Court's recent guidance that courts must give due regard to "the range of reasonable judgments a fiduciary may make." *Hughes*, 595 U.S. at 177. Adopting an "underperformance-only" theory of liability would "flatten this nuanced prudence evaluation into a one-dimensional comparison" that considers only performance data. *Bracalente v. Cisco Sys., Inc.*, No. 5:22-cv-04417, 2023 WL 5184138, at \*4 (N.D. Cal. Aug. 11, 2023) ("*Bracalente I*"). Thus, "the weight of authority [holds] ERISA claims based solely on allegations of underperformance insufficient." *Bracalente v. Cisco Sys.*, No. 22-cv-04417, 2024 WL 2274523, at \*11 (N.D. Cal. May 20, 2024) ("*Bracalente II*").

Here, Plaintiffs compare the JPM TDFs to just five or six alternatives, using only some vintages, and only at discrete times. This is the same approach that numerous courts—including courts within the Fourth Circuit—have rejected in dismissing similar challenges to other TDFs. For example, in both *Hall* and *Tullgren,* plaintiffs claimed a suite of BlackRock TDFs were "significantly worse performing" than four allegedly prudent alternatives (including two of the

12

same comparators Plaintiffs cite here, T. Rowe Price and American Funds). The court dismissed both complaints, because they "allege[d] nothing beyond data allegedly indicating the BlackRock TDFs' disappointing performance relative to Plaintiffs' preferred alternatives over the course of a limited period of time[.]" *Hall*, 2023 WL 2333304, at *5-6; *Tullgren*, 2023 WL 2307615, at *5-6 (same). As the court reasoned in *Hall*, the mere fact "[t]hat the BlackRock TDFs were allegedly outperformed by some other TDFs at some points during a three- or five-year window, without more, does not suggest that offering the BlackRock TDFs fell outside the 'range of reasonable judgments' that fiduciaries may make." 2023 WL 2333304, at *5-6. Many other courts have also rejected nearly identical challenges to TDFs offered in other 401(k) plans.[7]

As in the above cases, the only indicium of imprudence in Plaintiffs' Amended Complaint is the alleged underperformance of the JPM TDFs over a short timeframe (*i.e.*, a three-year trailing period), as compared to a handful of supposedly "peer" TDFs and one index. But "the case law teaches that underperformance *alone* cannot substantiate an ERISA imprudence claim." *Bracalente I*, 2023 WL 5184138, at *4. And that is true even if Plaintiffs had alleged longer-term underperformance, as opposed to the short-term performance they allege here. *See, e.g.*, *Phillips*, 2024 WL 3228097, at *8 (dismissing imprudence claim despite the "sheer length of underperformance," extending even before the putative class period, where plaintiffs alleged only TDFs' "poor performance"). Because the Amended Complaint offers only underperformance allegations, Plaintiffs' imprudence claim fails as a matter of law.

---

[7] *See, e.g.*, *Beldock*, 2023 WL 3058016, at *3; *Antoine v. Marsh & McLennan Cos., Inc.*, No. 22-cv-6637, 2023 WL 6386005, at *9-11 (S.D.N.Y. Sept. 30, 2023); *Bracalente I*, 2023 WL 5184138, at *4; *Bracalente II*, 2024 WL 2274523, at *11; *Partida v. Schenker, Inc.*, No. 22-cv-09192, 2024 WL 1354432, at *7 (N.D. Cal. Mar. 29, 2024); *Anderson*, 579 F. Supp. 3d at 1147; *Phillips v. Cobham Advanced Elec. Sols.*, No. 23-cv-03785, 2024 WL 3228097, at *7-8 (N.D. Cal. June 28, 2024).

13

Plaintiffs' reliance on the "Modern Portfolio Theory" cannot salvage this claim. FAC ¶¶ 83-89. By Plaintiffs' own admission, the cited Modern Portfolio Theory factors are merely alternative ways to measure past performance. *See id*. But, as other courts have held, "simply providing metrics or opinions further describing the [TDFs'] performance" does not cure the fundamental problem in relying on past performance to create an inference of imprudence. *Bracalente I*, 2023 WL 5184138, at *5 (citing *Hall*, 2023 WL 2333304, at *6; *Beldock*, 2023 WL 3058016, at *3); *see also Phillips*, 2024 WL 3228097, at *8 (noting "Modern Portfolio Theory" factors like "Beta" are only "a performance metric"). Here again, *Hall* and *Tullgren* are instructive. After dismissal of the complaints in both cases, plaintiffs amended to add similar allegations about the challenged TDFs' Sharpe ratio (one of the Modern Portfolio Theory factors Plaintiffs cite, FAC ¶ 86), as well as new comparisons to the S&P Target Date Index (a non-investible index like the Morningstar Lifetime Moderate Index). *Hall*, 2023 WL 2333304, at *6; *Tullgren*, 2023 WL 2307615, at *6. The court again dismissed both complaints, in part because the new details were "merely additional measurements of investment performance." *Id.* The same holds true here.

