# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

JOHN STANA and RANDALL WAGNER, )
individually and on behalf of all others )
similarly situated, )
                              )    **CASE NO. 5:24-CV-00105-D-RN**
                              )
              Plaintiffs, )
         v. )
                              )
SAS INSTITUTE INC., THE BOARD OF )
DIRECTORS OF SAS INSTITUTE INC., )
THE RETIREMENT COMMITTEE OF )
SAS INSTITUTE INC. and JOHN DOES )
1- 30. )
                              )
             Defendants. )

# MEMORANDUM OF LAW IN OPPOSITION TO
# MOTION TO DISMISS THE AMENDED COMPLAINT

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.   STATEMENT OF FACTS ........................................................................................ 2

      A.    The Parties and the Plan........................................................................... 2

      B.    The Plan's Fiduciaries Failed to Administer The Plan In A Prudent Manner ........ 2

            1.    Modern Portfolio Theory ............................................................... 2

                  i.    The JPMorgan TDFs........................................................ 3

                  ii.   The Investor Fund ........................................................... 4

            2.    Defendants' Processes ................................................................... 5

III.  ARGUMENT............................................................................................................ 6

      A.    Standard of Review.................................................................................... 6

      B.    Defendants Plausibly Breached Their Duty of Prudence ........................ 8

            1.    The Complaints' Benchmarks........................................................ 8

            2.    The JPMorgan TDF Comparators............................................... 11

            3.    The Investor Fund's Comparators ............................................... 14

            4.    Defendants' Imprudent Processes................................................ 16

            5.    The Complaint Alleges More than Underperformance Alone.................. 19

                  i.    The JPMorgan TDFs...................................................... 19

                  ii.   The Investor Funds ........................................................ 22

      C.    Plaintiffs Have Article III Standing to Challenge the Investor Fund.................... 24

      D.    Plaintiffs' Monitoring claim .................................................................... 26

IV.   CONCLUSION....................................................................................................... 27

-i-

**TABLE OF AUTHORITIES**

PAGE(S)

**Cases**

*Antoine v. Marsh & McLennan Companies, Inc.,*
No. 22-cv-6637, 2023 WL 6386005 (S.D.N.Y. Sept. 30, 2023) .................................................. 25

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).......................................................................................................................7, 9

*Baird v. BlackRock Inst. Trust Co. NA,*
403 F.Supp.3d 765 (N.D. Cal. 2019) ...................................................................................... 19

*Bancorp, v. Dudenhoeffer,*
573 U.S. 409 ............................................................................................................................. 7

*Beldock v. Microsoft Corp*
No. 22-cv-108, 2023 WL 1798171 (W.D. Wash. Feb. 7, 2023)...................................................... 20

*Bell Atlantic Corp., v. Twombly,*
550 U.S 544 (2007)............................................................................................................... 7, 9

*Binder v. PPL Corp.,*
No. 22-cv-00133, 2024 WL 1096819 (E.D. Pa. Mar. 12, 2024) ........................................... 16, 23

*Boley v. Universal Health Servs.,*
36 F.4th 124 (3d Cir. 2022) ................................................................................................. 24, 26

*Bracalente v. Cisco Sys.,*
No. 22-cv-04417, 2024 WL 2274523 (N.D. Cal. May 20, 2024).................................................. 12

*Braden v. Wal-Mart Stores,*
588 F.3d 585 (8th Cir. 2009)...................................................................................*Passim*

*Brieger v. Tellabs, Inc.,*
245 F.R.D. 345 (N.D. Ill. 2007)................................................................................................ 22

*Brotherston v. Putnam Invs., LLC,*
907 F.3d 17 (1st Cir. 2018)..................................................................................................... 10

*Brundle ex rel. Constellis Emp. Stock Ownership Plan v. Wilmington Tr.,*
919 F.3d 763 (4th Cir. 2019) ................................................................................................. 6

*Cassell v. Vanderbilt Univ.,*
No. 16-cv-2086, 2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018)............................................. 25

Case 5:24-cv-00105-D-RN    Document 22    Filed 08/28/24    Page 3 of 37

*Chandra v. Brown-Davis, et al.*,
2020 WL 8921399 (N.D. Ill. Mar. 16, 2020)................................................................. 10

*Clark v. Duke Univ.*,
No. 16-cv-1044, 2018 WL 1801946 (M.D.N.C. Apr. 13, 2018) .................................. 24

*Copperstone v. TCSI Corp.*,
No. 97-cv-3495, 1999 WL 33295869 (N.D. Cal. Jan. 19, 1999).................................. 20

*Dardaganis v. Grace Capital, Inc.*,
889 F.2d 1237 (2d Cir. 1989)......................................................................................... 6

*David v. Alphin,*
No. 07-cv-11, 2008 WL 5244504 (W.D.N.C. Dec. 15, 2008),
*aff'd*, 704 F.3d 327 (4th Cir. 2013)............................................................................. 25

*Davis v. Salesforce.com, Inc.*,
No. 21-cv-15867, 2022 WL 1055557 (9th Cir. Apr. 8, 2022)................................. 12, 13

*Davis, et al. v. Washington Univ.*,
960 F.3d 478 (8th Cir. 2020) ....................................................................................... 12

*Dearing v. IQVIA Inc.*,
No. 20-cv-574, 2021 WL 4291171 (M.D.N.C. Sept. 21, 2021) ................................ 9, 11

*DiFelice v. U.S. Airways*,
497 F.3d 410 (4th Cir. 2007)........................................................................... 3, 7, 10, 22

*Dover v. Yanfeng US Auto. Interior Sys. I LLC*,
563 F. Supp. 3d 678 (E.D. Mich. 2021)......................................................................... 5

*Feinberg v. T. Rowe Price Grp., Inc.*,
No. 17-cv-0427, 2018 WL 3970470 (D. Md. Aug. 20, 2018)............................... 6, 7, 25

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014)........................................................................................................ 7

*Fitzpatrick v. Nebraska Methodist Health System, Inc.*,
No. 23-cv-27, 2023 WL 5105362 (D. Neb. Aug. 9, 2023)........................................... 10

*Foman v. Davis*,
371 U.S. 178 (1962)...................................................................................................... 27

*Gaines v. BDO USA, LLP*,
663 F. Supp. 3d 821 (N.D. Ill. Mar. 21, 2023) ........................................................... 10

*Garcia v. Alticor, Inc.,*
No. 20-cv-1078, 2021 WL 5537520 (W.D. Mich. Aug. 9, 2021) .................................... 16 ,17, 22

*Garnick v. Wake Forest Univ. Baptist Med. Ctr.,*
629 F. Supp. 3d 352 (M.D.N.C. 2022) ..................................................................*Passim*

*Hall v. Cap. One Fin. Corp.,*
No. 22-cv-00857, 2023 WL 2333304 (E.D. Va. Mar. 1, 2023),
*appeal dismissed,*
No. 23-1357, 2023 WL 6388629 (4th Cir. May 12, 2023)........................................... 9., 10 ,13 22

*Hughes v. Nw. Univ.,*
142 S. Ct. 737 (2022).................................................................................... 2, 7, 20

*Hughes v. Nw. Univ.,*
63 F.4th 615 (7th Cir. 2023) ......................................................................................... 8

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.,*
250 F. Supp. 3d 460 (N.D. Cal. 2017) ....................................................................... 25

*Johnson v. Parker-Hannifin Corp.,*
No. 21-cv-00256, 2023 WL 8374525 (N.D. Ohio Dec. 4, 2023) ................................... 13

*Johnson v. Oroweat Foods Co.,*
785 F.2d 503 (4th Cir. 1986) ..................................................................................... 27

*Jones v. Coca-Cola Consol., Inc.,*
No. 20-cv-00654, 2021 WL 1226551 (W.D.N.C. Mar. 31, 2021) ................................. 25

*Karg v. Transamerica Corp.,*
No. 18-cv-134, 2019 WL 3938471 (N.D. Iowa Aug. 20, 2019)..................................... 16, 17, 23

*Kendall v. Pharm. Prod. Dev., LLC,*
No. 20-cv-71, 2021 WL 1231415 (E.D.N.C. Mar. 31, 2021)........................................ 12

*Kistler v. Stanley Black & Decker, Inc.,*
No. 22-cv-966, 2024 WL 3292543 (D. Conn. July 3, 2024) ....................................... 17, 21

*Krohnengold v. New York Life Ins. Co.,*
No. 21-cv-1778, 2022 WL 3227812 (S.D.N.Y. Aug. 10, 2022).................................... 15

