IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-105-D

BETSY ENSTROM et al., )
 )
        Plaintiffs, )
 )
   v. ) **ORDER**
 )
SAS INSTITUTE et al., )
 )
        Defendants. )

On February 22, 2024, Besty Enstrom ("Enstrom"), John Stana ("Stana"), and Randall Wagner ("Wagner") (collectively "plaintiffs") filed a putative class action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., against SAS Institute Inc. ("SAS"), the SAS Institute Board of Directors ("Board"), 10 John Doe SAS Board members ("Doe Board Members"), the SAS Retirement Committee ("Retirement Committee"), 10 John Doe SAS Retirement Committee members ("Doe Committee Members"), and approximately 10 John Doe employees that may have acted as fiduciaries ("Doe Employees") (collectively "defendants") [D.E. 1]. On June 3, 2024, plaintiffs filed an amended complaint dropping Enstrom as a plaintiff [D.E. 16].

Plaintiffs allege two counts in their amended complaint. See id. at ¶¶ 97–111. Count one alleges that the Retirement Committee, the Doe Committee Members, and other Doe Employees breached their fiduciary duty to plaintiffs by selecting and continuing to offer purportedly underperforming funds in the SAS Defined Contribution Retirement Plan ("Plan"). See id. at ¶¶ 97–104. Count two alleges that SAS, the Board, and the Doe Board Members breached their duty to monitor the Retirement Committee. See id. at ¶¶ 105–11.

On July 15, 2024, defendants moved to dismiss the amended complaint [D.E. 17], filed a memorandum in support [D.E. 18], and provided numerous declarations [D.E. 19]. On August 28, 2024, plaintiffs filed a memorandum in opposition [D.E. 22] and a declaration [D.E. 23]. See Fed. R. Civ. P. 12(b)(1), (6). On September 20, 2024, defendants replied [D.E. 24]. As explained below, the court grants defendants' motion to dismiss the amended complaint.

I.

SAS is a data services company headquartered in Cary, North Carolina with thousands of employees. See Am. Compl. ¶ 24. SAS offers a defined contribution retirement plan to its employees. See id. at ¶ 6. The Plan allows SAS employees to funnel earnings into a select number of investments for retirement. See id. at ¶ 13–15. The Retirement Committee administers and selects funds for the Plan, and the Board oversees the Retirement Committee. See id. at ¶ 25. From "2018 to at least year-end 2022," the Plan included the American Funds Fundamental Investor R6 Share Class Fund ("American Fund") and from 2018 "to at least the start of 2023," the Plan included the JPMorgan Chase Bank Smart Retirement Passive Blend CF-B Target Date Funds ("JPM Funds") (collectively "the challenged funds"). Id. at ¶ 14.

Stana and Wagner are former SAS employees. See id. at ¶¶ 20–21. While SAS employees, both invested in JPM Funds that the Plan offered. See id. Stana invested in the 2030 JPM Fund, and Wagner invested in the 2025 JPM Fund. See id. Stana and Wagner also paid "their share of consulting fees" from their respective Plan accounts. See id. at ¶¶ 20–22. Neither Stana nor Wagner, however, invested in the American Fund. See [D.E. 22] 32; [D.E. 24] 15.

Plaintiffs contend that the challenged funds significantly underperformed relative to other comparator funds. See Am. Compl. ¶¶ 76–96. In support, plaintiffs' amended complaint includes numerous charts, graphs, and metrics. See id. at ¶¶ 78, 86–88, 93–95; [D.E. 16-1] 1–12. Plaintiffs

2

also contend that SAS violated its own Investment Policy Statement ("IPS") when selecting the challenged funds. See Am. Compl. ¶¶ 80–82, 89, 96.

Defendants move to dismiss the amended complaint for failure to state a claim and lack of standing. See [D.E. 17] 2; [D.E. 18] 15–35. Plaintiffs oppose the motion. See [D.E. 22].

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on judicial experience and common sense."

Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Plaintiffs allege that defendants breached their fiduciary duty of prudence by selecting and failing to jettison the challenged funds. See Am. Compl. ¶¶ 97–104. ERISA seeks to protect beneficiaries of employee benefit plans. See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90 (1983); Pension Benefit. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 715 (2d Cir. 2013); DiFelice v. U.S. Airways, Inc., 497 F.3d 410, 417 (4th Cir. 2007). "An ERISA fiduciary must act with the care, skill, prudence, and diligence that a prudent person acting in a like capacity and familiar with such matters would use." Tibble v. Edison Int'l, 575 U.S. 523, 528 (2015) (quotation omitted); see Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 419 (2014). The fiduciary duty of prudence "derive[s] from the

4

common law of trusts." Tibble, 575 U.S. at 528 (quotation omitted); Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 570 (1985); see Sweda v. Univ. of Penn., 923 F.3d 320, 327 (3d Cir. 2019); St. Vincent, 712 F.3d at 716.