### 2. The Comparator TDFs Are Not Meaningful Benchmarks.

Plaintiffs' challenge to the JPM TDFs also fails because they do not plausibly allege a "meaningful benchmark." *Meiners*, 898 F.3d at 822. Without one, variations in performance are unsurprising, and "the fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether the [challenged] TDFs were an imprudent choice at the outset." *Id.* at 823; *see also Wash. Univ.*, 960 F.3d at 485 ("Comparing apples and oranges is not a way to show that one is better or worse than the other.").

Every Court of Appeals to consider this principle has adopted it, including when affirming dismissal of similar challenges to TDFs. *See Meiners*, 898 F.3d at 823 & n.2 (Vanguard TDFs were not a "sound basis for comparison—a meaningful benchmark" for the disputed Wells Fargo

14

TDFs); *CommonSpirit*, 37 F.4th at 1167 (comparator TDFs were not meaningful benchmarks, despite being "sponsored by the same company, managed by the same team, and us[ing] a similar allocation of investment types" and glidepath, as they had "distinct goals and distinct strategies"); *Davis*, 2022 WL 1055557, at *2 n.1 (affirming dismissal of challenge to TDFs because complaint did not allege a meaningful benchmark); *Matney*, 80 F.4th at 1148 (same). Offering a meaningful benchmark requires more than declaring that two funds are "similar" or identifying other funds with "some similarities." *Meiners*, 898 F.3d at 823. Rather, this pleading standard demands that Plaintiffs allege facts sufficient to show a "like-for-like comparison." *Matousek*, 51 F.4th at 279-80.

Plaintiffs do not even try to meet this standard. The Amended Complaint alleges *nothing* about the Comparator TDFs, much less that they "hold similar securities, have similar investment strategies, [or] reflect a similar risk profile" as the JPM TDFs. *Hall*, 2023 WL 2333304, at *6 (quoting *Matousek*, 51 F.4th at 281). Specifically, Plaintiffs are "silent on whether the Comparator TDFs use 'through' or 'to' retirement glidepaths; whether the Comparator TDFs invest only in actively-managed or passively-managed funds; or how the Comparator TDFs' underlying equity and bond funds are allocated among the types and categories of possible equity and bond funds." *Id*. This information was available to Plaintiffs, but they chose not to include it. And presumably that is because this information shows that the comparators are not comparable benchmarks.

***First***, the JPM TDFs use a "**to** retirement" strategy, whereas all but one of the six Comparator TDFs use a "**through**" strategy. *Supra* at 5-6. The DOL highlights this as an "important" difference, *id*., and it alone makes the Comparator TDFs inapt benchmarks for the JPM TDFs, because they "hav[e] materially different investment strategies." *Matney*, 80 F.4th at 1154 n.14 (affirming dismissal where plan's TDFs used a "to retirement" strategy, whereas the

15

comparator TDFs used a "through" glidepath); *CommonSpirit*, 37 F.4th at 1167 (TDFs with "distinct goals and distinct strategies" are "inapt comparators"); *Hall*, 2023 WL 2333304 at *6 (dismissing challenge to BlackRock TDFs because plaintiffs did not allege whether the comparator TDFs used "'through' or 'to' retirement glidepaths"); *Tullgren*, 2023 WL 2307615, at *6 (same); *Johnson v. Parker-Hannifin Corp.*, No. 21-cv-00256, 2023 WL 8374525, at *1 (N.D. Ohio Dec. 4, 2023), *appeal filed*, No. 24-3014 (6th Cir. Jan. 4, 2024) (same).

**Second,** the JPM TDFs utilize a "blend" strategy, holding a strategic mix of investments in both passive and active funds. *Supra* at 6. However, at least two of the Comparator TDFs— American Funds and T. Rowe Price—invest *only* in actively managed funds, while another— TIAA-CREF—invests *only* in passive funds. *Id.* These are not proper benchmarks as a matter of law. *See, e.g.*, *CommonSpirit*, 37 F.4th at 1167 (finding TDFs that invested in passive funds were inapt comparators for those invested in active funds, even where both were offered by the *same* manager); *Wash. Univ.*, 960 F.3d at 485 (rejecting comparison of active to passive funds); *Kendall*, 2021 WL 1231415, at *9 ("Comparing actively-and passively-managed funds . . . cannot create a meaningful benchmark.") (citations omitted); *Bracalente II*, 2024 WL 2274523, at *8 (same); *Partida*, 2024 WL 1354432, at *7 (same); *Enos v. Adidas Am., Inc.*, No. 19-cv-01073, 2021 WL 5622121, at *7 (D. Or. Aug. 26, 2021) (rejecting TDF challenge where plaintiffs did not "adequately articulate[] why passively managed funds serve as an appropriate benchmark for measuring the success of an actively managed fund"), *R. & R. adopted*, No. 19-cv-01073, 2021 WL 5611481 (D. Or. Nov. 30, 2021).