*Laborers Nat. Pension v. Nor. Trust Advisors,*
173 F.3d 313 (5th Cir. 1999) ..................................................................................... 22

*Larson v. Allina Health Sys.,*
350 F. Supp. 3d 780 (D. Minn. 2018)......................................................................... 25

*Leber v. the Citigroup 401(k) Plan Investment Committee*,
323 F.R.D. 145 (S.D.N.Y. 2017) ................................................................................ 24

*Lopez v. Embry-Riddle Aeronautical Univ., Inc.*,
No. 22-cv-1580, 2023 WL 7129858 (M.D. Fla. July 12, 2023) .............................. 12, 25

*Mator v. Wesco Distribution, Inc.*,
102 F.4th 172 (3d Cir. 2024) ................................................................................... 8, 19

*Matousek v. MidAmerican Energy Co.*,
51 F.4th 274 (8th Cir. 2022) .......................................................................................... 10

*In re MedStar ERISA Litig.*,
No. 20-cv-1984, 2021 WL 391701 (D. Md. Feb. 4, 2021)................................................. 8

*Meiners v. Wells Fargo & Co.*,
898 F.3d 820 (8th Cir. 2018) ................................................................................... 15, 16

*Miller v. Astellas US LLC*,
No. 20-cv-3882, 2021 WL 1387948 (N.D. Ill. Apr. 13, 2021)...................................... 15, 21, 23

*Moler v. Univ. of Maryland Med. Sys.*,
No. 21-cv-1824, 2022 WL 2756290 (D. Md. July 13, 2022) .................................*Passim*

*Muri v. Nat'l Indem. Co.*,
No. 17-cv-178, 2018 WL 1054326 (D. Neb. Feb. 26, 2018)...................................... 17, 19

*In re Mutual Funds*,
529 F.3d 207 (4th Cir. 2008) ................................................................................... 25, 26

*Nunez v. B. Braun Medical*,
No. 20-cv-04195 (E.D.PA. June 4, 2021)........................................................................ 12

*Patterson v. Morgan Stanley*,
No. 16-cv-6568, 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019)....................................... 26

*In re Prime Healthcare ERISA Litig.*,
No. 20-cv-01529, 2023 WL 9319290 (C.D. Cal. Dec. 28, 2023)................................... 25

*Reetz v. Lowe's Companies, Inc.*,
No. 18-cv-75, 2019 WL 4233616 (W.D.N.C. Sept. 6, 2019)............................... 7, 20, 21

*Russell v. Illinois Tool Works, Inc.*,
No. 22-cv-2492, 2024 WL 2892837 (N.D. Ill. June 10, 2024)....................................... 9

-v-

*Sellers v. Trustees of Coll.*,
No. 22-cv-10912, 2022 WL 17968685 (D. Mass. Dec. 27, 2022)................................................. 18

*Smith v. Commonspirit Health*,
37 F.4th 1160 (6th Cir. 2022) ............................................................................................. 12, 13

*Snyder v. UnitedHealth Grp., Inc.*,
No. 21-cv-1049, 2021 WL 5745852 (D. Minn. Dec. 2, 2021) ....................................................... 10

*Stegemann v. Gannett Co.*,
970 F.3d 465 (4th Cir. 2020) ........................................................................................... 1, 2, 6, 7

*In re Sutter Health ERISA Litig.*,
No. 20-cv-01007, 2023 WL 1868865 (E.D. Cal. Feb. 9, 2023) ..................................................... 21

*Sweda v. Univ. of Pa.*,
923 F.3d 320 (3d Cir. 2019)..................................................................................................... 7

*Tatum v. RJR Pension Inv. Comm.*,
761 F.3d 346 (4th Cir. 2014) ............................................................................................... 1, 8

*Thomson v. Caesars Holdings Inc.*,
661 F. Supp. 3d 1043 (D. Nev. 2023)................................................................................... 13, 21

*Tibble v. Edison Int'l*,
135 S. Ct. 1823 (2015)............................................................................................................ 7

*Tibble v. Edison Int'l*,
843 F.3d 1187 (9th Cir. 2016) ............................................................................................. 3, 5

*Thole v. U. S. Bank*
140 S. Ct. 1615, 1618 (2020).................................................................................................. 25

*Trauernicht v. Genworth Fin. Inc.*
No. 22-cv-532, 2023 WL 5961651 (E.D. Va. Sept. 13, 2023) ...............................................*Passim*

*Tullgren v. Booz Allen Hamilton*,
No. 22-cv-00856, 2023 WL 2307615 (E.D. Va. Mar. 1, 2023)........................................... 9, 13, 22

*In re Unisys Savings Plan Litigation*,
74 F.3d 420 (3d Cir. 1996)....................................................................................................... 6

*Walsh v. Marsh & McLennan Cos., Inc.*,
No. 04-cv-0888, 2006 WL 734899 (D. Md. Feb. 27, 2006)....................................................... 24

*Williams v. Centerra Grp., LLC*,

Case 5:24-cv-00105-D-RN    Document 22    Filed 08/28/24    Page 7 of 37

No. 20-cv-04220, 2021 WL 4227384 (D.S.C. Sept. 16, 2021) ................................................... 15

*Zak v. Chelsea Therapeutics Int'l., Ltd.*,
780 F.3d 597 (4th Cir. 2015) ...................................................................................... 16

**Statutes**

29 U.S.C. § 1104(a)(1)(B) ...........................................................................................7 ,8

29 U.S.C. § 1104(a)(1)(D) ...............................................................................................8

29 U.S.C. § 1104(a)(2)....................................................................................................24

**Other Sources**

*Assembling a Robust Investment Policy Statement for Endowments and Foundations*,
PNC Financial Services Group, Inc., Jan. 8, 2020......................................................... 21

The Employee Retirement Income Security Act of 1974......................................*Passim*

# I.    INTRODUCTION

John Stan and Randall Wagner ("Plaintiffs"), respectfully submit this Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("Defs. Mem.").

The Employee Retirement Income Security Act of 1974 ("ERISA") "imposes high standards of fiduciary duty on those responsible for the administration of employee benefit plans and the investment and disposal of plan assets." *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 355 (4th Cir. 2014). In the instant matter, Defendants[1] have breached their fiduciary duty of prudence to the Plan[2] and its participants. Defendants selected a slate of investment options that were imprudent due to their history of underperformance, and subsequently maintained the chronically (and predictably) underperforming funds in the Plan despite dozens of readily available alternatives. The challenged funds' poor performance indicates that Defendants unjustifiably ignored their own Investment Policy Statement of SAS Retirement Plan ("IPS") and imprudently used Plan funds to engage and rely on outside consultants. *See* First Amended Complaint ("Complaint" or "Compl.") (ECF No. 16), at ¶¶89, 96. Defendants' imprudence led to losses in the form of lower investment returns, and the compounding rate of those losses over several years.

However, the Court need not find Defendants liable at this stage of the litigation. "We are at the motion to dismiss stage, where [courts] take allegations as true and hold claims to a plausibility standard." *Stegemann v. Gannett Co.*, 970 F.3d 465, 477 n.9 (4th Cir. 2020). Defendants ask this Court to apply an improperly heightened pleading standard, view facts in a

---

[1] "Defendants" collectively refers to SAS Institute Inc. ("SAS"), the Board of Directors of SAS Institute, Inc. (the "Board"), and the Retirement Committee of SAS Institute, Inc. (the "Committee").

[2] The "Plan" refers to the SAS Retirement Plan.

-1-

light most favorable to Defendants, and consider each allegation separately rather than "[]evaluate the allegations as a whole." *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022). In short, Defendants ask this Court to disregard the ERISA pleading standard defined by the Supreme Court in *Hughes* and the Fourth Circuit in *Stegemann*. Ultimately, Defendants' arguments are incorrect as a matter of law and fact. For these reasons, Plaintiffs request that this Court deny Defendants' Motion to Dismiss.

## II.  STATEMENT OF FACTS

### A.  The Parties and the Plan

**Plaintiffs.** Plaintiffs are current and former participants in the Plan and invested in the options selected by Defendants and challenged in this lawsuit. *See* Compl. at ¶¶20-21. Additionally, both plaintiffs suffered an injury to their Plan account by having to pay for their share of consulting fees that were unreasonable given the selection and retention of lower performing funds in the Plan. *Id*. Plaintiffs have standing to bring this action on behalf of the Plan because they participated and invested in the Plan and were injured by Defendants' unlawful conduct. *Id*. at ¶22.