Under the duty of prudence, an ERISA fiduciary must consider "those facts and circumstances that, given the scope of such fiduciary's investment duties, the fiduciary knows or should know are relevant to the particular investment or investment course of action involved." 29 C.F.R. § 2550.404a-1(b)(1)(i); see Stegemann v. Gannett Co., 970 F.3d 465, 473 (4th Cir. 2020). Fiduciaries also must investigate and review options for an ERISA plan's assets, considering not only "the merits of a transaction, but also . . . the thoroughness of the investigation into the merits of that transaction." Stegemann, 970 F.3d at 474 (cleaned up); DiFelice, 497 F.3d at 418. An adequate investigation of existing investments considers whether any of the plan's investments are "improvident" or if a "superior alternative investment" exists. St. Vincent, 712 F.3d at 718–19; see Tibble, 575 U.S. at 530; Stegemann, 970 F.3d at 473 & n.7; Sweda, 923 F.3d at 328. Moreover, a fiduciary must account for changed circumstances that increase risk of loss. See St. Vincent, 712 F.3d at 717. A fiduciary breaches its duty of prudence when it "fail[s] to properly monitor investments and remove imprudent ones." Tibble, 575 U.S. at 530.

The elements of an ERISA breach of fiduciary duty claim are "(1) a plan fiduciary (2) breaches an ERISA-imposed duty (3) causing a loss to the plan." Sweda, 923 F.3d at 328; see Meiners v. Wells Fargo & Co., 898 F.3d 820, 822–23 (8th Cir. 2018). For purposes of their motion to dismiss, defendants focus on whether plaintiffs have plausibly alleged that defendants breached their duty of prudence.

5

III.

To determine whether a fiduciary has breached its duty of prudence, a court examines the fiduciary's conduct "under the circumstances then prevailing." 29 U.S.C. § 1104(a)(1)(B); see Dudenhoeffer, 573 U.S. at 425; Tatum v. RJR Pension Inv. Comm., 761 F.3d 346, 358 (4th Cir. 2014); St. Vincent, 712 F.3d at 716. Courts must not second-guess a fiduciary's prudence with the benefit of hindsight. See Tatum, 761 F.3d at 369; DiFelice, 497 F.3d at 424. Likewise, courts may not "rely, after the fact, on the magnitude of the decrease in the relevant investment's price." St. Vincent, 712 F.3d at 716 (cleaned up). Rather, courts "must consider the extent to which plan fiduciaries at a given point in time reasonably could have predicted the outcome that followed." Id. This inquiry is "context specific." Dudenhoeffer, 573 U.S. at 425.

In evaluating prudence, "a court must ask whether the fiduciary engaged in a reasoned decisionmaking process" consistent with a "prudent man" acting in a like capacity. DiFelice, 497 F.3d at 420; see Pfeil v. State St. Bank & Tr. Co., 806 F.3d 377, 384 (6th Cir. 2015); Tatum, 761 F.3d at 358. A fiduciary "may breach his duties . . . by failing to investigate and evaluate the merits of his investment decisions." DiFelice, 497 F.3d at 410 (cleaned up). The appropriate inquiry focuses on the process that the fiduciary used to make the challenged decision, not the results of the decision. See Tussey v. ABB, Inc., 746 F.3d 327, 335 (8th Cir. 2014). Fiduciary duties require "prudence, not prescience." St. Vincent, 712 F.3d at 716. A fiduciary can discharge procedural prudence through actions including, but not limited to, "appointing an independent fiduciary, seeking outside legal and financial expertise, holding meetings to ensure fiduciary oversight of the investment decision, and continuing to monitor and receive regular updates on the investment's performance." Tatum, 761 F.3d at 358.