In fact, the Ninth Circuit confronted this issue in a case filed by Plaintiffs' same counsel, alleging fiduciaries breached their duties by *not offering* the very same JPM TDFs that Plaintiffs now say are imprudent here. *See Davis*, 2022 WL 1055557, at *2. In *Davis*, plaintiffs claimed it

was imprudent to offer a suite of JPMorgan SmartRetirement TDFs that invest in actively managed funds, when that plan should have instead offered the lower-cost "blend" JPM TDFs at issue here. That is, Plaintiffs' counsel used the same JPM TDFs they claim are imprudent here as a *prudent benchmark* in *Davis*. The district court dismissed this claim because, despite "some similarities" in the TDF suites, the JPM TDFs here "have 'some passive funds underlying'" them and, therefore, "are not meaningful benchmarks for the actively managed" alternative. *Davis v. Salesforce.com Inc.*, No. 20-cv-01753, 2021 WL 1428259, at *5 (N.D. Cal. Apr. 15, 2021). The Ninth Circuit affirmed dismissal of that claim, ruling that "plaintiffs have not plausibly alleged that defendants breached the duty of prudence by failing to adequately consider passively managed mutual fund alternatives to the actively managed funds offered by the plan." *Davis*, 2022 WL 1055557, at *2 n.1.

**Third,** the Amended Complaint also alleges nothing about the holdings underlying either the JPM TDFs or the Comparator TDFs. In fact, the Comparator TDFs have materially different allocations and concentrations. To take one example (of many), both the T. Rowe Price and American Funds TDFs target an above-average equity exposure, relative to the broader TDF universe. Ex. 4, 2020 Morningstar Rpt. at 8. This strategy will benefit investors when equities perform well (as in the more recent years covered by the putative class period)—but will harm them when equities perform poorly. By contrast, the JPM TDFs "mix it up on the equity side" by using "active emerging-markets equity managers, an asset class where cheap active funds have had solid odds of success over the last decade." *Id.* at 26. Details such as these are critical in understanding how the JPM TDFs and Comparator TDFs compare and why their performance may

17

differ.[8]  But the Amended Complaint ignores all of them.

*Finally*, Plaintiffs also cite the "Morningstar Lifetime Moderate Index," which they again simply declare is an "appropriate" comparator.  FAC ¶¶ 78, 81.  But the Amended Complaint offers no allegations as to *why* the index is a meaningful benchmark.  Without such allegations, Plaintiffs have not shown the Morningstar Lifetime Moderate Index shared the same "styles and strategies to support a finding of 'meaningful benchmark' to the challenged TDFs."  *Wehner v. Genentech, Inc.*, No. 20-cv-06894, 2021 WL 2417098, at * 8 (N.D. Cal. June 14, 2021).  Indeed, the Morningstar Lifetime Moderate Index suffers from the same problems making the other Comparator TDFs inapt benchmarks—it does not differentiate between funds with different investment attributes, including "passive" versus "active" underlying investments, "to" versus "through" retirement glidepaths, varying equity and bond allocations, and more.  To the contrary, courts routinely find that broad market indices like this are not meaningful benchmarks because they are not investible funds, do not share the "same overall purpose and strategy," and reflect only the aggregate performance of myriad different investments and strategies.  *See, e.g.*, *In re LinkedIn ERISA Litig.*, No. 20-cv-05704, 2021 WL 5331448, at *9 (N.D. Cal. Nov. 16, 2021) (dismissing claim based on comparison to index); *Hall*, 2023 WL 2333304, at *7 (rejecting comparison of BlackRock TDFs to the S&P Index, because "the S&P Index is not an actual fund"); *Tullgren*, 2023 WL 2307615, at *7 (same).

In short, Plaintiffs' failure to offer a "meaningful benchmark" is fatal to satisfying their pleading burden.  All TDFs are not the same, and pointing to past performance relative to inapt comparators does not support a claim of imprudence under ERISA.  *See, e.g.*, *CommonSpirit*, 37

---

[8] *See, e.g.*, *Meiners*, 898 F.3d at 823 & n.2 (finding Vanguard TDFs were not a proper comparator for Wells Fargo TDFs in part due to different allocations to bonds); *Matousek*, 51 F.4th at 282 (one fund's focus on "value" made it an inapt comparator for another focused on "growth").

F.4th at 1167; *Hall*, 2023 WL 2333304, at \*6; *Tullgren*, 2023 WL 2307615, at \*6.