**Defendants.** SAS is the Plan sponsor and named fiduciary charged with administering the Plan. *See* Compl. at ¶24. The Board appointed and monitors the Committee to, among other things, ensure that the investments available to the Plan's participants are appropriate and performed well compared to their peers. *Id*. at ¶¶25, 28 (citing IPS at 2).

### B.  The Plan's Fiduciaries Failed to Administer The Plan In A Prudent Manner

#### 1.  Modern Portfolio Theory

The Complaint challenges two funds, the JPMCB CF-B Target Date Funds (the "JPMorgan TDFs") and the American Funds Fundamental Investor R6 (the "Investor Fund"). *See* ¶¶67, 74.

Had Defendants adhered to the fiduciary standard of care, they would have discovered information available at the time of their decision-making, indicating that the challenged funds should not have been implemented and should have been removed within a reasonable amount of time. *Id*. at ¶¶67-96. Prudent fiduciaries investigate fund histories, industry-recognized "benchmarks", and well managed equivalents. *Id*.; *see also Tibble v. Edison Int'l*, 843 F.3d 1187, 1192-93, 98 (9th Cir. 2016) (*en banc*) (similar). The Complaint alleges that the challenged funds underperformed using comparisons to other funds that meet data driven criteria for comparability and exist in the same Morningstar Category as the challenged funds. *Id*. at ¶¶63, 75-76, 92. Each challenged fund is also compared to the appropriate Morningstar Category index. *Id*. The allegations also view the facts surrounding each challenged fund through the lens of the Plan's IPS, in order to show that the funds' underperformance was tied to ongoing imprudent processes, rather than using hindsight data. *Id*. at ¶¶32, 80-82, 89, 96.

Each comparator fund was derived using a systematic computational process and Modern Portfolio Theory ("MPT"), inclusive of several metrics. *See* Compl. at ¶¶83-87. "Modern portfolio theory has been adopted in the investment community and, for the purposes of ERISA, by the Department of Labor. *See* 29 C.F.R. § 2550–404a–1." *Id*. at ¶85 (quoting *Difelice v. U.S. Airways*, 497 F.3d 410, 432 (4th Cir. 2007)). In short, Plaintiffs' use of MPT ensures that the challenged funds are compared to meaningful benchmarks.

### i. The JPMorgan TDFs

During the Class Period, the JPMorgan TDF suite held at least $970 million dollars in Plan assets and was the only target date option available to participants. *See* Compl. at ¶¶68, 72. Before the Class Period, multiple investment institutions offered target date funds with consistent

performance histories and experienced management. *Id*. at ¶69-71. The Plan was eligible to select and/or replace the JPMorgan TDFs with better alternatives. *Id*.

Prior to the start of the Class Period, the JPMorgan TDFs underperformed compared to peers and the Morningstar index on a 3- and 5- year average basis. *See* Compl. at ¶76. Since at least three years before the Class Period through 2022, the JPMorgan TDFs generally performed well below the applicable Morningstar index, while the Comparator Funds performed generally above the index. *Id*. at ¶78; *see also* Appendix A, (showing similar results for vintages 2025 through 2055). Since 2018, the JPMorgan TDFs performed well below its index for 15 consecutive quarters. *Id* at ¶81. In total, the Complaint alleges underperformance on a 3- and 5- year basis from 2015-2023. *Id*. at ¶¶76-88. This means Defendants could not have been following their own IPS which required them to monitor fund performance at least annually, based on 3- and 5-year performance histories. *Id*. at ¶¶32, 80.

Had Defendants followed their own IPS and prevailing fiduciary standards, the JPMorgan TDFs would have never been selected for, or maintained in, the Plan.

### ii. The Investor Fund

The Investor Fund is a Large Blend Fund. *See* Compl. at ¶74. Large Blend funds have their own Morningstar Category, the "Morningstar Large Blend Category." *Id*. at ¶¶75-76. The corresponding index is the Morningstar US Large-Mid Cap TR USD Index ("Large Blend Index"). *Id*. Using a rolling three-year average performance by quarter, on a total return basis, it is clear that the American Funds Fundamental Investor fund significantly underperformed its peers and the Large Blend Index. *See* Compl. at ¶90. The Investor Fund had some of the worst Morningstar rankings in the Large Blend Category. *Id*. at ¶91. The Fund ranked in the 59th percentile in 2018, the 68th percentile in 2019, the 59th percentile in 2020, and worst of all, it ranked in the 84th

-4-

percentile in 2021. *Id*. Moreover, the three Comparator Funds performed significantly above the Large Blend Index while the Investor Fund performed significantly below this Index. *Id*. at ¶93. The Investor Fund began to underperform more aggressively in the second quarter of 2019 and never recovered. *Id.* at ¶94.

MPT statistics show that the Investor Fund had significantly underperformed its Index from early 2019 until at least the middle of 2023. *Id*. at ¶¶95-96. Had the Plan fiduciaries been following their own IPS and the fiduciary standard of care, this fund would have been placed on a watchlist as early as the beginning of 2020 with its removal warranted after at the end of the second quarter of 2020. *Id*.

### 2.    Defendants' Processes

Prudent fiduciaries regularly evaluate a fund's performance history, the manager's experience and tenure, any strategy or underlying asset changes, the total assets under management within the fund, and other relevant factors. *See* Compl. at ¶60; *see also Tibble*, 843 F.3d at 1192-93, 98 (similar). Diligent fiduciaries monitor the performance of their selected investments using industry-recognized "benchmarks" and prudently managed equivalents. *Id*. at ¶61. The specific methodologies used to select prudent investments are primarily driven by data, often provided by investment research companies like Morningstar, which is the most accepted source of investment performance information, as it has the most robust information on mutual funds, CITs, and other types of investments. *Id*. at ¶63; *see also Dover v. Yanfeng US Auto. Interior Sys. I LLC*, 563 F. Supp. 3d 678, 688 (E.D. Mich. 2021) ("parties in similar ERISA actions routinely reference these [Morningstar] indexes, or expert testimony that cites these indexes, to allege a breach of duty.") (listing cases).

Pursuant to the Plan's IPS, the Committee is tasked with determining the appropriateness of the Plan's investment offerings and monitoring investment performance, at least yearly, based primarily on the funds' 3- and 5-year performance histories. Compl. at ¶¶32, 80 (citing IPS at 7). Under ERISA, the IPS becomes part of the legal document governing the Plan and the Plan fiduciaries are obligated to follow it. *See Dardaganis v. Grace Capital, Inc.*, 889 F.2d 1237, 1241-42 (2d Cir. 1989); *see also Feinberg v. T. Rowe Price Grp., Inc.*, No. 17-cv-0427, 2018 WL 3970470, at *4 (D. Md. Aug. 20, 2018) (similar)).

Aon Investments USA, Inc. ("Aon") was the Plan's consultant and was paid via Plan assets. *See* Compl. at ¶20. It is black letter law that "such advice 'is not a magic wand that fiduciaries may simply wave over a transaction to ensure that their responsibilities are fulfilled.'" *Brundle ex rel. Constellis Emp. Stock Ownership Plan v. Wilmington Tr.*, 919 F.3d 763, 773 (4th Cir. 2019). Fiduciaries must personally conduct an "independent investigation into the merits of a particular investment." *In re Unisys Savings Plan Litigation*, 74 F.3d 420, 435 (3d Cir. 1996). As demonstrated by years of performance data (discussed *supra*), Defendants could not have been following their own IPS or the fiduciary standard of care, and Aon's service was not a wise Plan investment.

## III.   ARGUMENT

### A.   Standard of Review

"A complaint must contain 'sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Stegemann*, 970 F.3d at 473. Critically, in the Fourth Circuit, "[a] claim alleging a breach of fiduciary duty may survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably 'infer from what is alleged that the process was flawed.'" *Feinberg*, 2018 WL 3970470, at * 5 (citing *Braden v. Wal-Mart Stores*,

588 F.3d 585, 596 (8th Cir. 2009)).[3] The reason is simple – Plaintiffs "generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Braden*, 588 F.3d at 598. Also, at the motion to dismiss stage, an ERISA "complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594; *see also Sweda v. Univ. of Pa.*, 923 F.3d 320, 331 (3d Cir. 2019).