6

Plaintiffs alleging a duty of prudence breach must plead facts that permit the court to reasonably "infer from what is alleged that the process was flawed." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 596 (8th Cir. 2009); see St. Vincent, 712 F.3d at 718; Renfro v. Unisys Corp., 671 F.3d 314, 327–28 (3d Cir. 2011); Kendall v. Pharm. Prod. Dev., LLC, No. 7:20-CV-71, 2021 WL 1231415, at *4 (E.D.N.C. Mar. 31, 2021) (unpublished); White v. Chevron Corp., No. 16-CV-793, 2016 WL 4502808, at *7–8 (N.D. Cal. Aug. 29, 2016) (unpublished). "An inference pressed by the plaintiff is not plausible if the facts he points to are precisely the result one would expect from lawful conduct in which the defendant is known to have engaged." Braden, 588 F.3d at 597. To show an inference that a prudent fiduciary in like circumstances would have made a different decision, plaintiffs must provide a "meaningful benchmark." Meiners, 898 F.3d at 822.

Twombly and Iqbal's plausibility standard applies to ERISA claims. See Stegemann, 970 F.3d at 473; Moon v. BWX Techs., Inc., 577 F. App'x 224, 228 (4th Cir. 2014) (per curiam) (unpublished); Kendall, 2021 WL 1231415, at *4. A court cannot accept conclusory allegations "lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value." Twombly, 550 U.S. at 558; see St. Vincent, 712 F.3d at 719; Kendall, 2021 WL 1231415, at *4; Intravaia v. Nat'l Rural Elec. Coop. Ass'n, No. 1:19-CV-973, 2020 WL 58276, at *1 n.1 (E.D. Va. Jan. 2, 2020) (unpublished); Reetz v. Lowe's Cos., No. 5:18-CV-75, 2019 WL 4233616, at *3 (W.D.N.C. Sept. 6, 2019) (unpublished).

"ERISA plaintiffs claiming a breach of fiduciary duty have a challenging pleading burden because of their different levels of knowledge regarding what investment choices a plan fiduciary made as compared to how a plan fiduciary made those choices." Meiners, 898 F.3d at 822. "The critical inquiry, then, is whether the missing factual allegations are facts about the funds

7

themselves, which ERISA plaintiffs can research, or facts about the fiduciary's internal processes, which ERISA plaintiffs generally lack." Id. at 822–23. "Armed with . . . extensive data about a fiduciary's investment decisions, a prospective plaintiff must show, through reasonable inferences from well-pleaded facts, that the fiduciary's choices did not meet ERISA's requirements." St. Vincent, 712 F.3d at 720. The court evaluates the contested investments and processes in relation to the whole retirement plan. See Renfro, 671 F.3d at 327. A plaintiff must plausibly allege that a "prudent fiduciary in like circumstances would have acted differently." St. Vincent, 712 F.3d at 720; see Hughes v. Nw. Univ., 595 U.S. 170, 177 (2022); Stegemann, 970 F.3d at 474–84; Meiners, 898 F.3d at 822.

Defendants argue that plaintiffs have failed to plausibly allege facts showing that the Retirement Committee followed a flawed process for selecting the Plan's investment options. See [D.E. 18] 16–30. Specifically, defendants contend that plaintiffs have provided invalid comparator funds, that the challenged funds did not underperform plaintiffs' comparator funds, and that SAS did not violate its IPS by selecting and maintaining the challenged funds. See id. at 17–34. Thus, according to defendants, the court cannot plausibly infer that defendants followed a flawed process. See id.

Plaintiffs respond that they have plausibly alleged that defendants breached their duty of prudence. See [D.E. 22] 16–32. Plaintiffs argue that ERISA claims do not require specific factual allegations about process at the pleadings stage and that their amended complaint suffices. See id. at 14–15. Plaintiffs contend that the facts they cite in their amended complaint create a plausible inference that defendants breached their duty of prudence by failing to monitor and jettison the challenged funds. See id. at 16–31.

8

A.

As for the JPM funds, plaintiffs have failed to plausibly allege an ERISA claim. Under the totality of the prevailing circumstances at the time, the amended complaint falls short of plausibly alleging that defendants breached their duty of prudence. See Hughes, 595 U.S. at 177.