### 3. The JPM TDFs Did Not Perform Poorly, Even on Plaintiffs' Terms.

Finally, even if Plaintiffs' comparators were apt (they are not), their premise that the JPM TDFs "underperformed" the Comparator TDFs is misplaced. To start, the Amended Complaint does not allege anything about most JPM TDF vintages. Plaintiffs instead rely almost entirely on the 2040 vintage, saying more information is attached in "Appendix A" (which contains only a series of graphs). FAC ¶¶ 78, n.8. These are not well-pleaded facts that support a claim. *See, e.g.*, *Copperstone v. TCSI Corp.*, No. 97-cv-3495, 1999 WL 33295869, at \*12 (N.D. Cal. Jan. 19, 1999) ("Despite the quantity of colorful charts . . . the Complaint does not allege specific facts in support of its allegation[s]."). Like all TDFs, the JPM TDFs are offered as a full suite; a fiduciary cannot choose which vintages to offer or include some from one manager and some from another. FAC ¶¶ 19, 81; *Beldock*, 2023 WL 1798171, at \*4. Likewise, Plaintiffs cannot sustain a claim of imprudence by picking and choosing which vintages to criticize; they must be evaluated together as a full family of funds. Making matters worse, Appendix A does not include *any* performance graphs for two of the Comparator TDFs (the MFS Lifetime funds and Mass Mutual funds), while inexplicably including graphs related to *a different* TDF suite (the Callan Glidepath funds) that Plaintiffs drop in as a footnote in the Amended Complaint. This hodgepodge of graphs, which do not even match Plaintiffs' proposed Comparator TDFs, cannot possibly support an imprudence claim.

Moreover, neither the Amended Complaint nor Appendix A includes the source data underlying the graphs depicted therein. As such, they do not show the degree of any alleged "underperformance" in numerical terms, but rather only as difficult-to-read graphs. And those graphs, if anything, show nearly all depicted lines closely bunched and moving in the same directions, not some obvious outlier falling beyond "the range of reasonable judgments a fiduciary

19

may make." *Hughes*, 595 U.S. at 177. Appendix A also uses only one measure—trailing three-year returns—and only through 2021. Both the Amended Complaint and Appendix A are therefore devoid of *any facts* about the JPM TDFs' absolute performance after 2021 (despite alleging those funds continue to be unreasonable even today). Appendix A also lacks any context or further factual allegations about other vintages, rendering it incomplete if not downright misleading. For example, the Amended Complaint alleges the 2040 vintage's three-year returns ranked lower than other TDFs. FAC ¶ 78. But Plaintiffs do not include any similar allegation about any other vintage. Appendix A, meanwhile, does not provide any graphs for the 2020, 2060, 2065 and Retirement vintages of the JPM TDFs, all of which are or were included in the Plan during the putative class period. Ex. 2, 2022 Form 5500, at PDF p. 37.

Aside from Appendix A, the Amended Complaint introduces new allegations about several "Modern Portfolio Theory" metrics, comparing the JPM TDFs to five Comparator TDFs based on "standard deviation," "Beta," and "Sharpe ratio." FAC ¶ 88. But Plaintiffs focus on just three JPM TDF vintages (2020, 2030, and 2040), while offering no allegations about the other vintages in the Plan. Again, Plaintiffs' cherry-picked performance data is not enough to sustain a claim that the entire suite of JPM TDFs fell outside of the range of reasonable options available to the Plan.

Even setting aside these flaws, Plaintiffs' Amended Complaint does not sustain their conclusory allegations that the JPM TDFs "significantly" or "materially" underperformed. FAC ¶¶ 75-77. TDFs are supposed to be long-term investments spanning decades. *CommonSpirit*, 37 F.4th at 1166-67. At most, Plaintiffs allege modest deviations at certain times, measured by a single performance metric (trailing three-year returns) and a handful of Modern Portfolio Theory measures. *Id.* Although Plaintiffs do not include the raw data, Appendix A shows that, for most vintages, the JPM TDFs typically were no more than 1% to 2% (and often less) below the

Comparator TDFs—and often *above* Plaintiffs' chosen index. Appx. A at 2-3 (2050 vintage), 4-5 (2045 vintage), 6-7 (2035 vintage), 8-9 (2030 vintage), 10-11 (2025 vintage). Moreover, the Amended Complaint's Modern Portfolio Theory metrics show the JPM TDFs routinely outperforming certain Comparator TDFs, with the 2030 and 2040 JPM TDFs ranking above the American Funds and MFS Funds in terms of standard deviation, Beta, and Sharpe ratio. FAC ¶ 88.