The Supreme Court has repeatedly held that "[b]ecause the content of the duty of prudence turns on 'the circumstances ... prevailing' at the time the fiduciary acts, § 1104(a)(1)(B), the appropriate inquiry will necessarily be context specific." *Hughes*, 142 S. Ct. at 742 (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)). The Fourth Circuit has reiterated that ERISA's duty of prudence, 29 U.S.C. § 1104(a)(1)(B), "requires a fiduciary to identify and remedy imprudent funds" on a continuing basis. *Stegemann*, 970 F.3d at 484 (quoting *DiFelice*, 497 F.3d at 418); *see also Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828-29 (2015) (same). Critically, the Supreme Court has also held that ERISA does not grant fiduciaries a "defense-friendly standard", meaning there is no "presumption of prudence" when ruling on a motion to dismiss. *Bancorp*, 573 U.S. at 412 (internal citations omitted). For this reason, "[r]equiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert the principle that the "complaint is construed most favorably to the nonmoving party and would impose the sort of 'probability requirement' at the pleading stage which *Iqbal* and *Twombly* explicitly reject." *Braden*, 588 F.3d at 597 (internal citations omitted); *see also Moler v. Univ. of Maryland Med.*

---

[3] *See also, Garnick v. Wake Forest Univ. Baptist Med. Ctr.,* 629 F. Supp. 3d 352, 367 (M.D.N.C. 2022); *Reetz v. Lowe's Companies, Inc.*, No. 18-cv-75, 2019 WL 4233616, at *3 (W.D.N.C. Sept. 6, 2019); *Moler v. Univ. of Maryland Med. Sys.*, No. 21-cv-1824, 2022 WL 2756290, at *3 (D. Md. July 13, 2022).

*Sys.*, No. 21-cv-01824, 2022 WL 2756290, at \*3 (D. Md. July 13, 2022) (same); *Hughes v. Nw. Univ.*, 63 F.4th 615, 628 (7th Cir. 2023) (similar); *Mator v. Wesco Distribution, Inc.*, 102 F.4th 172, 184 (3d Cir. 2024) (similar). Ultimately, "[t]he correct [ERISA duty of prudence] standard is less demanding: the allegations must move the claim 'from conceivable to *plausible*.'" *Mator,* 102 F.4th at 189 (emphasis in original).

### B.     Defendants Plausibly Breached Their Duty of Prudence

"The duty of prudence requires ERISA fiduciaries to act "'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" *Tatum*, 761 F.3d at 356 (quoting 29 U.S.C. § 1104(a)(1)(B)). ERISA "also requires fiduciaries to act 'in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA].'" 29 U.S.C. § 1104(a)(1)(D)). Defendants failed to act in accordance with the prevailing standard of prudence.

### 1.     The Complaint's Benchmarks

ERISA plaintiffs challenging a fund's performance must provide a "sound basis for comparison—a meaningful benchmark." *Garnick v. Wake Forest Univ. Baptist Med. Ctr.*, 629 F. Supp. 3d 352, 366 (M.D.N.C. 2022) (quoting *In re MedStar ERISA Litig.*, No. 20-cv-1984, 2021 WL 391701, at \*6 (D. Md. Feb. 4, 2021)). However, contrary to Defendants' premises (Defs. Mem. at 14-15), the "'determination of the appropriate benchmark for a fund is not a question properly resolved at the motion to dismiss stage.'" *Garnick,* 629 F. Supp. 3d at 366 (quoting *MedStar*, 2021 WL 391701, at \*6); *see also Moler*, 2022 WL 2756290, at \*6 ("Determination of the adequacy or sufficiency of comparable benchmarks is a fact-intensive inquiry not properly resolved on a motion to dismiss, and one that may require expert opinion.") (listing cases).

Like Defendants here, the defendants in *Trauernicht v. Genworth Fin. Inc.* also attempted to argue that the complaint did "not provide a detailed explanation on the differences between the [challenged] TDFs and the Comparator TDFs, including the allocation of the funds, how each is managed, and the risk in each." *Trauernicht*, No. 22-cv-532, 2023 WL 5961651, at *13 (E.D. Va. Sept. 13, 2023). The *Trauernicht* defendants even relied on the same cases as Defendants: *Tullgren v. Booz Allen Hamilton*, No. 22-cv-00856, 2023 WL 2307615 (E.D. Va. Mar. 1, 2023) and *Hall v. Cap. One Fin. Corp.*, No. 22-cv-00857, 2023 WL 2333304 (E.D. Va. Mar. 1, 2023), *appeal dismissed*, No. 23-1357, 2023 WL 6388629 (4th Cir. May 12, 2023). Nonetheless, the court was unpersuaded and held that the complaint's other allegations of fund similarity were sufficient, because "[a]ny greater level of detail is unnecessary at the motion to dismiss stage where *Iqbal* and *Twombly* require only enough factual context so the court can draw reasonable inferences that there is 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id*. Moreover, in-depth fund comparisons are "a dispute that is appropriate to be addressed later in the proceedings, potentially with the aid of expert testimony." *Id*. Although *Trauernicht, Tullgren*, and *Hall* are all unpublished opinions, *Trauernicht* is more closely aligned with the published opinion in *Garnick*, which held that determining the aptness of a comparator fund is inappropriate at the motion to dismiss stage. *Garnick*, 629 F. Supp. 3d at 366.

Many courts have held that underperformance is plausibly alleged when, like here, the complaint compares challenged funds to individual funds in the same "Morningstar fund categories benchmarked to the same index." *Russell v. Illinois Tool Works, Inc.*, No. 22-cv-2492, 2024 WL 2892837, at *3 (N.D. Ill. June 10, 2024); *see also Dearing v. IQVIA Inc.*, No. 20-cv-574, 2021 WL 4291171, at *4 (M.D.N.C. Sept. 21, 2021) (same); *Dover* 563 F. Supp. 3d at 687 (same); *Gaines v. BDO USA, LLP*, 663 F. Supp. 3d 821, 829-30 (N.D. Ill. Mar. 21, 2023) (same); *Chandra*

*v. Brown-Davis, et al.*, 2020 WL 8921399, at *1 (N.D. Ill. Mar. 16, 2020) (same); *Snyder v. UnitedHealth Grp., Inc.*, No. 21-cv-1049, 2021 WL 5745852 (D. Minn. Dec. 2, 2021) (same); *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 32 (1st Cir. 2018) (approving expert selection as a benchmark an index fund assigned to the same Morningstar category as the plan fund). Here the Complaint adds details regarding the comparator fund selection process used to ensure that the Complaint alleges apt comparators. In sum, Defendants' argument that the Morningstar indices are not appropriate comparators (Defs. Mem. at 18, 26) is wrong because: (1) the indices are accompanied by other comparators to create a holistic view of imprudence; (2) many courts disagree with Defendants; and (3) any further factual determination of apt comparators is inappropriate at the motion to dismiss stage before expert testimony. *See Trauernicht,* 2023 WL 5961651, at *13.

Defendants also incorrectly assert that, as a matter of law, individual comparator funds must "hold similar securities, have similar investment strategies, [or] reflect a similar risk profile." Defs. Mem. at 15 (quoting *Hall*, 2023 WL 2333304, at *6). The origins of that quote are from the Eighth Circuit in *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 281 (8th Cir. 2022). Critically, the Eight Circuit criteria does not extend to other Circuits, as even courts within the Eighth Circuit have noted its particularly "stringent" standard. *Fitzpatrick v. Nebraska Methodist Health System, Inc.*, No. 23-cv-27, 2023 WL 5105362, at *7 (D. Neb. Aug. 9, 2023). Furthermore, *Hall* involved S&P Indices that were "a composite of the disparate strategies and styles present in the broad universe of investable alternative TDFs." *Hall*, 2023 WL 2333304, at *2. Whereas here, the Morningstar categories are not comprised of "disparate strategies", nor are the individual comparator funds derived from the MPT analysis. *See* Compl. at ¶¶63, 75-76, 92. As discussed, MPT does account for similar risks, strategies, and underlying holdings of the comparator funds.

*Id*. at ¶¶83-87.

Of course, even when two funds are in the same category, and share similar strategies, holdings, and risk profiles, no two funds are exactly identical. Critically, the differences within the comparator factors can be what makes the funds better performing, better managed, more optimistic, or generally more prudent. This is why prudent fiduciaries regularly evaluate a fund's manager, any changes to the fund's investment strategy, and changes to the underlying assets alongside performance and against other funds. *See* Compl. at ¶60. Nevertheless, what matters now, at the pleadings stage, is that Plaintiffs have plausibly alleged that the comparator funds are meaningful enough, *i.e.* plausible enough alternatives, to highlight the challenged funds' publicly available underperformance information. *See Garnick*, 629 F. Supp. 3d at 366.