Plaintiffs contend that the JPM funds have generally underperformed certain comparator funds. See Am. Compl. ¶¶ 76–89. Plaintiffs use a suite of exotic performance metrics to make their point. See id. at ¶ 88. When defendants challenged plaintiffs' interpretation of their own performance metrics, plaintiffs ceded ground, contending that defendants' arguments merely "confirm that the comparator analysis requires expert opinion." [D.E. 22] 28; see [D.E. 18] 25–28. Plaintiffs, however, cannot slide past a motion to dismiss so easily. Even under ERISA, plaintiffs must plead facts sufficient to state a claim for relief "that is plausible on its face." Speaks v. U.S. Tobacco Coop., Inc., 486 F. Supp. 3d 974, 980 (E.D.N.C. 2020) (quotation omitted), aff'd, 31 F.4th 838 (4th Cir. 2022); see Hughes, 595 U.S. at 177; Stegemann, 970 F.3d at 473; Moon, 577 F. App'x at 228. Plaintiffs cannot simply pin their hopes on future experts to make their hypothetical claims plausible in hindsight.

The parties spill much ink over the selection of comparator funds. See [D.E. 18] 20–24; [D.E. 22] 16–22. Assuming without deciding that plaintiffs' selected funds are valid comparators, underperformance against these funds, without more, cannot support a breach of prudence claim. See Hall v. Cap. One Fin. Corp., No. 1:22-CV-857, 2023 WL 2333304, at *6 (E.D. Va. Mar. 1, 2023) (unpublished), dismissed, No. 23-1357, 2023 WL 6388629 (4th Cir. May 12, 2023) (unpublished); Tullgren v. Hamilton, No. 1:22-CV-856, 2023 WL 2307615, at *5 (E.D. Va. Mar. 1, 2023) (unpublished), dismissed sub nom. Tullgren v. Booz Allen Hamilton, Inc., No. 23-1366, 2023 WL 6458653 (4th Cir. May 12, 2023) (unpublished); Kendall, 2021 WL 1231415, at *4–9.

9

Moreover, plaintiffs have failed to plausibly alleged underperformance. See [D.E. 16-1] 2–12. The JPM funds generally provided returns within one-to-two percentage points of plaintiffs' handpicked comparator funds. See id. Plaintiffs' own graphs show that the JPM funds kept pace with, and occasionally outperformed, the Morningstar Lifetime Mod Index benchmark based on three-year and five-year rolling returns. See id. Such alleged underperformance—between one and four percent of a benchmark—fails to state a plausible ERISA claim. See, e.g., Gonzalez v. Northwell Health, Inc., 632 F. Supp. 3d 148, 164–65 (E.D.N.Y. 2022); Abel v. CMFG Life Ins. Co., No. 22-CV-449, 2024 WL 307489, at *5 (W.D. Wis. Jan. 26, 2024) (unpublished); Cho v. Prudential Ins. Co. of Am., No. 19-19886, 2021 WL 4438186, at *9 (D.N.J. Sept. 27, 2021) (unpublished); Patterson v. Morgan Stanley, No. 16-CV-6568 (RJS), 2019 WL 4934834, at *10–11 (S.D.N.Y. Oct. 7, 2019) (unpublished); Bekker v. Neuberger Berman Grp. LLC, No. 16 Civ. 6123, 2018 WL 4636841, at *7 (S.D.N.Y. Sept. 27, 2018) (unpublished). "[A] prudent fiduciary may—and often does—retain investments through a period of underperformance as part of a long-range investment strategy, and will not necessarily reflexively jettison investment options in favor of the prior year's top performers because past performance is no guarantee of future success." Gonzalez, 632 F. Supp. 3d at 163.

Plaintiffs also argue that defendants breached their duty of prudence by failing to follow their own IPS. See Am. Compl. ¶ 81–82. Plaintiffs highlight IPS provisions that require the Retirement Committee to: "Maximize return within reasonable and prudent levels of risk . . . . Provide returns comparable to returns for similar investment options, [and] . . . . [p]eriodically evaluat[e] the investment performance of each fund in the Plans and decid[e] on investment option changes." [D.E. 19-1] 6, 10; see Am. Compl. ¶ 32. These provisions, however, did not require the Retirement Committee to offload the JPM funds. See [D.E. 19-1]. Moreover, plaintiffs cite

10

no IPS provision that any defendant violated by adding the JPM funds to the Plan. To the extent that plaintiffs contend the Retirement Committee improperly maintained the JPM funds, that allegation repackages their deficient underperformance argument. "Without a showing of material underperformance, all Plaintiffs show is that certain investments, in hindsight, performed better than the Challenged Funds, which does not speak to fiduciary process." Baird v. Steel Dynamics, Inc., No. 1:23-CV-356, 2024 WL 3983741, at *5 (N.D. Ind. Aug. 29, 2024) (unpublished).