Plaintiffs must allege something more than middle-of-the-pack performance, and this sort of minor and sporadic variance over short-term periods cannot sustain a plausible claim of fiduciary breach. Courts routinely refuse to infer imprudence from modest, short-term underperformance that is neither consistent nor substantial—even when based on trailing *five-year* returns, which Plaintiffs allege only regarding the Morden Portfolio Theory metrics. *See, e.g.*, *Kendall*, 2021 WL 1231415, at *9 ("Allegations based on five-year returns are not sufficiently long-term to state a plausible claim of imprudence.") (citation omitted); *Antoine*, 2023 WL 6386005, at *11 (dismissing challenge to TDFs where "the lowest underperformance Plaintiffs cite is around 2.5 percent," based on trailing three- and five-year returns, and collecting cases dismissing claims with even greater performance differences).[9] A prudent fiduciary can—and often should—hold an investment through short-term fluctuations, and "necessarily must factor

[9] *See also Gonzalez v. Northwell Health, Inc.*, 632 F. Supp. 3d 148, 163 (E.D.N.Y. 2022) (dismissing claims where challenged funds' three- and five-year returns allegedly lagged a benchmark by as much as 4.20%, because such performance "over a relatively short period of time" is not sufficiently "'consistent' and 'substantial' to support an inference of imprudence"); *Patterson*, 2019 WL 4934834, at *11 (five-year "underperformance" of 1.14% was "relatively small and certainly not enough to support a claim for" fiduciary breach); *Evans v. Assoc. Banc-Corp.*, No. 21-cv-60, 2022 WL 4638092, at *7 (E.D. Wis. Sept. 30, 2022) (underperformance must be "of a character and degree sufficient" to infer imprudence, meaning "substantial" over longer than three to five years); *Cho v. Prudential Ins. Co. of Am.*, No. 19-cv-19886, 2021 WL 4438186, at *9 (D.N.J. Sept. 27, 2021) (plaintiffs did not allege "sufficiently substantial" underperformance where "five-year trailing performance" lagged by 0.07% to 3.71%, and "ten-year trailing performance reflected underperformance ranging from 1.19% to 2.86%").

21

long-term outcomes into the investment calculus for retirement funds, since they are meant to be managed over decades." *Antoine*, 2023 WL 6386005, at \*11 (citing *Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006)). Plaintiffs allege nothing about the JPM TDFs' performance to suggest imprudence.

Plaintiffs' claims are further undermined by ample contemporaneous public information demonstrating the market's positive assessment of the JPM TDFs. For example, Morningstar—a source the Amended Complaint cites (¶ 63)—awarded the JPM TDFs its highest "Gold" rating in both 2020 and 2021, better than *all* Comparator TDFs in 2020, and all but one in 2021. Ex. 4, 2020 Morningstar Rpt. at 24; Ex. 5, 2021 Morningstar Rpt. at 10. Moreover, in 2021 the JPM TDFs were one of only two TDF suites that use a "blend" strategy to receive a "Gold" rating. Ex. 5, 2021 Morningstar Rpt. at 26. The JPM TDFs also received "high" or "above average" ratings for the People, Process, and Parent "pillars" underlying Morningstar's overall ratings. *Id.* at 10. The Morningstar Report also explains that in 2020, the JPM TDFs ranked in the "top 10" among TDFs for net inflows (*i.e.*, new investment), further reporting that the JPM TDFs had *$41 billion* in assets in 2021 (in both mutual funds and CITs). *Id.* at 8, 24.

As the Sixth Circuit explained in affirming dismissal of a similar TDF challenge, contextual facts like these undercut an imprudence claim because "[n]othing in these reports suggests that the [TDFs'] reputation was bad enough when viewed in the market as a whole that a prudent plan administrator should never have included them in the offerings or should have precipitously dumped them." *CommonSpirit*, 37 F.4th at 1168 (noting "Morningstar gave the Freedom Funds and the Index Funds a 'Silver' rating and rated the Freedom Funds' management team and process as 'above average' or better"). The same reasoning (and conclusion) applies here.

### 4. Allegations About the Plan's IPS Do Not Advance Plaintiffs' Claims.

Finally, Plaintiffs' allegation that Defendants violated the Plan's IPS by offering the JPM TDFs does not save their claim. To the contrary, it cuts against any inference of imprudence. Nothing in the IPS—which the Amended Complaint expressly incorporates, ¶¶ 25, 28, 31-32, 80-82—required Plan fiduciaries to jettison the JPM TDFs based on the modest underperformance alleged in the Amended Complaint. The IPS states only that, "[i]n its discretion, the Committee *may* decide to place a fund on a 'watch list' if the fund has not met its performance objectives or if there is a significant issue or development with the fund based on all relevant factors including, but not limited to, the management team or organization or the stated investment style and process of the fund." Ex. 1, Dec. 2022 IPS at 10 (emphasis added). This language makes clear that the Committee is not bound by any particular time periods or isolated metrics in deciding whether to remove an investment. To the contrary, the IPS plainly contemplates a more holistic assessment of an investment's ongoing suitability for the Plan based on all relevant factors. Indeed, the IPS expressly states that it "creates no obligation to act in any way" and the "IPS is not intended to be part of the Plans or its provisions," but rather "outlines the underlying philosophies and processes for the selection, monitoring and evaluation of investment options." *Id.* at 2.