### 2. The JPMorgan TDF Comparators

Plaintiffs have plausibly alleged that the JPMorgan TDF comparators are meaningful in accordance with the law of this Circuit. However, for the sake of argument, Plaintiffs will respond to each challenge Defendants make regarding the TDF comparators. Defendants argue that the JPMorgan TDFs use a blend strategy (involving both passive and actively managed funds) while two comparators use only actively managed funds, and another uses only passive funds. *See* Defs. Mem. at 16. However, many courts in this Circuit and elsewhere have found that comparing actively managed funds to passively managed funds does not fail "as a matter of law […] at this preliminary juncture." *Dearing*, 2021 WL 4291171, at *4 (plaintiffs alleging underperformance); *see also Trauernicht*, 2023 WL 5961651, at *13 (the motion to dismiss was denied despite the absence of active/passive allegations, in part because, "the Sharpe ratios were used as a method to standardize the risk levels between the Comparator TDFs and the BlackRock TDFs for a more meaningful comparison."); *Nunez v. B. Braun Medical*, No. 20-cv-04195, slip op. at 4n.1 (E.D.P.A. June 4, 2021) (ECF. 49) (courts "have found allegations that plans failed to consider materially

-11-

similar alternatives, including passive and actively managed funds, sufficient to state a claim for breach of the duty of prudence."); *Lopez v. Embry-Riddle Aeronautical Univ., Inc.*, No. 22-cv-1580, 2023 WL 7129858, at *3 (M.D. Fla. July 12, 2023) (similar).

As Defendants' own case recognizes, "passively managed funds might, in some situations, serve as meaningful benchmarks for actively managed funds." *Bracalente v. Cisco Sys.*, No. 22-cv-04417, 2024 WL 2274523, at *8 (N.D. Cal. May 20, 2024). Further, *Bracalente* and Defendants other cases involve materially distinct allegations that the fiduciaries should have considered passively managed alternatives over actively managed funds on a categorical level, and did not involve an individual fund-by-fund performance comparison like here. The active/passive debate was central to those allegations, and therefore the courts' holdings. *See, e.g., Kendall v. Pharm. Prod. Dev., LLC,* No. 20-cv-71, 2021 WL 1231415, at *9 (E.D.N.C. Mar. 31, 2021) ("Plaintiffs also claim the Committee acted imprudently in failing to consider passively-managed funds in place of actively-managed ones", based on fee differences); *Davis v. Salesforce.com, Inc.*, No. 21-cv-15867, 2022 WL 1055557, at *2 (9th Cir. Apr. 8, 2022) (the plaintiffs alleged that the fiduciaries "fail[ed] to adequately consider passively managed mutual fund alternatives to the actively managed funds offered by the plan."); *Smith v. Commonspirit Health*, 37 F.4th 1160, 1162 (6th Cir. 2022) (same); *Bracalente*, 2024 WL 2274523, at *7 ("the IPS 'misidentified the BlackRock TDFs as a passive investment'" for procedural reviews, therefore "Cisco acted imprudently by failing to compare the BlackRock TDFs to an appropriate peer universe."). Also, the allegations in *Davis v. Wash. Univ. in St. Louis* failed because the underlying holdings and strategies were too different to be comparable, meaning the overall differences went *beyond* active versus passive management. 960 F.3d 478, 484 (8th Cir. 2020). The court, however, reiterated that "there is no one-size-fits-all approach" to selecting comparators, and courts must look at the

-12-

"totality of the specific allegations in [each] case." *Id*. (quoting *Braden*, 588 F.3d at 595–96). Here, Plaintiffs are not alleging that passive funds are more prudent than active funds, thereby making Defendants' cases inapposite.

Contrary to Defendants other mischaracterization of the law, similar glidepaths are one possible, but not necessary, way to plead similarities between a challenged fund and a comparator fund. *See, e.g.*, *Thomson v. Caesars Holdings Inc.*, 661 F. Supp. 3d 1043, 1058 (D. Nev. 2023) (refusing to accept the defendants' arguments that different glidepaths made the funds inapt comparators.); *Trauernicht*, 2023 WL 5961651, at *13 (holding that glidepaths do not need to be alleged if other factors made the comparisons sufficiently meaningful). Defendants cite cases that are distinguishable. Again, the instant case satisfies the *Trauernicht* court's holding that *Hall* and *Tullgren* are distinguishable when other allegations sufficiently allege the comparators are similar. *Trauernicht*, 2023 WL 5961651, at *13. Further, there was no issue regarding the comparator funds' glidepaths in *Smith v. CommonSpirit Health*, the court merely discussed that fund managers can change glidepaths. *Smith v. CommonSpirit Health*, 37 F.4th at 1167. In *Johnson v. Parker-Hannifin Corp.*, the court actually held that when alleging similar passively managed funds, alleging similar "glidepaths falls well short of the Sixth Circuit's pleading requirement", where courts must allege "the funds' distinct 'objectives,' 'strategies,' and 'goals.'" *Johnson*, No. 21-cv-00256, 2023 WL 8374525, at *7 (N.D. Ohio Dec. 4, 2023). Even if Sixth Circuit standards apply here (they do not), the instant Complaint sufficiently alleges the funds' comparable objectives, strategies, and goals. *See* Compl. at ¶¶83-87.

Lastly, *Davis v. Salesforce.com, Inc.*, is inapposite to the instant case. As Defendants note, and as stated above, the allegations in *Davis* were not underperformance allegations, but rather, "that plan should have instead offered the *lower-cost* 'blend'" funds, such as the JPM TDFs, and

-13-

*lower cost* passive funds. Defs. Mem. at 17 (characterizing *Davis*, 2021 WL 1428259, at \*5; emphasis added). The instant case is not an excessive fee case, but a performance case, thereby necessitating different considerations for comparator funds and the allegations as a whole, because "the appropriate inquiry" in evaluating duty of prudence allegations "will necessarily be context specific." *Hughes*, 142 S. Ct. at 742.

### 3. The Investor Fund's Comparators

Defendants ignore entire MPT and computation process sections of the Complaint in arguing that "Plaintiffs' only factual basis for stating that the Investor Fund Comparators are suitable benchmarks is that they are all in the Morningstar 'Large Blend Category.'" Defs. Mem. at 26. Then Defendants proceed to pick apart the individual funds' prospectuses for any differences, regardless of how inappropriate these considerations are at this stage and how inconsequential those differences may be. Defendants' arguments are premature because they require expert opinion, and moreover, factual interpretations of the prospectuses cannot be accepted by the court at this stage. *See Trauernicht*, 2023 WL 5961651, at \*13. For example, Defendants argue that there is a material difference between the Investor Fund's ability to invest anywhere from 65-100% of its assets in in U.S. securities and the fact that "all three Comparators invest primarily in U.S. securities, with little or no allocation to international holdings." Defs. Mem. at 25-26. Likewise, Defendants point out that "the [Investor] Fund may invest in 'common stocks of large and mid-capitalization issuers,' it 'may also invest in small capitalization issuers.'" *Id.* But, that is not distinct from the fact that "the Investor Fund Comparators also target stocks of companies with different market capitalizations." *Id.* Defendants baldly assert that these differences "matter." Defs. Mem. at 26. Defendants do not offer any case law in support of their assertion. On the contrary, these differences, to the extent that there are differences, are

inconsequential. Nonetheless, such an in-depth analysis of these facts, and interpretation of the prospectuses, is inappropriate at the motion to dismiss stage and would require expert testimony. *See Trauernicht*, 2023 WL 5961651, at *13; *Moler*, 2022 WL 2756290, at *6.

Moreover, Defendants improperly ask this court to take judicial notice of prospectuses that are neither explicitly mentioned, nor implicated, by the Complaint. *See* Defs. Mem. at 26-27. Courts routinely find that prospectuses not referenced in complaints cannot be considered at the motion to dismiss stage. *See, e.g., Williams v. Centerra Grp., LLC*, No. 20-cv-04220, 2021 WL 4227384, at *3 (D.S.C. Sept. 16, 2021) ("Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint."); *Miller v. Astellas US LLC*, No. 20-cv-3882, 2021 WL 1387948, at *4 (N.D. Ill. Apr. 13, 2021) ("*Meiners* is inapposite because the Eighth Circuit found in that case that the prospectuses at issue were 'necessarily embraced by' the pleadings. 898 F.3d at 823. That is not the case here; the complaint does not refer to the prospectuses even in passing."); *Krohnengold v. New York Life Ins. Co.*, No. 21-cv-1778, 2022 WL 3227812, at *8 (S.D.N.Y. Aug. 10, 2022) ("the data on which Defendants rely are drawn in large part from summary prospectuses filed with the SEC that are neither incorporated by reference into, nor integral to, the Amended Complaint.").