Selecting the JPM funds and keeping them in the SAS retirement plan was well within "the range of reasonable judgments a fiduciary may make." Hughes, 595 U.S. at 177. Plaintiffs have failed to plausibly allege that defendants breached their duty of prudence. Accordingly, plaintiffs' ERISA claim concerning the JPM funds fails.

B.

As for the American Fund, plaintiffs lack standing. The "irreducible constitutional minimum" of standing consists of three elements: (1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338, (2016) (cleaned up); see Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992); Warth v. Seldin, 422 U.S. 490, 498–502 (1975). Plaintiffs bear the burden of establishing these elements. See Spokeo, 578 U.S. at 338. Moreover, plaintiffs must "clearly . . . allege facts demonstrating" each element. Warth, 422 U.S. at 518; see Spokeo, 578 U.S. at 338; Lujan, 504 U.S. at 561. If plaintiffs lack standing, then the court lacks subject-matter jurisdiction to hear the plaintiffs' claim. See, e.g., Lujan, 504 U.S. at 560–61; Spokeo, 578 U.S. at 338; Warth, 422 U.S. at 518; Sasso v. Tesla, Inc., 584 F. Supp. 3d 60, 71 (E.D.N.C. 2022), aff'd sub nom. Challenge Printing Co. of the Carolinas v. Tesla, Inc., No. 22-2057, 2024 WL 2795180 (4th Cir. May 31, 2024) (per curiam) (unpublished).

11

Defendants contend that plaintiffs lack standing concerning the American Fund because neither Stana nor Wagner invested in the American Fund. See [D.E 18] 30–31. In response, Stana and Wagner cite ERISA and reason that because they "were invested in at least one challenged fund, they have standing to assert a claim for all the challenged funds." [D.E. 22] 32 (emphasis in original).

Plaintiffs proceed from a false premise. "There is no ERISA exception to Article III." Thole v. U.S. Bank N. A., 590 U.S. 538, 547 (2020). Plaintiffs must have an injury-in-fact—a harm that is "both concrete and particularized." Spokeo, 570 U.S. at 339. To be concrete, an injury must be "actual or threatened" even if the harm is intangible. Id. (quotation omitted); Curtis v. Propel Prop. Tax Funding, L.L.C., 915 F.3d 234, 240–41 (4th Cir. 2019). To be particularized, an injury must "affect the plaintiff in a personal and individual way." Spokeo, 578 U.S. at 339 (quotation omitted). Although ERISA permits plaintiffs to sue on behalf of a defined contribution plan, ERISA does not absolve individual plaintiffs of Article III's concrete and particularized injury requirement. See In re Mut. Funds Inv. Litig., 529 F.3d 207, 219 (4th Cir. 2008). A plaintiff must have been invested in, at minimum, one of the funds within a series to challenge that series under ERISA. See, e.g., McWhorter v. Serv. Corp. Int'l., ___ F. Supp. 3d ___, 2024 WL 4165074, at *5 (S.D. Tex. 2024); Davis ex rel. Old Dominion 401(k) Ret. Plan v. Old Dominion Freight Line, Inc., No. 1:22-CV-990, 2023 WL 5751524, at *5–6 (M.D.N.C. Sept. 6, 2023) (unpublished); Perkins v. United Surgical Partners Int'l, Inc., No. 3:21-CV-973, 2022 WL 824839, at *3–4 (N.D. Tex. Mar. 18, 2022) (unpublished); In re LinkedIn ERISA Litig., No. 5:20-CV-5704, 2021 WL 5331448, at *4 (N.D. Cal. Nov. 16, 2021) (unpublished); Lee v. Argent Tr. Co., No. 5:19-CV-156, 2019 WL 3729721, at *3 (E.D.N.C. Aug. 7, 2019) (unpublished); Wilcox v. Georgetown Univ.,

No. CV 18-422, 2019 WL 132281, at *9 (D.D.C. Jan. 8, 2019) (unpublished); Marshall v. Northrop Grumman Corp., 2017 WL 2930839, at *8 (C.D. Cal. Jan. 30, 2017) (unpublished).

Plaintiffs concede that neither Stana nor Wagner invested in the American Fund. See [D.E. 22] 32. Plaintiffs, however, rely on Garnick v. Wake Forest Univ. Baptist Med. Ctr., 629 F. Supp. 3d 352 (M.D.N.C. 2022), and In re Mut. Funds Inv. Litig., 529 F.3d 207 (4th Cir. 2008), for the proposition that plaintiffs who invest in one fund within a closely related fund series may have standing to sue over the performance of that whole series.