Therefore, Plaintiffs' allegations that the Committee violated the IPS are made implausible by the document itself. *See, e.g.*, *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (courts need not accept allegations that are contradicted by matters properly subject to judicial notice or by exhibit); *see also Kendall*, 2021 WL 1231415, at *5 (noting IPS was "informative" as to plaintiffs' imprudence claim). If anything, by also directing the Committee to evaluate both "short- and long-term investment objectives," along with an array of other relevant factors going well beyond short-term trailing returns, the IPS underscores the implausibility of Plaintiffs' allegations. Ex. 1, Dec.

2022 IPS at 9; *see Bracalente II*, 2024 WL 2274523, at \*6-7 (rejecting fiduciary-breach claim premised in part on allegations that plan fiduciaries "violated the 'purpose of the IPS'").

### C. Plaintiffs Do Not State a Plausible Challenge to the Investor Fund.

#### 1. Plaintiffs Do Not Have Standing to Challenge the Investor Fund.

The Amended Complaint does not allege that either Plaintiff ever invested in the Investor Fund, meaning Plaintiffs lack Article III standing to assert this claim.

It is Plaintiffs' burden to establish standing—and they must do so for "each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[S]tanding is not dispensed in gross."); *see also Ali v. Hogan*, 26 F.4th 587, 595-96 (4th Cir. 2022). This requires proving three elements: (1) an "injury in fact that is concrete, particularized, and actual or imminent," that (2) "was caused by the defendant," and (3) "would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020). Plaintiffs cannot meet these prerequisites for their challenge to the Investor Fund.

Having never held the Investor Fund, Plaintiffs cannot demonstrate a "concrete injury" sufficient to create standing. To the contrary, Defendants' decision to offer the Investor Fund in the Plan did not injure Plaintiffs at all and, even if they succeed on this claim, they will not benefit. *See, e.g.*, *David v. Alphin*, No. 07-cv-11, 2008 WL 5244504, at \*2 (W.D.N.C. Dec. 15, 2008) (dismissing fiduciary-breach claims where plaintiffs could not "explain how [allegedly] improper or excessive fees ha[d] any effect on their . . . benefits"); *Davis v. Old Dominion Freight Line, Inc.*, No. 22-cv-990, 2023 WL 5751524, at \*6 (M.D.N.C. Sept. 6, 2023) (dismissing fiduciary-breach claim where plaintiff did not invest in challenged funds, "was not individually harmed[,] and therefore lack[ed] standing"); *Patterson*, 2019 WL 4934834, at \*5 ("Losses incurred by funds in which Plaintiffs did not invest cannot have impaired the value of Plaintiffs' individual accounts."). For these reasons, courts regularly dismiss similar claims where plaintiffs did not

24

invest in the funds they challenge. *Patterson*, 2019 WL 4934834, at *4-7 (plaintiffs lacked standing to challenge seven funds they did not hold, as the "value of their individual accounts was [not] impaired by the[ir] poor performance").[10]

The recent ruling in *Antoine* is instructive. As in this case, plaintiffs challenged the plan's TDFs—and, like here, they tacked on a challenge to another fund that no plaintiff ever held. 2023 WL 6386005, at *6-7. Plaintiffs had standing to challenge the full TDF suite (including vintages the named plaintiffs did not hold), because the decision to offer them "implicates the same set of concerns." *Id.* But the court dismissed the other claim for lack of standing, because "the selection and retention of the Mercer Fund implicate different conduct and proof." *Id.* at *8. Plaintiffs' challenge to the Investor Fund should be dismissed for the same reasons pursuant to Rule 12(b)(1).

### 2. The Court Cannot Infer Imprudence Merely Because the Investor Fund Allegedly "Underperformed" Other Funds at Certain Times.

Even if Plaintiffs had standing, their claim suffers from the same flaws as their challenge to the JPM TDFs—namely, Plaintiffs' reliance on a single theory of imprudence premised solely on the Investor Fund's alleged underperformance. *Supra* at 10-13. Plaintiffs compare the Investor Fund to three supposedly "relevant peer funds" and Morningstar's "Large Blend Index," relying only on the Investor Fund's trailing three-year returns and the same Modern Portfolio Theory metrics cited for the JPM TDFs. FAC ¶¶ 90-96. But for the same reasons above, "imprudence cannot be inferred based solely on allegations identifying the existence of . . . better performing alternative funds." *Matney*, 80 F.4th at 1154 n.15 (collecting cases). That is all Plaintiffs alleges.