Worse yet, Defendants improperly ask the Court to interpret the improper exhibits in their favor. Even if "a court considers relevant facts from the public record at the pleading stage, the court must construe such facts in the light most favorable to the plaintiffs, and courts should not consider the contents of a public record as an established fact contradicting the complaint." *Garnick*, 629 F. Supp. 3d at 363 (quoting *Zak v. Chelsea Therapeutics Int'l., Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2015); *see also Karg v. Transamerica Corp.*, No. 18-cv-134, 2019 WL 3938471,

at *6 (N.D. Iowa Aug. 20, 2019) ("Even if the Court takes judicial notice of defendants' SEC filings, though, 'it may not rely on [defendants'] opinions about what proper inferences should be drawn from them.'"); *Binder v. PPL Corp.*, No. 22-cv-00133, 2024 WL 1096819, at *2 (E.D. Pa. Mar. 12, 2024) (denying the defendants' request for judicial notice in an ERISA underperforming funds case because the defendants made factual arguments that are improper at the motion to dismiss stage); *Meiners*, 898 F.3d at 823 n.4 (cautioning that even if courts take judicial notice of fund prospectuses, "[Plaintiffs] may be correct that certain factual findings made by the district court regarding Vanguard [prospectuses] were improper at this stage.").

In sum, Defendants' fund comparison arguments for both challenged funds are unavailing. Defendants rely on out of Circuit cases, often where the courts apply a more stringent standard than the Fourth Circuit. However, in this Circuit, the overwhelming number of courts agree that the "[d]etermination of the adequacy or sufficiency of comparable benchmarks is a fact-intensive inquiry not properly resolved on a motion to dismiss, and one that may require expert opinion." *Moler*, 2022 WL 2756290, at *6; *Trauernicht*, 2023 WL 5961651, at *13.

### 4. Defendants' Imprudent Processes

Plaintiffs do not have direct knowledge of the specifics of Defendants' decision-making process, including investment selection and review processes. *See* Compl. at ¶50. Nonetheless, Plaintiffs have alleged facts regarding Defendants' imprudent processes through circumstantial evidence, as permitted by law. *See Braden*, 588 F.3d at 595; *see also Garcia v. Alticor, Inc.,* No. 20-cv-1078, 2021 WL 5537520, at *4 (W.D. Mich. Aug. 9, 2021) (the inaccessibility of plan information "has resulted in courts reading ERISA plaintiffs' complaints slightly more leniently, allowing discovery as long as plaintiffs have provided enough factual allegations to create reasonable inferences that defendants' process of selecting or monitoring funds was imprudent."). Moreover, ERISA does not require Plaintiffs "to rule out every possible lawful explanation for the

-16-

conduct he challenges." *Braden*, 588 F.3d at 598; *see also Karg*, 2019 WL 3938471, at *6. Defendants denied Plaintiffs' request for certain documents related to the Plan, but nonetheless, Plaintiffs were able to inferentially plead that Defendants employed imprudent processes.

Foremost, Plaintiffs evaluated the information available to Defendants ***at the time of their decision-making***. For example, Plaintiffs allege that "had the Plan fiduciaries been following their own IPS and following generally accepted fiduciary standards, the JPMorgan TDFs would never had been selected for the Plan, and if selected, would have been removed shortly after the start of the Class Period. *See* Compl. at ¶¶82, 89. Likewise, information regarding the underperforming Investor Fund was easily available to Defendants. *Id*. at ¶96. Put differently, "Plaintiffs bring allegations that the Committee failed *for years* to perform sufficient reviews or investigations into the Plan's performance. Thus, it is plausible that Defendants had access to performance data at various points throughout the relevant period, and Plaintiffs' allegation is that Defendants did not adequately consider that information." *Garcia*, 2021 WL 5537520, at *7 (emphasis in original). Therefore, contrary to Defendants' assertion, Plaintiffs' allegations are not based on "hindsight." Defs. Mem. at 1,12; *see also Kistler v. Stanley Black & Decker, Inc.,* No. 22-cv-966, 2024 WL 3292543, at *11–12 (D. Conn. July 3, 2024) (although "[u]nderperformance to the degree shown" is not "*per se* imprudent […] the plaintiffs have alleged underperformance that is consistently observable across both metrics and time, the plaintiffs have plausibly alleged that the BlackRock TDFs' underperformance should have at the very least captured the attention of a prudent fiduciary."); *Muri v. Nat'l Indem. Co.*, No. 17-cv-178, 2018 WL 1054326, at *5–6 (D. Neb. Feb. 26, 2018) (the complaint plausibly alleged a "myriad of 'red flags'" where "a reasonable review process would have uncovered these issues and prompted a prudent fiduciary to remove the Sequoia Fund as a plan option."); *Sellers v. Trustees of Coll*., No. 22-cv-10912, 2022 WL

17968685, at *22 (D. Mass. Dec. 27, 2022) (denying the defendants' motion to dismiss because, "Plan Participants allege that Boston College ignored public red flags about certain investment offerings from TIAA and Fidelity, and that the continued inclusion of such investment offerings was contrary to Plan Participants' interests.").

The IPS also tasked the Committee with selecting options that would produce maximum returns and returns to their peers, as well as evaluating each fund's performance annually using 3- and 5- year returns. *See* Compl. at ¶¶31-32, 80 (quoting IPS at 7). Nonetheless, both challenged funds were selected and retained despite the IPS's specific review processes, thereby inferring an imprudent process was followed, or that no process was followed. *See* Compl. at ¶¶32, 80, 96. Defendants argue that the IPS "cuts against any inference of imprudence", because it states that "the Committee *may* decide to place a fund on a 'watch list'" but "the Committee is not bound by any particular time periods or isolated metrics in deciding whether to remove an investment." Defs. Mem. at 23 (emphasis in original). First, Defendants offer an alternative interpretation of the IPS which is inappropriate at this stage. Their snippets of the IPS do not contradict the entire IPS's guiding purpose and specific review instructions. Although the Complaint references the IPS, "Defendants are not entitled to any inferences drawn from the data itself." *Karg*, 2019 WL 3938471, at *6; *see also Garnick*, 629 F. Supp. 3d at 363 ("courts should not consider the contents of a public record as an established fact contradicting the complaint").

Second, Defendants are merely speculating that the Committee may have permissibly ignored the rest of the IPS. Whether ignoring the IPS was strategic and prudent requires a factual determination on a more developed record. Third, and relatedly, Defendants' explanation is not equal to or more likely than Plaintiffs' allegations. Indeed, "[a]t this stage of the proceedings, [Plaintiffs] need not rebut the possibility that there may be an alternative explanation as to why

-18-

[Defendants] continued to offer the [] Fund as an investment option." *Muri*, 2018 WL 1054326, at *6 (alterations added); *see also Mator*, 102 F.4th at 189 ("[Defendants'] alternative explanation is not more reasonable or better supported than the [Plaintiffs'] theory of misconduct."). The Complaint includes facts from the IPS alongside the realities of the challenged funds' chronic underperformance, thereby sufficiently pleading that the IPS was imprudently ignored. *See, e.g., Baird v. BlackRock Inst. Trust Co. NA,* 403 F.Supp.3d 765, 780 (N.D. Cal. 2019) (finding allegations that the defendants took actions "in contravention of the IPS" supported a reasonable inference of fiduciary breaches). Plaintiffs' allegations are sufficient at this stage, making Defendants' alternative theory irrelevant.

### 5. The Complaint Alleges More than Underperformance Alone

Defendants ignore sections of the Complaint by arguing that Plaintiffs "plead a fiduciary breach based on investment performance alone." Defs. Mem. at 1. Plaintiffs plead that Defendants' imprudent *processes* led to the selection and retention of chronically underperforming funds. *See* Compl. at ¶¶89, 96, 101.