In Garnick, the issue was whether plaintiffs had standing over an "R6" fund class when plaintiffs had invested in an "R5" fund class, both of which were offered in the same American Fund series. See Garnick, 629 F. Supp. 3d at 360. Here, defendants concede that plaintiffs have standing to sue over the JPM funds. See [D.E. 18] 30. Plaintiffs, however, cannot use Garnick to stretch their JPM standing to the American Fund, a fund in a separate series and a fund in which they did not invest. See id. at 32–34. As for Mutual Funds, that case does not help plaintiffs. After all, in that case, the plaintiffs' injuries included those that "had an adverse impact on the value of the plan assets in the plaintiffs' individual accounts." In re Mut. Funds Inv. Litig., 529 F.3d at 219 (emphasis added). Here, plaintiffs concede that American Fund assets never touched their individual accounts. See [D.E. 22] 32. Thus, Garnick and Mutual Funds do not help plaintiffs.

Alternatively, plaintiffs allege that Stana and Wagner have standing to challenge the American Fund because they had to pay "their share of consulting fees . . . ." [D.E. 22] 34. Plaintiffs contend that this "waste of assets, traceable to both Plaintiffs' accounts, includes the advice to continuously offer the [American] Fund over other options, and therefore satisfies Article

13

III Standing."[1] Id. A "share of consulting fees" charged to all plan participants, however, is not "fairly traceable" to the Committee's decision to select and maintain the American Fund in the SAS retirement plan. Spokeo, 578 U.S. at 338. Stana and Wagner would have paid their share of unspecified consulting fees regardless of whether they invested in the American Fund. See [D.E. 22] 32, 34. Moreover, plaintiffs do not allege that their share of consulting fees would have been higher or lower depending on the performance of the American Fund. The Committee's decisions to select and maintain the American Fund as a part of the Plan is not "fairly traceable" to the consulting fees that Stana and Wagner would have paid anyway. Spokeo, 578 U.S. at 338. If plaintiffs could support standing by asserting that they had paid a generally assessed consulting fee, then any Plan member would have standing to challenge any fund whether he had personally invested in the fund or not. Thus, plaintiffs lack standing to challenge the American Fund. See, e.g., McWhorter, 2024 WL 4165074, at *5; Davis, 2023 WL 5751524, at *5–6; Perkins, 2022 WL 824839, at *3–4; In re LinkedIn, 2021 WL 5331448, at *4; Lee, 2019 WL 3729721, at *3; Wilcox, 2019 WL 132281, at *9; Marshall, 2017 WL 2930839, at *8. Accordingly, plaintiffs' ERISA claim concerning the American Fund fails.

IV.

On count two, plaintiffs allege that SAS, the Board, and the Doe Board Members breached their duty to monitor the Committee and the Doe Committee Members by failing to supervise and remove unspecified Doe Committee Members. See Am. Compl. ¶¶ 105–11. Failure to monitor

---

[1] The court construes these arguments as the amended complaint presents them—as contentions in support of standing. See Am. Compl. ¶ 22. To the extent plaintiffs make an excessive fee claim, they fail to provide a fee comparator and make only threadbare allegations of "unjustified" consulting fees. Am. Compl. ¶ 22; see Albert v. Oshkosh Corp., 47 F.4th 570, 578–82 (7th Cir. 2022), reh'g denied, No. 21-2789, 2022 WL 4372363, at *1 (7th Cir. Sept. 21, 2022) (unpublished); Smith v. CommonSpirit Health, 37 F.4th 1160, 1169 (6th Cir. 2022). Thus, plaintiffs fail to plausibly allege an excessive fee claim.

14

claims require an underlying breach of fiduciary duty. See Hall, 2023 WL 2333304, at *8; Tullgren, 2023 WL 2307615, at *8; In re Constellation Energy Grp., Inc., 738 F. Supp. 2d 602, 614 (D. Md. 2010); In re Duke Energy ERISA Litig., 281 F. Supp. 2d 786, 795 (W.D.N.C. 2003). Plaintiffs have failed to plausibly allege a breach of fiduciary duty or otherwise lack standing. Accordingly, plaintiffs' failure to monitor claim fails.

V.

In sum, the court GRANTS defendants' motion to dismiss the amended complaint [D.E. 17] and DISMISSES WITHOUT PREJUDICE plaintiffs' amended complaint [D.E. 16].

SO ORDERED. This 3 day of March, 2025.

JAMES C. DEVER III
United States District Judge