---

[10] *See also Wilcox v. Georgetown Univ.*, No. 23-cv-7059, 2024 WL 1739266, at *1 (D.C. Cir. Apr. 23, 2024) (affirming dismissal of investment challenge for lack of standing); *Singh v. Deloitte LLP*, 650 F. Supp. 3d 259, 265 (S.D.N.Y. 2023); *In re LinkedIn ERISA Litig.*, 2021 WL 5331448, at *4; *In re Omnicom ERISA Litig.*, No. 20-cv-4141, 2021 WL 3292487, at *6-10 (S.D.N.Y. Aug. 2, 2021); *Lange v. Infinity Healthcare Physicians*, No. 20-cv-737, 2021 WL 3022117, at *2-4 (W.D. Wis. July 16, 2021).

### 3. Plaintiffs Identify No "Meaningful Benchmark" for the Investor Fund.

This claim also fails because the Amended Complaint establishes no "sound basis for comparison" for the Investor Fund. *Supra* at 13-18. Indeed, Plaintiffs' only *factual* basis for stating that the Investor Fund Comparators are suitable benchmarks is that they are all in the Morningstar "Large Blend Category." FAC ¶ 90. But, as Plaintiffs concede, this category had "more than 1,000 funds in any given year," including 1,382 funds in 2021. *Id.* ¶¶ 90-92. By Plaintiffs' logic, then, *every* "large blend" fund on the market is a suitable comparator for the Investor Fund, regardless of the myriad differences that may exist among them. Adopting Plaintiffs' theory would eviscerate the requirement that they identify "meaningful" benchmarks, because *any* "large blend" fund would suffice. That, of course, is not the law. *See, e.g.*, *Meiners*, 898 F.3d at 823 & n.2.

Here, none of the Investor Fund Comparators is an apt benchmark. The Investor Fund uses a multi-manager structure to "invest primarily in common stocks of companies that appear to offer superior opportunities for capital growth and most of which have a history of paying dividends." Ex. 7, Investor Fund Prospectus (Mar. 1, 2024) at 3, 9. While the Fund may invest in "common stocks of large and mid-capitalization issuers," it "may also invest in small capitalization issuers." *Id.* at 9. Further differentiating it from many "large blend" funds, the Investor Fund can "invest up to 35% of its assets outside the United States, including, to a more limited extent, in emerging markets." *Id.* And the Investor Fund also allows its managers to "hold cash or cash equivalents," including "without limitation" in some circumstances—which, as its prospectus explains, can "moderate the fund's investment results in a period of rising market prices" (as in recent years), but can also "reduce the magnitude of the fund's loss in a period of falling market prices." *Id.*

Plaintiffs allege nothing about the Investor Fund Comparators, which alone is enough to dismiss this claim. But public sources confirm that they have materially different strategies. For

26

example, all three Comparators invest primarily in U.S. securities, with little or no allocation to international holdings. Specifically, the Jensen Fund currently allocates 99.37% of its portfolio to U.S. equity, with the remaining 0.63% in cash or cash equivalents—meaning *zero* in any other asset category.[11] The JPMorgan fund invests 95.42% of its portfolio in domestic equities, with 3.36% in non-U.S. equity and 1.22% in cash.[12] And the Touchstone fund holds 93.34% of its portfolio in U.S. equity, with only 1.30% in non-U.S. equity and 5.36% in cash.[13] By contrast, the Investor Fund holds only 80.14% of its portfolio in U.S. equity, while investing 17.33% in non-U.S. equity and 2.52% in cash.[14] Likewise, the Investor Fund Comparators also target stocks of companies with different market capitalizations. For example, the Touchstone Fund generally invests in companies with a market capitalization "above $5 billion," while the Jensen Fund invests in those with a market capitalization of just $1 billion. Ex. 9, Touchstone Fund Prospectus (Oct. 27, 2023), at 3; Ex. 10, Jensen Fund Prospectus (Sept. 30, 2023), at 2. Differences like this matter. These investments pursue distinct strategies using different investing approaches, meaning modest differences in returns in varying market conditions is entirely expected and do not plausibly suggest imprudence.

### 4. The Investor Fund Did Not Perform Poorly, Even on Plaintiffs' Terms.

Finally, like the JPM TDFs, the Investor Fund did not perform poorly, measured against Plaintiffs' Investor Fund Comparators or otherwise. For the same reasons above, the Court cannot

---

[11] *See* Morningstar, *Jensen Quality Growth I* (JENIX) ("Portfolio" tab), *available at* www.morningstar.com/funds/xnas/jenix/portfolio (last visited July 12, 2024).