### i. The JPMorgan TDFs

Defendants first argument is that "the Amended Complaint does not allege anything about most JPM TDF vintages", while also admitting that "more information is attached in 'Appendix A'" to the Complaint. Defs. Mem. at 19 (recognizing the "series of graphs" in the Appendix). Actually, the Complaint includes a graph of the TDFs' 2040 vintage, a chart of MPT statistics for the 2020, 2030 and 2040 vintages, and Appendix A demonstrates "similar results [] for the remaining target date years, 2025 through 2055 in five-year increments." *See id.*, at ¶ 88, *see also, id.* at ¶78 n. 8. Defendants' cases do not hold that the performance of each vintage in a TDF suite must be alleged to satisfy the plausibility standard. Defendants cite *Copperstone v. TCSI Corp.*,

No. 97-cv-3495, 1999 WL 33295869 (N.D. Cal. Jan. 19, 1999), which did not involve target date funds, vintages, or ERISA. Defendants' other case, *Beldock v. Microsoft Corp.*, actually involved a standing issue where "the BlackRock Retirement TDF in which Mr. Beldock invested performed better than the retirement vintages offered by the Comparator TDFs." No. 22-cv-108, 2023 WL 1798171, at **2, 4 (W.D. Wash. Feb. 7, 2023). No such standing issue exists here, because the entire suite underperformed, necessarily including the vintages in which Plaintiffs were invested.

Defendants also argue that "neither the Amended Complaint nor Appendix A includes the source data underlying the graphs depicted therein." Defs. Mem. at 19. Not so. Both the Complaint and Appendix A provide that the data and graphs are based on rolling 3-year data, using the Morningstar index as the calculation benchmark. *See* Compl. at ¶78; Appendix A. Also, despite Defendants' assertion, Paragraph 88 of the Complaint shows "the degree of any alleged 'underperformance' in numerical terms." Defs. Mem. at 19. At most, Defendants' arguments confirm that the comparator analysis requires expert opinion. *See Trauernicht*, 2023 WL 5961651, at *13.

Defendants also mischaracterize the Complaints' TDF allegations as showing only "sporadic", "modest, short-term underperformance." Defs. Mem. at 21. In actuality, the Complaint alleges the "fund performed well below its index for 15 consecutive quarters", "on a 3- and 5- year average basis", in violation of the Plan's IPS. *See* Compl. at ¶¶76-89. The Complaint also includes the allegation that the JPMorgan TDFs underperformed *before* their inception, making their initial selection imprudent. *Id*. at ¶72. The IPS makes the 3- and 5- year basis particularly inferential to the "context specific" allegations of the instant Complaint. *Hughes*, 142 S. Ct. at 742. In *Reetz v. Lowe's Companies, Inc.*, a case from this Circuit, plaintiffs plausibly alleged underperformance because the plan's IPS instructed the fiduciaries to "evaluate the Plan's investment options'

performance [against…] the returns of a universe of comparable funds, where applicable, over a full market cycle (typically three to five years)." *Reetz*, 2019 WL 4233616, at *4.[4] Courts in this Circuit and around the country routinely hold that the same degree of underperformance is sufficient to allege underperformance. *See, e.g., Trauernicht*, 2023 WL 5961651, at *12 ("The SAC states that the BlackRock TDFs failed to generate favorable returns for eight consecutive three-year and five-year periods. SAC ¶ 54. That is an allegation of sustained underperformance ..."); *Thomson*, 661 F. Supp. 3d at 1058 (holding that the plaintiffs plausibly alleged "that the Russell TDFs underperformed the State Street ones since their inceptions, over three- and five-year periods leading up to 2017."); *In re Sutter Health ERISA Litig.*, No. 20-cv-01007, 2023 WL 1868865, at *8 (E.D. Cal. Feb. 9, 2023) (denying a motion to dismiss where the plaintiffs pled underperformance based on 3-year and 5-year marks.); *Miller*, 2021 WL 1387948, at *6 ("Perhaps this short window of alleged underperformance ultimately may not be of much help to plaintiffs in proving their claim, but it is not, as a matter of law, too fleeting to support the inference at all."); *Kistler*, 2024 WL 3292543, at *11–12 (similar).

Lastly, Defendants attack MPT, stating that "[b]y Plaintiffs' own admission, the cited Modern Portfolio Theory factors are merely alternative ways to measure past performance." Defs. Mem. at 14. Plaintiffs actually allege the opposite- that MPT is a forward-looking analysis. Plaintiffs allege that MPT is used "**to help determine** […] **when** an investment strategy is imprudent", and MPT has been accepted by courts, "the investment community and, for the

---

[4] *See also* The PNC Financial Services Group, Inc., *Assembling a Robust Investment Policy Statement for Endowments and Foundations*, Jan. 8, 2020 (a "fund's investment performance should be reviewed regularly, such as on an annual basis; however, the emphasis with regard to performance should be focused on results achieved over a full market cycle (typically a three-to-five year period)"). Available at: https://www.pnc.com/insights/corporate-institutional/manage-assets/assembling-a-robust-investment-policy-statement-for-endowments-foundations.html, Last accessed, August 22, 2024.

purposes of ERISA, by the Department of Labor" to help fiduciaries "**initially determine, and continue to monitor**" investments. *See* Compl. at ¶¶83-85 (quoting *DiFelice*, 497 F.3d at 423). Defendants' cited cases were dismissed for "relying [solely] on past performance." Defs. Mem. at 14. Dissimilarly, Plaintiffs here plead "that the Committee failed *for years* to perform sufficient reviews" and rectify the Plan's investments. *Garcia*, 2021 WL 5537520, at *7 (emphasis in original). Defendants support their argument with the distinguishable cases of *Hall* and *Tullgren*, because those cases involved Sharpe Ratios which are one factor of MPT. Defs. Mem. at 14. However, unlike the instant allegations, those cases did not involve the entire MPT package, inclusive of the "top ten modern portfolio criteria used in selecting core fund line-ups." *See* Compl. at ¶87. In fact, MPT is widely recognized as an effective way to plausibly plead underperformance. *See DiFelice*, 497 F.3d at 423; *Tatum*, 761 F.3d at 380 (MPT "has been adopted both by the investment community and by the Department of Labor in its implementing regulations for ERISA."); *Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 351 (N.D. Ill. 2007) ("Defendants also correctly note that the Department of Labor's regulations on ERISA prudence sound in modern portfolio theory."); *Laborers Nat. Pension v. Nor. Trust Advisors*, 173 F.3d 313, 322 (5th Cir. 1999) (the "only expert witness who properly assessed ANB's IO investments" used "modern portfolio ERISA principles" and looked at the challenged fund's quarterly reports from the relevant period, and "overall performance for 1992.").

### ii. The Investor Funds

As a threshold matter, Defendants improperly ask this court to take judicial notice of Morningstar reports that are not referenced in the Complaint. The fact that Plaintiffs use Morningstar data does not mean that Defendants may submit alternative reports that were not referenced in the Complaint. *See, e.g., Miller,* 2021 WL 1387948, at *3 (holding that, although the

complaint referenced Morningstar, the defendants' request for judicial notice of other Morningstar reports was improper because those reports were not "specifically referenced" in the complaint.). Worse yet, Defendants improperly ask the Court to accept their (incorrect) interpretation of the exhibits. Defendants' improper exhibit-based arguments create a "disagreement over interpretation of fees and fund comparison [and] 'raise factual issues that cannot be resolved in a motion to dismiss.'" *Karg*, 2019 WL 3938471, at *7. This is why courts do not credit a defendant's interpretation of documents even if they are judicially noticeable. *See, e.g., id*. at *6-7 ("Defendants allege that the Morningstar data shows 'that the [c]hallenged [f]unds outperformed peer funds in multiple years throughout the putative class period.' (Doc. 25, at 31). Defendants are not entitled to any inferences drawn from the data itself."); *Binder*, 2024 WL 1096819, at *2 (similar).

Nonetheless, Defendants' improper reports do not undermine the plausibility of Plaintiffs' allegations. The fact that the fund had more assets than other funds (Defs. Mem. at 28) does not translate to prudence or performance, and Defendants' one improperly submitted Morningstar report from 2024 (*id*.) does not contradict the fund's overall history of underperformance as demonstrated by Plaintiffs' Morningstar data. *See* Compl. at ¶¶76-82, 91-95. The Morningstar rankings also show that Defendants are incorrect to argue that the fund had only "modest, short-term, and intermittent underperformance." Defs. Mem. at 28.