[12] *See* Morningstar, *JPMorgan US Equity R6* (JUEMX) ("Portfolio" tab), *available at* https://www.morningstar.com/funds/xnas/juemx/portfolio (last visited July 12, 2024).

[13] *See* Morningstar, *Touchstone Large Cap Focused Inst.* (SCRLX) ("Portfolio" tab), *available at* https://www.morningstar.com/funds/xnas/scrlx/portfolio (last visited July 12, 2024).

[14] *See* Morningstar, *American Funds Fundamental Investor R6* (RFNGX) ("Portfolio" tab), *available at* https://www.morningstar.com/funds/xnas/rfngx/portfolio (last visited July 12, 2024).

reasonably infer fiduciary neglect from modest, short-term, and intermittent underperformance. *Supra* at 18-21. Plaintiffs allege nothing more than that here.

Plaintiffs again rely almost entirely on the Investor Fund's trailing three-year returns. FAC ¶¶ 93. This approach misses the bigger picture for the reasons above. *Supra* at 12-13. Regardless, ample public information confirms the market's approval of the Investor Fund. For example, the Investor Fund has attracted nearly *five times* more assets ($139.4 billion) than the next largest allegedly "prudent" Comparator (the JPMorgan fund, $30.7 billion).[15] Morningstar also awards the Investor Fund a "Silver" analyst rating, with "high" or "above average" ratings for its People, Process, and Parent "pillars." Ex. 8, Investor Fund Morningstar Report (March 1, 2024).

For good reason, as the Investor Fund has performed well based on both its year-to-year returns over the putative class period and its trailing returns over the past decade. As to the former, the Fund outperformed both its category average and index in 2022 and 2023, ranking in the 37th and 26th percentiles respectively (and is currently ranked in the 30th percentile year-to-date).[16] Likewise, the Investor Fund's average annual return over the past ten years has exceeded its category average and tracks its index, earning investors an average of 12.17% *each year* over the past decade, ranking in the 39th percentile of its category. *Id.* Indeed, the Amended Complaint's own Modern Portfolio Theory metrics show the Investor Fund performed at least as well as the "large blend" category in terms of "Beta" and "Sharpe ratio" during the cited three-year period, and better than at least one of the three Comparators in terms of "Beta." FAC ¶ 95. Like the JPM

---

[15] *Compare* Morningstar, *American Funds Fundamental Investor R6* (RFNGX) ("Quote" tab), https://www.morningstar.com/funds/xnas/rfngx/quote, *with* Morningstar, *JPMorgan US Equity R6* (JUEMX) ("Quote" tab), https://www.morningstar.com/funds/xnas/juemx/quote (last visited July 12, 2024).

[16] Morningstar, *American Funds Fundamental Investor R6* (RFNGX) ("Performance" tab), https://www.morningstar.com/funds/xnas/rfngx/performance (last visited July 12, 2024).

TDFs discussed above, these facts belie any plausible inference of imprudence.  *See supra* at 19-21.

**D.**     **Plaintiffs' Derivative Failure-To-Monitor Claim Fails as a Matter of Law.**

The Court also should dismiss Plaintiffs' failure-to-monitor claim against SAS and the Board in Count II.  Because Plaintiffs have not stated a plausible fiduciary breach under ERISA in Count I, this derivative claim fails along with it.  *See, e.g.*, *Hall*, 2023 WL 2333304, at *8 ("Plaintiffs' claim alleging failure to monitor is wholly derivative of the underlying fiduciary breach claim."); *Tullgren*, 2023 WL 2307615, at *8 (same).

**IV.     CONCLUSION**

For the reasons above, the Court should dismiss the Amended Complaint, with prejudice.

Dated:  July 15, 2024                                     Respectfully submitted,

                                                                         */s/  Deborah S. Davidson*

                                                                         Deborah S. Davidson

WOMBLE BOND DICKINSON (US) LLP     MORGAN, LEWIS & BOCKIUS LLP

Pressly M. Millen (NC Bar No. 16178)              Deborah S. Davidson
555 Fayetteville Street, Suite 1100                   Matthew A. Russell
Raleigh, NC 27601                                           110 North Wacker Drive, Suite 2800
Phone:  1.919.755.2135                                    Chicago, IL 60606
Fax:  1.919.755.6067                                        Phone:  1.312.324.1000
press.millen@wbd-us.com                              Fax:  1.312.324.1001
                                                                      deborah.davidson@morganlewis.com
                                                                      matthew.russell@morganlewis.com

                                                                      Jared R. Killeen
                                                                      2222 Market Street
                                                                      Philadelphia, PA 19103
                                                                      Phone:  1.215.963.5478
                                                                      Fax:  1.215.963.5001
                                                                      jared.killeen@morganlewis.com

                                                                      *Attorneys for Defendants*