Defendants also incorrectly state that "Plaintiffs again rely almost entirely on the Investor Fund's trailing three-year returns" and "the Amended Complaint's own Modern Portfolio Theory metrics show the Investor Fund performed at least as well as the 'large blend' category in terms of 'Beta' and 'Sharpe ratio'..." *Id*. at 28. Actually, the Complaint includes subpar performance including data from "three and five year risk factors", and the ***total*** MPT analysis demonstrates the fund's significant underperformance. *See* Compl. at ¶¶95-96.

In totality, the degree and consistency of underperformance alongside the IPS allegations plausibly alleges that Defendants imprudently selected and retained the challenged funds. Defendants' arguments are a premature "fact-intensive inquiry […] that may require expert opinion." *Moler*, 2022 WL 2756290, at *6.

### C.    Plaintiffs Have Article III Standing to Challenge the Investor Fund

Defendants incorrectly assert that because Plaintiffs "never held the Investor Fund" they cannot assert Article III standing. Because Plaintiffs were invested in at least one challenged fund, they have standing to assert a claim for *all* the challenged funds.

The court in *Garnick* was unpersuaded by the same argument Defendants make here, holding that "courts have recognized that a plaintiff who is injured in his or her own plan assets— and thus has Article III standing—may proceed under § 1132(a)(2) on behalf of the plan or other participants even if the relief sought 'sweeps beyond his own injury.'" *Garnick*, 629 F. Supp. 3d at 361 n.3 (quoting *Clark v. Duke Univ.*, No. 16-cv-1044, 2018 WL 1801946, at *4 (M.D.N.C. Apr. 13, 2018)); *see also Walsh v. Marsh & McLennan Cos., Inc.*, No. 04-cv-0888, 2006 WL 734899, at *1 (D. Md. Feb. 27, 2006) ("[I]t does not matter, at least for the purpose of constitutional standing, that Walsh was not invested in the funds in which such trading practices occurred."); *Boley v. Universal Health Servs.*, 36 F.4th 124, 132 (3d Cir. 2022) ("Article III does not prevent the Named Plaintiffs from representing parties who invested in funds that were allegedly imprudent due to the same decisions or courses of conduct."); *Leber v. the Citigroup 401(k) Plan Investment Committee*, 323 F.R.D. 145, 155 (S.D.N.Y. 2017) ("Plaintiffs have standing to assert all of the claims brought in this action even though they did not invest in each of the [challenged] Funds at issue."); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 250 F. Supp. 3d 460, 465 (N.D. Cal. 2017) (Under Article III, "plaintiffs' [had] standing on investment options which they did not

-24-

invest."); *In re Prime Healthcare ERISA Litig.*, No. 20-cv-01529, 2023 WL 9319290, at \*4 (C.D. Cal. Dec. 28, 2023) (similar); *Larson v. Allina Health Sys.*, 350 F. Supp. 3d 780, 792 (D. Minn. 2018) ("the fact that the representative Plaintiffs in this case did not invest in the ProManage option or the mutual fund window, does not prevent them from bringing a claim on behalf of the whole plan…"); *Lopez*, 2023 WL 7129858, at \*7 ("A plaintiff need not show that he invested in all of the funds implicated when he has invested in at least one related fund and alleged injury to the plan at large resulting in uniform loss to all plan members in order to allege standing."); *Cassell v. Vanderbilt Univ.*, No. 16-cv-2086, 2018 WL 5264640, at \*2-3 (M.D. Tenn. Oct. 23, 2018) (similar).

Defendants' cases are inapplicable. Defendants cite *David v. Alphin*, but that case involved a defined benefit plan, whereas the instant Plan is a defined contribution plan. *See* No. 07-cv-11, 2008 WL 5244504, at \*2 (W.D.N.C. Dec. 15, 2008), *aff'd*, 704 F.3d 327 (4th Cir. 2013). As the Fourth Circuit has held**,** "because the plans at issue are *defined contribution* plans, rather than *defined benefit* plans, we reject the defendants' argument that the plaintiffs' injuries are not redressable and therefore that they lack Article III standing." *In re Mutual Funds*, 529 F.3d 207, 210 (4th Cir. 2008) (emphasis in original); *see also*, *Feinberg*, 2018 WL 3970470, at \*5 ("The Plan at issue herein is not a defined-benefit plan but a defined contribution 401(k) plan."). Indeed, the Supreme Court's decision in *Thole v. U. S. Bank* held that the different types of plans were "'of decisive importance.'" *Jones v. Coca-Cola Consol., Inc.*, No. 20-cv-00654, 2021 WL 1226551, at \*3 (W.D.N.C. Mar. 31, 2021) (quoting *Thole*, 140 S. Ct. 1615, 1618 (2020)). Defendants also rely on unpublished, district court cases from the Second Circuit: *Antoine v. Marsh & McLennan Companies, Inc.*, No. 22-cv-6637, 2023 WL 6386005 (S.D.N.Y. Sept. 30, 2023) and *Patterson v. Morgan Stanley*, No. 16-cv-6568, 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019). Yet even the

*Antoine* court admitted that "[s]ome courts in this District have suggested that a plaintiff may maintain a class action suit with claims based on the inclusion of funds in which the plaintiff did not invest based on the derivative nature of an ERISA suit such as this one." 2023 WL 6386005, at *7 (listing cases). *Garnick* and *Mutual Funds* are published opinions from this Circuit, and therefore more persuasive than Defendants' authorities.

Furthermore, Defendants ignore the Complaint's allegation that "each Plaintiff suffered injury to their Plan account by having to pay for their share of consulting fees to maintain the underperforming funds in the Plan. From 2018 to 2022, the Plan paid Aon a total of, at least, $553,280 to assist in maintaining and selecting the investments in the Plan. Aon and the Plan's fiduciaries' performance was abysmal thus making the consulting fees unjustified for the services provided." Compl. at ¶¶20-22. This waste of assets, traceable to both Plaintiffs' accounts, includes the advice to continuously offer the Investor Fund over other options, and therefore satisfies Article III Standing. *See In re Mutual Funds*, 529 F.3d at 219; *Boley*, 36 F.4th at 132. Plaintiffs have standing to allege claims regarding the Investor Fund.

### D.    Plaintiffs' Monitoring Claim

Defendants note that Count II's failure to monitor claims is derivative of Plaintiffs' Count I duty of prudence claim. *See* Defs. Mem. at 29. Plaintiffs' allegations are sufficient to create the reasonable inference that Defendants breached their fiduciary duties, which thus extends to their duty to monitor. *See Garnick*, 629 F. Supp. 3d at 367.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request  the Court deny Defendants' motion to dismiss in its entirety, or in the alternative, to grant Plaintiffs leave to amend in order to cure any deficiencies the Court may identify.[5]

Dated: August 28, 2024

Respectfully submitted,

/s/ Mark K. Gyandoh
Mark K. Gyandoh
PA Attorney ID #88587
(Admitted *Pro Hac Vice*)
**Capozzi Adler, P.C.**
312 Old Lancaster Road
Merion Station, PA 19066
Telephone: (610) 890-0200
Email: markg@capozziadler.com

Peter A. Muhic
**Muhic Law LLC**
923 Haddonfield Road
Suite 300
Cherry Hill, NJ  08002
Telephone: (856)324-8252
Email: Peter@muhiclaw.com

John Szymankiewicz
**Matheson & Associates, PLLC**
127 West Hargett Street, Suite 100
Raleigh, NC 27601
Telephone: (919) 335-5291
Email: john@mathesonlawoffice.com

*Attorneys for Plaintiffs*
*and the Putative Class*

---

[5] Should the Court find the claims and allegations against Defendants deficient in any manner, Plaintiffs respectfully request leave to amend to cure such deficiencies. Leave to amend should be "freely given when justice so requires" under FED. R. CIV. P. 15(a). *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) ("The Supreme Court has emphasized that '[Foman's] mandate is to be heeded.'"). Plaintiffs have not attached a proposed amended complaint, because Plaintiffs are not aware of any specific defects.

## <u>CERTIFICATE OF WORD COUNT UNDER LOCAL RULE 7.3</u>

I hereby certify that Plaintiffs' Memorandum of Law in Opposition to Defendants'

Motion to Dismiss the Amended Complaint does not exceed 8,331 words.

<u>/s/ Mark K. Gyandoh</u>
Mark K. Gyandoh

-28-

## CERTIFICATE OF SERVICE

I hereby certify that, on August 28, 2024, a true and correct copy of the foregoing document was filed with the Court's ECF system, which will send notice of such filing to all counsel of record.

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh

-1-