# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

JOHN STANA and RANDALL WAGNER, )
individually and on behalf of all others )
similarly situated, )
                                    )  **CASE NO. 5:24-CV-00105-D-RN**

Plaintiffs, )

v. )

SAS INSTITUTE INC., THE BOARD OF )
DIRECTORS OF SAS INSTITUTE INC., )
THE RETIREMENT COMMITTEE OF )
SAS INSTITUTE INC. and JOHN DOES )
1- 30. )

Defendants. )

## MEMORANDUM OF LAW IN OPPOSITION TO
## MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    STATEMENT OF FACTS ................................................................................. 2

     A.    Imprudent Investment Processes.......................................................... 2

     B.    Improper Use of Forfeitures................................................................. 6

III.   ARGUMENT...................................................................................................... 7

     A.    Standard of Review............................................................................... 7

     B.    Judicial Notice ..................................................................................... 8

     C.    Failure to Monitor the JPM TDFs........................................................ 8

          1.  The benchmarks are meaningful........................................................ 13

          2.  The SAC alleges significant underperformance ............................... 18

     D.    Forfeitures Were Improperly Used ...................................................... 20

          1.  The Plan language............................................................................. 22

          2.  The governing laws............................................................................ 25

          3.  Defendants' breaches ........................................................................ 26

          4.  Defendants Violated ERISA's Anti-Inurement Provision ................. 29

IV.   CONCLUSION................................................................................................. 30

PAGE(S)

**Cases**

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
137 F.4th 1015 (9th Cir. 2025) ............................................................................. 14, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................16

*Baird v. BlackRock Institutional Tr. Co.*,
403 F. Supp. 3d 765 (N.D. Cal. 2019) ........................................................................ 10

*Barragan v. Honeywell Int'l Inc.*,
No. 24-cv-4529, 2024 WL 5165330 (D.N.J. Dec. 19, 2024) (*Barragan I*) ................................... 25

*Becerra v. Bank of America Corp.,*
3:24-cv-921 (W.D.N.C. Aug. 12, 2025) ........................................................... 21, 23, 30

*Bell Atlantic Corp., v. Twombly*,
550 U.S 544 (2007)...................................................................................................... 16

*Bouvy v. Analog Devices, Inc.*,
No. 19-cv-881, 2020 WL 3448385 (S.D. Cal. June 24, 2020) ....................................... 19

*Bozzini v. Ferguson Enters. LLC*,
No. 22-cv-05667, 2025 WL 15476172 (N.D. Cal. May 29, 2025)............................................. 25

*Bracalente v. Cisco Sys.*,
No. 22-cv-04417, 2024 WL 2274523 (N.D. Cal. May 20, 2024)................................................. 17

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ....................................................................... 14, 15, 26

*Brotherston v. Putnam Invs., LLC*,
907 F.3d 17 (1st Cir. 2018)........................................................................................ 15

*Buescher v. N. Am. Lighting, Inc.*,
No. 24-cv-2076, 2025 WL 1927503 (C.D. Ill. June 30, 2025)............................................*Passim*

*Bussian v. RJR Nabisco, Inc.*,
223 F.3d 286 (5th Cir. 2000) ....................................................................... 11, 26, 27

Case 5:24-cv-00105-D-RN    Document 40    Filed 10/02/25    Page 3 of 40

*Cain v. Siemens Corp*.,
No. 24-cv-8730, 2025 WL 2172684 (D.N.J. July 31, 2025) ........................................................ 25

*Cano v. The Home Depot, Inc*.,
No.  24-cv-03793, 2025 WL 2589567 (N.D. Ga. Aug. 26, 2025) ................................................ 25

*Chao v. Malkani*,
452 F.3d 290 (4th Cir. 2006) .............................................................................................. 29, 30

*DiFelice v. U.S. Airways, Inc*.,
497 F.3d 410 (4th Cir. 2007) ...................................................................................................... 7

*Dimou v. Thermo Fisher Sci. Inc*.,
No. 23-cv-1732, 2024 WL 4508450 (S.D. Cal. Sept. 19, 2024)................................................. 25

*Doll v. Evergy*,
No. 25-cv-00043 (W.D. W.D. Mo. Sept. 10, 2025)............................................................*Passim*

*Edwards v. CSX Trans., Inc*.,
983 F.3d 112 (4th Cir. 2020) .................................................................................................... 13

*Estay v. Ochsner Clinic Found*.,
No. 25-cv-507, 2025 WL 2644782 (E.D. La. Sept. 15, 2025)................................................... 25

*Falberg v. Goldman Sachs Grp., Inc*.,
No. 19-cv-9910, 2020 WL 3893285 (S.D.N.Y. July 9, 2020)................................................... 20

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014)............................................................................................................. 7, 21

*Fulton v. FCA US LLC*,
No. 24-cv-13159 (E.D. Mich. Sept. 30, 2025)....................................................................*Passim*

*Fumich v. Novo Nordisk* Inc.,
No. 24-cv-9158, 2025 WL 2399134 (D.N.J. Aug. 19, 2025) .................................................... 25

*Gaines v. BDO USA, LLP*,
663 F. Supp. 3d 821 (N.D. Ill. Mar. 21, 2023) ........................................................................ 15

*Garnick v. Wake Forest Univ. Baptist Med. Ctr*.,
629 F. Supp. 3d 352 (M.D.N.C. 2022) ................................................................................. 8, 17

*Hall v. Capital One Fin. Corp*.,
No. 22-cv-000857, 2023 WL 2333304 (E.D. Va. Mar. 1, 2023)................................... 12, 15, 18

*Holliday v. Xerox Corp.*,
732 F.2d 548 (6th Cir. 1984) ................................................................................ 30

*Hughes Aircraft Co. v. Jacobson,*
525 U.S. 432 (1999) ............................................................................................. 30

*Hughes v. Nw. Univ.*,
595 U.S. 170 (2022) ......................................................................................... 12, 15

*Hutchins v. HP Inc.*,
737 F. Supp. 3d 851 (N.D. Cal. 2024) (*Hutchins I*) .................................... 26, 28

*Hutchins v. HP Inc.*,
767 F. Supp. 3d 912 (N.D. Cal. 2025) (*Hutchins II*) ...................... 21, 24, 28

*Hutchins v. HP Inc.*,
No. 25-826 (9th Cir. July 9, 2025) ...................................................................... 24

*Johnson v. Am. United Life Ins. Co.*,
716 F.3d 813 (4th Cir. 2013) ............................................................................... 23

*Johnson v. Parker-Hannifin Corp.*,
122 F.4th 205 (6th Cir. 2024) .................................................................. 11, 13, 14

*Jones v. Dish Network Corp.*,
No. 22-cv-00167, 2023 WL 7458377 (D. Colo. Nov. 6, 2023) (*Jones II*) ............................*Passim*

*Karg v. Transamerica Corp.*,
No. 18-cv-134, 2019 WL 3938471 (N.D. Iowa Aug. 20, 2019) ............................ 8, 19

*Kendall v. Pharm. Prod. Dev., LLC*,
No. 20-cv-71, 2021 WL 1231415 (E.D.N.C. Mar. 31, 2021) ....................... 1, 9

*Kistler v. Stanley Black & Decker, Inc.*,
No. 22-cv-966, 2024 WL 3292543 (D. Conn. July 3, 2024) .................... 15, 19

*Klawonn v. Bd. of Directors for the Motion Picture Indus. Pension Plans*,
No. 20-cv-9194, 2022 WL 17224708 (C.D. Cal. Sept. 27, 2022) ................. 16

*Leigh v. Engle,*
727 F.2d 113 (7th Cir.1984) ................................................................................ 27

*Lockheed Corp. v. Spink*,
517 U.S. 882 (1996) ............................................................................................. 22

*Luckett v. Wintrust Fin. Corp.*,
No. 22-cv-03968, 2024 WL 3823175 (N.D. Ill. Aug. 14, 2024) ................................................. 18

*Macias v. Sisters of Charity of Leavenworth Health Sys.*,
No. 23-cv-01496 (D. Colo. July 24, 2025) ................................................................*Passim*

*Madrigal v. Kaiser Found. Health Plan, Inc.*,
24-cv-05191, 2025 WL 1299002 (C.D. Cal. May 2, 2025)............................................ 25

*Martin v. Feilen*,
965 F.2d 660 (8th Cir. 1992) ................................................................................. 27

*Massey v. Ojaniit*,
759 F.3d 343 (4th Cir. 2014) .................................................................................. 7

*Matney v. Barrick Gold of N. Am.*,
80 F.4th 1136 (10th Cir. 2023) ........................................................................ 14, 18

*Mattson v. Milliman, Inc.*,
No. 22-cv-37, 2022 WL 21596720 (W.D. Wash. Dec. 13, 2022) ............................... 16

*McManus v. Clorox Co.*,
No. 23-cv-05325, 2025 WL 732087 (N.D. Cal. Mar. 3, 2025) (“*McManus II*”) ............. 21, 28, 29

*McWashington v. Nordstrom, Inc.*,
No. 24-cv-1230, 2025 WL 1736765 (W.D. Wash. June 23, 2025) ............................. 25

*Meiners v. Wells Fargo & Co.*,
898 F.3d 820 (8th Cir. 2018) ......................................................................... 16, 17

*Metzler v. Solidarity of Lab. Organizations Health & Welfare Fund*,
No. 95-cv-7247, 1998 WL 477964 (S.D.N.Y. Aug. 14, 1998),
*aff'd sub nom Herman v. Goldstein*,
224 F.3d 128 (2d Cir. 2000)................................................................................ 28

*Naylor v. BAE Sys., Inc.*,
24-cv-00536, 2024 WL 4112322 (E.D. Va. Sept. 5, 2024) ........................................ 24

*Nykiel v. Smith & Nephew, Inc.*,
No. 24-12247, 2025 WL 2347549 (D. Mass. July 11, 2025) ..................................... 24

*In re Omnicom ERISA Litig.*,
No. 20-cv-4141, 2021 WL 3292487 (S.D.N.Y. Aug. 2, 2021)..................................... 20

*Parker v. Tenneco Inc.*,
2025 WL 1173011 (E.D. Mich. Apr. 22, 2025)......................................................... 29

*Pegram v. Herdrich*,
530 U.S. 211 (2000)......................................................................................................... 20

*Perez Cruet v. Qualcomm Inc.*,
No. 23-cv-1890, 2024 WL 2702207 (S.D. Cal. May 24, 2024) ...................................... 21, 26, 30

*Rodriguez v. Intuit Inc.*,
744 F. Supp. 3d 935 (N.D. Cal. 2024) ...................................................................*Passim*

*Sacerdote v. New York Univ.*,
9 F.4th 95 (2d Cir. 2021) ................................................................................................. 26

*Schissler v. Janus Henderson US (Holdings) Inc.*,
No. 22-cv-02326, 2023 WL 6902050 (D. Colo. Sept. 7, 2023),
*R. & R. adopted*,
2024 WL 233141 (D. Colo. Jan. 22, 2024)..................................................................... 10

*Snyder v. UnitedHealth Grp., Inc.*,
No. 21-cv-1049, 2021 WL 5745852 (D. Minn. Dec. 2, 2021) ....................................... 15

*Spano v. The Boeing Co.*,
633 F.3d 574 (7th Cir. 2011) ........................................................................................... 28

*Stegemann v. Gannett Co.,*
970 F.3d 465 (4th Cir. 2020) ............................................................................................. 5

*Stephen v. Trader Joe's Co.*,
No. 1:25-cv-10212 (D. Mass July 22, 2025) .................................................................. 21

*Stewart v. Nextera Energy, Inc.,*
No. 9:23-cv-81314 (S.D. Fla. Aug. 14, 2025) ............................................................... 21, 23, 29

*Su v. Allen*,
No. 17-cv 784, 2023 WL 6323310 (W.D. Ky. Sept. 28, 2023)...................................... 25

*Sweda v. Univ. of Pa.*,
923 F.3d 320 (3d Cir. 2019).............................................................................................. 21

*Tatum v. RJR Pension Investment Committee*,
761 F.3d 346 (4th Cir. 2014) ......................................................................................... 1, 9

*Thomson v. Caesars Holdings Inc.*,
661 F. Supp. 3d 1043 (D. Nev. 2023).............................................................................. 17

*Tibble v. Edison Int'l*,
135 S. Ct. 1823 (2015) (*Tibble I*)................................................................................... 8, 9

*Tibble v. Edison Int'l*,
843 F.3d 1187 (9th Cir. 2016) (*Tibble II*)................................................................ 20

*Trauernicht v. Genworth Fin. Inc.*
No. 22-cv-532, 2023 WL 5961651 (E.D. Va. Sept. 13, 2023) ...............................*Passim*

*Troudt v. Oracle Corp.*,
No. 116-cv-00175, 2017 WL 6630602 (D. Colo. Feb. 16, 2017),
*R. & R. adopted*,
No. 116 cv-00175, 2017 WL 1100876 (D. Colo. Mar. 22, 2017) ............................... 20

*Tullgren v. Booz Allen Hamilton*,
No. 22-cv-000856, 2023 WL 2307615 (E.D. Va. Mar. 1, 2023).................................... 12, 15, 18

*Walsh v. Allen*,
No. 3:17-cv-784, 2022 WL 256312 (W.D. Ky. Jan. 26, 2022) ..................................... 27

*Wright v. JPMorgan Chase & Co*,
No. 2:25-cv-00525, 2025 WL 1683642 (C.D. Cal. June 13, 2025).............................. 24

*Yates v. Hendon*,
541 U.S. 1 (2004)...................................................................................................... 29

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
780 F.3d 597 (4th Cir. 2015) .................................................................................. 8, 13

**Statutes**

29 C.F.R. § 2510.3-102(a)(1)....................................................................................... 27

29 U.S.C. § 1102(34) .................................................................................................. 23

29 U.S.C. § 1103(c)(1).................................................................................................29

29 U.S.C. § 1104(a)(1)..................................................................................................26

29 U.S.C. § 1104(a)(1)(A)(i), (ii) ................................................................................21

**Other Sources**

The Employee Retirement Income Security Act of 1974.......................................*Passim*

Plaintiffs, on behalf of the Plan, respectfully submit this Opposition to Defendants' Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint ("MTD").[1]

## I.    INTRODUCTION

Undoubtedly, "[t]he fiduciary obligations of the trustees to the participants and beneficiaries of [an ERISA] plan are ... the highest known to the law." *Tatum v. RJR Pension Investment Committee*, 761 F.3d 346, 355–56 (4th Cir. 2014) (citation omitted). Defendants breached these duties in numerous ways. *See* Second Amended Complaint, ECF No. 33 ("SAC").

First, had Defendants followed prudent processes and their Investment Policy Statement ("IPS"), as required under ERISA, they would have recognized the JPMorgan Chase Bank SmartRetirement Passive Blend CF-B Target Date Funds ("JPM TDFs") continuously failed to meet the threshold prescribed by the IPS and JPMorgan, and should have never been in the Plan. The IPS's standards and benchmarks for comparing performance plausibly infer that Defendants employed imprudent *processes*, not just that the JPM TDFs underperformed. This Court said it best, "[w]ith the IPS, plaintiffs could research whether the Committee complied with the IPS and plausibly allege facts to support the conclusion that the Committee did not do so and thereby breached its duty of prudence." *Kendall v. Pharm. Prod. Dev., LLC*, No. 20-cv-71, 2021 WL 1231415, at \*5 (E.D.N.C. Mar. 31, 2021) (Dever III, J.); *see also Tatum*, 761 F.3d at 358 n.7 ("[A] fiduciary's failure to act in accordance with plan documents serves as evidence of *imprudent* conduct."). JPMorgan and the IPS dictate why the SAC's benchmarks are meaningful, and Plaintiffs provide extensive details as to why specific TDF series alleged are sufficiently similar to the JPM TDFs. Like many recent cases, the MTD fatally ignores the process

---

[1] The definitions of the Plan and the Parties are incorporated by reference from the SAC and this Court's previous Order granting dismissal without prejudice. *See* ECF No. 25 ("Order").

allegations here to apply a meaningful benchmark and performance analysis that does not apply to the SAC.

Nor do Defendants address the cornerstone of Plaintiffs' particularized forfeiture allegations, which plausibly allege that Defendants failed to prudently and loyally address their fiduciary conflict of interest regarding Plan assets (forfeitures). Defendants unavailingly attempt to say there was no fiduciary discretion regarding forfeiture and/or the payment of Plan expenses, but the SAC quotes the SAS Retirement Plan, as amended and restated effective January 1, 2023 ("Plan Doc."), to demonstrate that SAS in its settlor capacity granted Defendants fiduciary discretion to apply forfeitures to offset plan expenses via participant's accounts. Defendants concede that ERISA and the Treasury Regulations (the "governing laws"), as well as the Plan, permit forfeitures to be used to offset administrative fees, and concede that Plaintiffs provide examples of situations where offsetting employer contributions could be in Plaintiffs' best interests (but those circumstances were absent during the Class Period). *See* MTD at 20, 24, 25. But without citing the SAC, Defendants incorrectly aver that Plaintiffs advance a theory that using forfeitures to offset employer contributions is *per se* illegal. As discussed *infra*, forfeiture cases with similar fiduciary discretion allegations have rejected similar defense arguments. Defendants rely on cases <u>without</u> fiduciary discretion, but that legal analysis simply does not apply here.

Plaintiffs' duty to monitor claim is plausible because it is derivative of the plausibly alleged underlying breaches. *See* this Court's Order granting dismissal of the prior complaint, ECF No. 25 ("Order"), at 14-15. All of Defendants' arguments are legally and factually incorrect. For these reasons, Plaintiffs request that this Court deny Defendants' Motion to Dismiss.

## II.     STATEMENT OF FACTS

### A.      Imprudent Investment Processes

The Investment Policy Statement of SAS Retirement Plan, as amended and restated effective December 2022 ("IPS") bestowed upon the Committee the responsibility for selecting and monitoring the investment choices available in the Plan with the standard that:"[p]erformance should be *equal to or greater than the median return* for a[] […] specific benchmark over the trailing three- and five-year periods." *Id*., ¶¶ 84-85 (quoting IPS, at 8) (emphasis added). Industry experts have also concluded that the three- and five-year period is the most appropriate timeframe for evaluating investment performance, because it covers a full market cycle. *Id.*, ¶ 113. The IPS directs the fiduciaries to use JPMorgan's designated benchmarks for the JPM TDFs. *Id*., ¶ 86 (quoting to the IPS at 12). Per JPMorgan, there are two benchmarks: the S&P Target Date Index ("S&P Index") and a "Composite Benchmark." *Id*., ¶ 88. Because the S&P Index is managed by a neutral, objective third party it is inherently more reliable than the Composite Benchmark customized by JPMorgan, the JPM TDFs' manager. *Id*., ¶ 89. In short, per the IPS the JPM TDFs' returns must be equal to or greater than the Composite Benchmark and/or S&P Index over the trailing three- and five-year periods. Defendants failed to discover, or ignored, that the JPM TDFs failed to meet the standards of the IPS and JPMorgan. *Id*., ¶ 87.

"[N]o two target date series are identical," but "[t]he subtle differences between series are what makes them more or less prudent than others, especially in terms of performance predictability." *Id.*, ¶ 92. The appropriateness of the individual TDF series, or "Comparator Funds", in the SAC are based on several aspects. First, their managers have already been deemed reputable by Defendants because they manage other funds in the Plan. *Id.* ¶ 95. Second, the Comparator Funds and the JPM TDFs have similar underlying holdings and asset allocations, demonstrating a similar strategy, without being identical to the extent that the Comparator Funds would underperform like the JPM TDFs. *Id.* ¶¶ 96-97 (table demonstrating the asset allocations

-3-

similarities). Third, the JPM TDFs and the Comparator Funds all have a significant degree of active management. *Id.* ¶ 99.

Fourth, although some of the Comparator Funds have through glide paths while the JPM TDFs have to glide paths, they are still comparable, because prudent fiduciaries will investigate the results of differing glide paths of differing funds and the IPS does not require any particular type of glide path, but rather directs the fiduciaries to use JPMorgan's benchmark, which includes both "to" and "through" glide path series because glide path types do not rule out the comparability of any TDFs. *Id.* ¶¶ 106-10. Also, neither type of glide path increases the amount of risk after the retirement date, and "[t]he average mutual fund TDF glide path holds 44 percent of its assets in stocks at the target date[,[" so their strategies and asset allocations are sufficiently similar. *Id.,* ¶¶ 103-04 (citation omitted). This is particularly true in the case of the Comparator Funds. For example, the Vanguard Target Retire Trust has a conservative "through" glide path that becomes flat within seven years of retirement. *Id.,* ¶ 111.

Since at least 2016, and continuing thereafter, the JPM TDFs consistently materially underperformed in violation of the IPS's prescribed benchmarks and periods of evaluation, as well as the Comparator Funds. *Id.,* ¶ 114-19.[2] Clearly the JPM TDFs should not have been included in the Plan or at least should have been removed and replaced as early as the start of the Class Period. Rolling returns show that the JPM TDFs consistently underperformed the S&P Index by showing

---

[2] By the start of the Class Period, the JPM TDFs underperformed the comparator funds by 11.23% on a three-year basis and underperformed the S&P Index by 1.47% on a three-year basis. *Id.* By the end of 2020, the JPMorgan TDFs underperformed the comparator funds on average by 24.49% on a three-year basis, and on average by 15.12% on a five-year basis. *Id.,* ¶¶ 117-19. By the end of 2020, the JPMorgan TDFs underperformed the S&P Index on average by 4.40% on a three-year basis, and on average by 1.90% on a five-year basis. *Id.* By the end of 2023, the JPM TDFs underperformed the comparator funds on average by 15.91% on a five-year basis and underperformed the S&P Index by 7.33% on average on a five-year basis. *Id.*, ¶¶ 120-22.

the percentage of months that the JPM TDFs beat the S&P Index on a monthly basis, from each vintage's inception until December 31, 2024. *Id.,* ¶¶ 135-37. This is an accumulation of information that was knowable, and should have been considered, by Defendants at regular intervals. *Id.,* ¶ 138. Additionally, as institutional investors of the JPM TDFs, Defendants or Aon should have had access to the JPM TDFs' performance against the Composite Benchmark throughout the Class Period. *Id.,* ¶ 127. Although Plaintiffs were unable to access this formation, it is highly likely that the JPM TDFs underperformed against the Composite Benchmark throughout the Class Period based on the year end information for 2024, reporting that the Composite Benchmark beat the JPM TDFs in 22 out of 24 instances for vintages 2025-2060, by the 3-, 5-, and 10-year returns. *Id.,* ¶¶ 128-29.

Again, per the IPS, the JPM TDFs must "*at a minimum outperform*[]" the "benchmark[;]" so, even a slight degree of underperformance violates the IPS, especially if that underperformance is continual. *Id.*, ¶¶ 130-31, 139-42 (emphasis added). This makes sense, because even seemingly small differences of .25%, .50%, and 1% create exponential losses in funds that aim to support individuals through retirement. *Id.,* ¶¶ 142-43 (demonstrating the exponential losses for the JPM TDFs verse the S&P Index and the Comparator Funds over just twelve years).

Lastly, when engaging an advisor, an ERISA fiduciary must conduct an "independent investigation into the merits of a particular investment," and it may be imprudent to ignore the sound warnings of advisors. *Id*., ¶¶ 74-75 (citing *Stegemann v. Gannett Co.,* 970 F.3d 465, 472 (4th Cir. 2020)). Defendants either failed to conduct an independent investigation into whether Aon was providing sound advice, or Defendants imprudently ignored Aon's information regarding the JPM TDFs, because all information alleged in the SAC was knowable throughout Defendants' decision making responsibilities. *Id*., ¶ 76.

### B. Improper Use of Forfeitures

SAS may make Discretionary Matching Contributions to its employees. *Id.*, ¶ 50. SAS, as a company, enjoys both direct and indirect benefits by providing contributions to Plan participants, such as the opportunity for significant tax deductions and the ability to retain professional talent. *Id.*, ¶¶ 51-53. If a participant leaves the Plan before the contributions vest, the unvested contributions are forfeited, becoming "forfeitures." *Id.*, ¶¶ 56, 149. Forfeitures "will first be made available to reinstate previously forfeited account balances of former Participants" and then "remaining Forfeitures will be used to reduce the Employer Contribution for the Plan Year following the Plan Year in which such Forfeiture occurs . . . , *or may be applied by the Plan Administrator to pay the expenses of the Plan that may be permissibly paid with Plan assets* in accordance with ERISA." *Id.*, ¶¶ 57- 58 (quoting Plan Doc., at 28, 29) (emphasis added). "[SAS] established a single trust to hold and invest assets of the Plan for the exclusive benefit of Participants," including forfeitures. *Id.*, ¶¶ 145-49 (quoting Trust Agreement dated January 1, 2014, at 1). "All administrative expenses […], will be paid from the Trust, […], except to the extent that the Employer elects to pay such expenses outside of the Trust." *Id.*, ¶ 147 (quoting Plan Doc., at 51). It is up to "*[t]he determination [of] the Plan Administrator*" to make "***adjustments to the Individual Account balances* for Employer Contributions, *Forfeitures, payments*, *earnings and losses, and special charges*.**" *Id.*, ¶ 59 (quoting Plan Doc., at 29) (emphasis added). Essentially, SAS in its settlor capacity granted the plan administrator fiduciary discretion to apply forfeitures, as Plan assets in the Trust, to offset Plan expenses via Participant's accounts, unless SAS choses to pay the plan administrative expenses from non-trust sources (*i.e.*, not forfeitures), or the forfeitures could offset employer contributions.

The Plan's grant of discretion imputed a conflict of interest where Defendants were both

-6-

Case 5:24-cv-00105-D-RN    Document 40    Filed 10/02/25    Page 14 of 40

fiduciaries and agents of the Company. *Id.*, ¶ 153. Under the circumstances present during the Class Period, using forfeitures to reduce the Company's contributions was in the best interest of the Company because that option would decrease company costs for employer contributions. *Id.*, ¶ 151. On the other hand, using forfeitures to pay Plan expenses was in all of the participants' best interest, because using forfeitures to offset Plan fees would reduce or eliminate amounts all participants would otherwise pay in fees. *Id.*, ¶ 152. If there was any risk that SAS would be unable to satisfy its contribution obligations, without forfeitures, then using forfeitures to offset employer contributions may have been in the best interest of plan participants, but that risk was not present during the Class Period. *Id.*, ¶¶ 152, 161. Defendants failed to undertake any investigation into which option was in the best interest of the participants. *Id.*, ¶¶ 154-61.

Since at least the beginning of the Class Period, Defendant improperly used forfeitures for the company's benefit to reduce employer contributions instead of using the funds to benefit Plan participants, causing the Plan to incur at least $4 million in expenses. *Id.*, ¶¶ 148-60 (applying $0 to offset forfeitures in five out of six years). Notably, Defendants left $1,834,408 in forfeitures unallocated in 2018, while participants paid Plan expenses. *Id.* Defendants imprudently, and disloyally placed SAS's interests above the Plan causing avoidable injury to participants' accounts.

## III.   ARGUMENT

### A.   Standard of Review

At this stage, "the court must construe the facts and reasonable inferences 'in the light most favorable to [ the nonmoving party].'" Order at 3 (quoting *Massey v. Ojaniit*, 759 F.3d 343,352 (4th Cir. 2014)). "A fiduciary 'may breach his duties ... by failing to investigate and evaluate the merits of his investment decisions.'" *Id.*, at 6 (quoting *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410 (4th Cir. 2007)). "This inquiry is 'context specific.'" *Id.*, (quoting *Fifth Third Bancorp v.*

*Dudenhoeffer*, 573 U.S. 409, 425 (2014)). But, in no context does ERISA grant fiduciaries a "presumption of prudence" on a motion to dismiss. *Fifth Third Bancorp*, 573 U.S. at 412.

## B. Judicial Notice

As a foundational matter, Plaintiffs object to Defendants' use of outside sources, including the Morningstar Reports and a Department of Labor tip sheet, because none of the documents attached to the MTD are referenced in the SAC nor "integral to and explicitly relied on in the [SAC].'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015); *see id*., at 601 ("the district court erred in taking judicial notice of the challenged documents filed with the SEC."). Defendants improperly attempt to use these sources to refute the well-pled allegations in the SAC and ask this Court to draw inferences in Defendants' favor. However, courts in ERISA cases refuse to consider a "disagreement over […] fund comparison[s]" using the defendants' proffered "data" from industry sources and public "filings", because "[d]efendants are not entitled to any inferences drawn from the data itself." *Karg v. Transamerica Corp.*, No. 18-cv-134, 2019 WL 3938471, at \*\*6-7 (N.D. Iowa Aug. 20, 2019); *see also Garnick v. Wake Forest Univ. Baptist Med. Ctr.*, 629 F. Supp. 3d 352, 363 (M.D.N.C. 2022) ("Even assuming the Department of Labor's website is a public record of which a court can take judicial notice, Defendants [improperly] ask this court to use the information on that website to contradict the allegations in Plaintiffs' Amended Complaint."). If judicial notice is taken, courts err by not "considering the information [from the sources] in the light most favorable to the plaintiffs." *Zak*, 780 F.3d at 607-08. Nonetheless, Defendants' "documents fail to establish any such fact" that Defendants aver. *Id*.

## C. Failure to Monitor the JPM TDFs

The heart of Plaintiffs' claims is that Defendants' *processes* were imprudent, not simply that the JPM TDFs underperformed. In *Tibble I* the Supreme Court held that "a fiduciary is

required to conduct a regular review of its investment with the nature and timing of the review contingent on the circumstances." *Tibble v. Edison Int'l*, 575 U.S. 523, 528 (2015) (*Tibble I*). The Fourth Circuit instructs "that a fiduciary's failure to act in accordance with plan documents serves as evidence of *imprudent* conduct." *Tatum*, 761 F.3d at 358 n.7 (emphasis in original); *see also Kendall*, 2021 WL 1231415, at \*5 (this Court holding the same in *dicta*). The "nature and timing" here is set forth in the IPS and JPMorgan's indices. The SAC alleges that Defendants failed to adhere to the prevailing standard of investigation into the JPMorgan's regular and public dissemination of information in accordance with the market cycles and indexes that the IPS directed Defendants to review. *See* SAC, ¶¶ 114, 130. The S&P Index and Composite Benchmark show that by the investment managers' own standards, the JPM TDFs were subpar, and by the IPS's standards, failing to outperform these benchmarks was unacceptable. True, the FAC's less robust IPS allegations were not sufficient, *see* Order at 10, but the SAC adds additional provisions and details to robustly bolster both the prudence and comparator allegations. *See*, ECF 29-2 (redlined changes to the SAC). "[U]nlike Plaintiffs' earlier complaint, the operative complaint's underperformance allegations are part and parcel of direct allegations that Defendants ignored their own selected criteria for evaluating and monitoring the prudence of Plan investments." *Jones II*, 2023 WL 7458377, at \*7 (denying dismissal); *see also Fulton v. FCA US LLC*, No. 24-cv-13159, Slip Op., at 15 (E.D. Mich. Sept. 30, 2025) (Ex. 1) ("Plaintiffs presented evidence beyond the existence of better performing funds. Namely, Plaintiffs argued that the Challenged Funds failed to meet their own internal goals and benchmarks."). Defendants do not address these process allegations, but instead raise incorrect arguments about the comparators and returns.

Just like *Trauernicht*, a case from this Circuit, "[T]he SAC alleges that the Committee's failure to monitor and compare the investments caused the loss since a prudent fiduciary following

the process proscribed by the IPS would have decided to drop the funds because they were performing poorly, not because the IPS required it to." *Trauernicht v. Genworth Fin. Inc.*, No. 22-cv-532, 2023 WL 5961651, at *12 (E.D. Va. Sept. 13, 2023). Courts routinely deny motions to dismiss when, "[d]espite the existence of the IPS, Plaintiffs [plausibly] allege that the monitoring process set forth by the IPS did not occur." *Jones v. Dish Network Corp.*, No. 22-cv-00167, 2023 WL 7458377, at **6, 8 (D. Colo. Nov. 6, 2023) (*Jones II*) (listing cases); *see also Baird v. BlackRock Institutional Tr. Co.*, 403 F. Supp. 3d 765, 780 (N.D. Cal. 2019) (acting "in contravention of the IPS" plausibly alleged imprudence); *Doll v. Evergy*, No. 25-cv-00043, Slip Op., at 3 (W.D. W.D. Mo. Sept. 10, 2025) (Ex. 2) ("Each Plan's investment option was benchmarked to a specific market index" per the IPS, and when the challenged "TDFs did not pass the IPS scoring criteria and no action was taken."); *Fulton*, No. 24-cv-13159, Slip Op., at 17 ("Plaintiffs alleged that the FCA TDFs underperformed not just comparator funds and relevant market indices but its internal benchmarks as well."). In *Macias*, plaintiffs challenged JPMorgan TDFs, and just like here, the IPS did not explicitly require the removal of the challenged funds, but it required the use of certain benchmarks and review periods, so it was sufficient that the plaintiffs "identified a specific requirement thereunder that they allege Defendants failed to satisfy." *Macias v. Sisters of Charity of Leavenworth Health Sys*., No. 23-cv-01496, Slip Op., at 16 (D. Colo. July 24, 2025) (Ex. 3). Also, even if JPMorgan's benchmarks were not the benchmark designated by the IPS, it is compelling that "Plaintiffs rely on the benchmarks identified in the prospectuses[,]" meaning, "the comparators that [the manager] identified for investors' evaluation of the" JPM TDFs. *Schissler v. Janus Henderson US (Holdings) Inc*., No. 22-cv-02326, 2023 WL 6902050, at *5 n.6 (D. Colo. Sept. 7, 2023), *R. & R. adopted*, 2024 WL 233141 (D. Colo. Jan. 22, 2024). Thus, there is no "hindsight" pleading here, MTD at 11, because the SAC alleges "an

-10-

accumulation of information that was knowable, and should have been considered, by Defendants at regular intervals throughout the Class Period." SAC, ¶ 138; *see also Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, 218 (6th Cir. 2024) ("the 2014 underperformance data (which demonstrates underperformance through December 2014) would have alerted a prudent fiduciary to withdraw from the Focus Funds by early 2015."); *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 307 (5th Cir. 2000) ("[a] reasonable factfinder could conclude that an appropriate investigation would have revealed this information and […], would cause a fiduciary to eliminate" the challenged funds).

Similar to *Macias*, "Defendants do not address Plaintiffs' process-based argument that it was imprudent for Defendants not to compare the JPM TDFs to the S&P Comparator Index despite JPMorgan itself making such comparison in publicly available information but argue that the S&P Comparator Index is not a meaningful benchmark for the JPM TDFs and that the performance differentials are not significant in any event." *Macias*, 23-cv-01496, Slip Op., at 17; *see* MTD at 10-17 (arguing the same). In *Macias*, and numerous other cases, this warranted denying the motion to dismiss. *See id.*, ("Plaintiffs have plausibly pled, at a minimum, flawed processes by Defendants in failing to comply with the requirements of the IPS."); *Jones II*, 2023 WL 7458377, at *7 ("Plaintiffs plausibly allege that consistent underperformance occurred, as well as other signs of unsuitability based on the Plan's own selected criteria[,]" and so "Plaintiff relies on more than underperformance allegations alone."); *Doll*, No. 25-00043, Slip Op., at 7 (similar).

Defendants' avoidance of the process allegations also makes their performance and meaningful benchmark arguments unpersuasive, and their supporting caselaw misplaced. As many recent decisions explain, "whether the Comparator TDFs are similar, and whether the [] TDFs performed significantly worse, is best left for resolution at summary judgment […] [b]ecause there is already evidence that the [] TDFs performed worse than external, and critically, internal

-11-

benchmarks and objectives, the Court's decision on the Comparator Funds does not necessarily affect the complaint's survival." *Fulton*, No. 24-cv-13159, Slip Op., at 19; *see also Doll*, No. 25-00043, Slip Op., at 6 ("allegations of wrongdoing eliminate the need to infer a fiduciary breach through use of meaningful benchmarks."); *Macias*, 23-cv-01496, Slip Op., at 23 ("this performance data must now be viewed in combination with Plaintiffs' process-based allegations that Defendants failed to follow the IPS's requirements with respect to these benchmarks" which made the complaint plausible despite lower degrees of underperformance and the comparator funds' differences less important); *Doll*, No. 25-00043, Slip Op., at 7; *Jones II*, 2023 WL 7458377; *Trauernicht*, 2023 WL 5961651, at **12-13.

Defendants rely on *Hall v. Capital One Fin. Corp.*, No. 22-cv-000857, 2023 WL 2333304 (E.D. Va. Mar. 1, 2023) and *Tullgren v. Booz Allen Hamilton*, No. 22-cv-000856, 2023 WL 2307615 (E.D. Va. Mar. 1, 2023), but in *Trauernicht ,* another case from this Circuit, the court distinguished *Hall* and *Tullgreen* because unlike in "*Tullgren/Hall*" the defendants in *Trauernicht* "failed to follow its internal documents (mainly the IPS)" and "they failed when measured against the criteria listed in the IPS. […] The SAC in this case is thus not the same as in *Tullgren*." *Trauernicht*, 2023 WL 5961651, at *11, 12; *see also Macias*, 23-cv-01496, Slip Op., at 21 (distinguishing *Tullgren* and other cases that found the S&P Index was insufficient, because they "do not reference the identification of the subject indexes as appropriate benchmarks by an operative IPS or investment manager as is the case here."). The same is true here. Ultimately, ignoring the IPS's instructions and the investment manager's published, chronic damaging information regarding the Plan's most important fund are of course "allegations to show that offering the JPM TDFs fell outside the 'range of reasonable judgments' that other plan fiduciaries make." MTD at 12 (quoting *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022)); *see also Doll*, No.

25-00043, Slip Op., at 7 (IPS allegations meant that whether the defendants' "conduct was outside the 'range of reasonable judgments' that fiduciaries make[] […] concerns factual disputes not appropriate for a motion to dismiss.").

Rather than address their own unmet criteria, Defendants discuss two Morningstar Target-Date Strategy Landscape Reports that are improper because the SAC does not discuss either "Morningstar Report" and "even if the documents were to be considered, [Defendants] [are] asking the Court to draw an inference in their favor, which is inappropriate on a motion to dismiss." *Trauernicht*, 2023 WL 5961651, at \*\*9, 11 (citing *Edwards v. CSX Trans., Inc.*, 983 F.3d 112, 117 (4th Cir. 2020)). Nonetheless, Defendants' improper documents undermine their arguments. For instance, both reports actually state that Morningstar "***downgraded***" the JPM TDFs' "People Pillar" ranking. ECF No. 38-6 at 34; *see also* ECF No. 38-5, at 23-24. "[A] fiduciary must account for changed circumstances" such as reported downgrades. Order at 5. Indeed, the JPM TDFs' underperformed for years after the downgrade. *See* SAC, ¶¶ 117-22, 129. Defendants also artfully crop the 2021 report to argue that the "net inflows" of the funds are dispositive. MTD at 12. But the report actually states that "Assets in target-date strategies grew by about 20% year over year," for ***all*** TDFs, but regardless, "Mutual fund flows only tell part of the story." ECF No. 38-6 at 2, 24. Defendants' improperly use exhibits that are untethered to the SAC in an attempt to ask this Court to prematurely view facts about the JPM TDFs in their favor. *See Zak*, 780 F.3d at 601-08. The meaningless information that Defendants contort from Morningstar reports, and any reasons for ignoring the IPS, are at most, "possible alternative explanation[s]" that are "insufficient to require dismissal." *Johnson*, 122 F.4th at 222.

### 1. The benchmarks are meaningful

As discussed, the IPS allegations alter the "meaningful benchmark" analysis in two ways:

(1) the analysis is less important in light of the process allegations, and (2) meaningfulness is satisfied by using Defendants' own criteria. Foundationally, "[w]hat makes a[n] [investment] comparison meaningful […] will depend on context because 'the content of the duty of prudence' is necessarily 'context specific.'" *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1148 (10th Cir. 2023); *see also* Order at 6. The IPS and JPMorgan provide paramount context here. Defendants advance their own preferred criteria for meaningful benchmarks, but that is neither the law nor factually availing. "It strains credulity, however, that the Committee and JPMorgan chose these benchmarks with no consideration of similarities they have with the JPM TDFs." *Macias*, 23-cv-01496, Slip Op., at 20; "In fact, [JPMorgan] designed the [] Custom [] Benchmark as a way to assess the performance of the [JPM] TDFs" so it is "a natural comparison to the [JPM] TDFs." *Fulton*, No. 24-cv-13159, Slip Op. at 18-19; *see also* SAC, ¶ 88 (same); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009) (underperformance against "indices they were designed to track" inferred imprudence); *Johnson*, 122 F.4th 205, 217 ("market indices provided a meaningful comparison because 'tracking the market index was the stated investment goal of the fund.'"); *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1025 (9th Cir. 2025) (Performance compared to a manager's designated index is meaningful). Thus, the S&P Index and Composite Benchmark are meaningful – and not just by Plaintiffs' standards, but the standards of the IPS and JPMorgan.

The Sixth Circuit in *Johnson* refuted the same argument that Defendants make, that "the S&P target date fund benchmark is not a meaningful comparison because (1) it 'combines different aspects of all sorts of different target date funds.'" *Johnson*, 122 F.4th at 217–18; *see also* MTD at 15-16 (arguing the same). Foremost, no "circuit court … has held that a market index can never serve as a meaningful benchmark[,]" and most circuits hold that plaintiffs are permitted to use

comparisons, but that "does not mean that a plaintiff is required to point to a higher-performing fund to demonstrate imprudence." *Id*., at 218; *see also Anderson*, 137 F.4th at 1023 ("a plaintiff does not necessarily need to identify comparable funds or investments[,]" but the investment manager's designated index is a credible source); *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 32 (1st Cir. 2018) (approving the expert's use of an index benchmark); *Braden*, 588 F.3d at 596. Secondly, the S&P Index is frequently upheld in cases with and without similar process allegations. *See id.*, at 217–18; *Trauernicht*, 2023 WL 5961651, at \*11-13 (upholding the S&P Index and distinguishing *Tullgren* and *Hall's* insufficient S&P index allegations); *Macias*, 23-cv-01496, Slip Op., at 17 (the S&P Index is meaningful), *Fulton*, No. 24-cv-13159, Slip Op. at 6 (same); *Kistler v. Stanley Black & Decker, Inc.*, No. 22-cv-966, 2024 WL 3292543, at 10 (D. Conn. July 3, 2024) (same). Thirdly, Defendants improperly attack each comparator separately, instead of evaluating "the allegations as a whole." *Hughes*, 595 U.S. at 177. While comparing the JPM TDFs to individual funds or one index **alone** may be insufficient, courts routinely hold that an index alongside specific comparators are holistically plausible as a matter of fact and law at this stage. *See*, *e.g.*, *Kistler*, 2024 WL 3292543, at \*10; *Gaines v. BDO USA, LLP*, 663 F. Supp. 3d 821, 829-30 (N.D. Ill. 2023); *Fulton*, No. 24-cv-13159, Slip Op. at 17; *Snyder v. UnitedHealth Grp., Inc.*, No. 21-cv-1049, 2021 WL 5745852, at \*3 (D. Minn. Dec. 2, 2021).

With the inherent meaningfulness of the two indices alleged, the Court need not dwell on the Comparator Funds. *See Doll*, No. 25-00043, Slip Op., at 6; *Fulton*, No. 24-cv-13159, Slip Op., at 19. Nevertheless, the SAC details the comparability of asset allocations, investment managers and styles, and contextualizes the similarities of the glide paths despite the superficial to/through labels. *See* SAC, ¶¶ 95-99, 106-111. Tellingly, Defendants acknowledge that Plaintiffs include many of these characteristics by (incorrectly) arguing that they are not identical enough to be

plausible. As a matter of law, once plaintiffs have provided reasons for the similarities between funds, a "Defendants['] dispute [of] the accuracy of this characterization" is "not appropriate at this stage." *Macias*, 23-cv-01496, Slip Op., at 19. Indeed, the focus is on whether Plaintiffs have met the plausibility standard in accounting for these characteristics, not whether Defendants agree. *See Trauernicht*, 2023 WL 5961651, at *13 (any "greater level of detail is unnecessary at the motion to dismiss stage where *Iqbal* and *Twombly*" apply); Order at 7 ("*Twombly* and *Iqbal's* plausibility standard applies to ERISA claims."); *Klawonn v. Bd. of Directors for the Motion Picture Indus. Pension Plans*, No. 20-cv-9194, 2022 WL 17224708, at *5 (C.D. Cal. Sept. 27, 2022) ("the Court rejects Defendant's arguments that the comparator plans and their investment choices are so dissimilar from the Plan [] as a matter of law."). Defendants illogically argue that the asset allocations must be identical to be plausible, but Defendants do not cite to any case that says the asset allocations must be any closer than the similar degree alleged.[3] *But see Mattson v. Milliman, Inc.*, No. 22-cv-37, 2022 WL 21596720, at *2 (W.D. Wash. Dec. 13, 2022) (denying the defendants' argument "that the funds and indices described in detail in the amended complaint have 'materially different' equity allocations and, therefore, do not share the same 'aims, risks, and potential rewards.'"). As the SAC explains, any greater level of similarity would result in the same poor performance. *See* SAC, ¶ 96. Contrary to Defendants' misrepresentation, the Eighth Circuit in *Meiners* did not state that the allocation of bonds must be identical, but actually clarified that "Meiners may be correct that certain factual findings made by the district court regarding Vanguard were improper at this stage." *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823, n.4 (8th Cir. 2018). *Doll* is a subsequent case out of the Eighth Circuit explaining that, "[u]nlike the plaintiff

---

[3] *See*, *e.g.*, SAC ¶ 97 (the JPM TDFs were 85% stocks and the Fidelity TDFs were 85.3% stocks, and the JPM TDFs had 11.4% bonds while the Callan TDFs had 10.1% bonds, the JPM TDFs had 3.6% in cash, while the Comparator Funds' cash allocation ranged from 2.5%-4.9%).

-16-

in *Meiners*," "Defendants failed to evaluate and monitor the American Century TDFs in accordance with their guidelines[,]" thus the analysis set forth in *Meiners* is misplaced. *Doll,* No. 25-00043, Slip Op., at 7. Also, Defendants distinguish *Matousek* for Plaintiffs, because the SAC compares TDFs with overwhelming similarities rather than comparing a "value" fund to a "growth" fund. MTD at 16. Additionally, Defendants' improper, 12-year-old Department of Labor "Tips for ERISA Plan Fiduciaries" exhibit undermines their glide path arguments, because it merely says, like the SAC, that glide paths can differ, and fiduciaries should consider these differences. *See* ECF No. 38-4, at 1; *see also* SAC, ¶¶ 106-110 ("[p]rudent fiduciaries […] investigate […] differing glide paths of differing funds[,]" which the IPS and JPMorgan permit); *Garnick*, 629 F.Supp.3d at 363 ("[T]he Department of Labor's website" cannot be used to "contradict the allegations in Plaintiffs' Amended Complaint."). Defendants' exhibit also states that prudent fiduciaries "should consider prospectus information, such as information about performance[,]" which is where the manager's benchmarks are listed. ECF No. 38-4, at 2. Defendants also rely on several distinguishable cases to argue that the glide paths are too different. For instance, Defendants rely on *Bracalente*, but that court actually explained that a complaint can be plausible if there is "a sufficient basis to demonstrate why the comparators are meaningful benchmarks despite their apparent differences." *Bracalente v. Cisco Sys., Inc*., No. 22-cv-04417, 2024 WL 2274523, at *8 (N.D. Cal. May 20, 2024); *see also Thomson v. Caesars Holdings Inc*., 661 F. Supp. 3d 1043, 1058 (D. Nev. 2023) (refusing to accept the defendants' arguments that different glide paths made the funds inapt comparators). Here, the SAC alleges that the apparent differences between glide paths are in reality, not too different for Defendants to consider in their review process. *See* SAC, ¶¶ 104-111 ("[t]he average mutual fund TDF glide path holds 44 percent of its assets in stocks at the target date" and several of the Comparator Funds' glide paths become

-17-

flat close to the retirement date like to glide paths). Thus, the Comparator Funds do not have "different investment strategies and different objectives." MTD at 15 (citing *Matney*, 80 F.4th at 1154 n.14).[4] The alleged reasons for the comparability of the Comparator Funds and the accompanying process allegations, mean that the Plaintiffs do not need to "provide a detailed explanation on the differences between the [JPM] TDFs and the Comparator TDFs." *Trauernicht*, 2023 WL 5961651 at *13 (distinguishing *Tullgren* and *Hall*). Plaintiffs' comparators meaningful.

### 2. The SAC alleges significant underperformance

Although the SAC alleges that the JPM TDFs consistently and materially underperformed, the degree of underperformance is less important because of the SAC's sufficient process allegations. *See Fulton*, No. 24-cv-13159, Slip Op., at 19 ("whether the [] TDFs performed significantly worse, is best left for resolution at summary judgment […] [b]ecause there is already evidence that the [] TDFs performed worse than […] internal benchmarks."); *Macias*, 23-cv-01496, Slip Op., at 22 (because of the process allegations, "a lesser degree of underperformance may now plausibly support that Defendants breached their duty of prudence"); In *Jones I*, "underperformance of 1% to 3.5%, measured at a single point in time, did not suffice[,]" in the court's initial order, but in *Jones II* the same degree of underperformance did not warrant dismissal, because of the newly added process allegations. *Jones II*, 2023 WL 7458377, at *7 (only if there is "no other factual support, an allegation of underperformance (or other performance metric) must be strong enough to support the inference that fiduciaries underwent an imprudent process."). Even

---

[4] The main difference in *Matney* was between "actively and passively managed funds" (not challenged here), and the court poignantly limited its holding to the plaintiffs' "broad allegation […] *here.*" *Matney*, 80 F.4th at 1153 (emphasis in original). The dismissal in *Luckett* is also based on dissimilar facts where "meeting minutes [showed] that the Committee discussed various factors and arrived at the conclusion that in addition to its glidepath, [such as] the low cost" the funds were prudent, which is the opposite of the imprudent processed alleged here. *Luckett v. Wintrust Fin. Corp.*, No. 22-cv-03968, 2024 WL 3823175, at *6 (N.D. Ill. Aug. 14, 2024).

-18-

better than in *Jones II*, the degree of underperformance in greater in the SAC than the FAC. *See* ECF 29-2 (redlined changes to the SAC).

The consistency of absolute and relative underperformance against all comparisons is beyond dispute. *See* SAC, ¶¶ 112-42; n. 2, *supra*. The IPS's standard that funds must beat or exceed the benchmark is also beyond dispute. *Id*., ¶¶ 130-31 ("even a slight underperformance violates the IPS, especially if that underperformance is continual."). Rather than address that the underperformance was unacceptable by the IPS and JPMorgan's standards, Defendants argue that degree of underperformance must be viewed on an absolute basis and must be over 4% based on the dissimilar allegations of the prior complaint and other cases that did not involve similar process allegations. In light of the new process allegations, Defendants apply the wrong the framework for evaluating the degree of underperformance here. As *Jones II*, *Fulton,* and *Macias* instruct, there is no threshold for underperformance "as a matter of law" MTD at 2, because "[t]his inquiry is 'context specific.'" Order at 6. Therefore, although some "[c]ourts have considered underperformance between 1-3% to be insufficient alone to support a claim of imprudence[,]" here "plaintiffs have plausibly alleged that the [JPM] TDFs' underperformance should have at the very least captured the attention of a prudent fiduciary." *Kistler*, 2024 WL 3292543, at *11-12; *see also Fulton*, No. 24-cv-13159, Slip Op., at 6 (the fact that some "vintages outperformed their respective Custom Blend Benchmark" did not undermine the overall plausibility); *Karg*, 2019 WL 3938471, at *7 (positive performance "in certain years within the period" did not undermine the fact that "the challenged funds failed to outperform the comparable funds or the relevant benchmark over the relevant period."); *Bouvy v. Analog Devices, Inc*., No. 19-cv-881, 2020 WL 3448385, at *9 n.7 (S.D. Cal. June 24, 2020) ("Although Defendants challenge the factual basis for Plaintiff's claims, including by showing that some funds did not underperform, Plaintiff provided enough

information to create a factual inference that they indeed underperformed."); *In re Omnicom ERISA Litig.*, No. 20-cv-4141, 2021 WL 3292487, at *4 (S.D.N.Y. Aug. 2, 2021) (underperformance "by as much as 2.92% on a trailing five-year basis" was sufficient).

Moreover, relative underperformance is appropriate because that is how prudent fiduciaries compare funds. *See Falberg v. Goldman Sachs Grp., Inc.*, No. 19-cv-9910, 2020 WL 3893285, at *9 (S.D.N.Y. July 9, 2020) ("even a 1% difference in net returns each year can reduce a participant's savings by over a fourth by retirement."); *Tibble v. Edison Int'l*, 843 F.3d 1187, 1198 (9th Cir. 2016) (*Tibble II*); (a "1%" difference causes exponential losses beyond what occurs "each year" because of the "lost investment opportunity" that a better fund "would have earned over time."); *Troudt v. Oracle Corp.*, No. 116-cv-00175, 2017 WL 663060, at *6 n.2 (D. Colo. Feb. 16, 2017), *R. & R. adopted*, No. 116 cv-00175, 2017 WL 1100876 (D. Colo. Mar. 22, 2017) ("Over time, even seemingly small differences in fees and performance can result in vast differences in the amount of savings available at retirement."). The SAC also provides realistic losses, *i.e.*, the compounding lost investment opportunities over time. *See* SAC, ¶ 126. Defendants do not provide any legal support that Plaintiffs must only include absolute returns.

The IPS criteria and JPM TDFs' relentless underperformance plausibly infer that Defendants failed to prudently monitor and investigate the JPM TDFs.

### D. Forfeitures Were Improperly Used

ERISA permits employers to be sponsors as well as fiduciaries but requires "that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions." *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000). Defendants, failed to wear only their fiduciary hat by not allocating forfeitures in a way that adhered to the Plan and ERISA's "'exclusive purpose' [of …] 'providing benefits to participants and their beneficiaries' while

'defraying reasonable expenses of administering the plan.'" *Fifth Third Bancorp*, 573 U.S. at 420 (quoting §§ 1104(a)(1)(A)(i), (ii)). This is called the "exclusive benefits rule." ERISA "makes clear that the duty of prudence trumps the instructions of a plan document." *Id*. at 421. Critically, "while fiduciaries have discretion in plan management, that discretion is bounded by the" exclusive benefit rule, especially "[w]hen expenses are paid from plan assets." *Sweda v. Univ. of Pa.*, 923 F.3d 320, 333, 329 (3d Cir. 2019). These bedrock principles apply to forfeiture cases. Simply put, "[i]f there is a breach, then abiding by the Plan terms cannot save defendants." *McManus v. Clorox Co.*, No. 23-cv-05325, 2025 WL 732087, at *4 (N.D. Cal. Mar. 3, 2025) ("*McManus II*"); *see also Perez Cruet v. Qualcomm Inc.*, No. 23-cv-1890, 2024 WL 2702207, at *3 (S.D. Cal. May 24, 2024) (same); *Buescher v. N. Am. Lighting, Inc.*, No. 24-cv-2076, 2025 WL 1927503, at *11 (C.D. Ill. June 30, 2025) (same); *Becerra v. Bank of America Corp., 3:24-cv-921*, at 6 (W.D.N.C. Aug. 12, 2025) (Ex. 4); *Stewart v. Nextera Energy, Inc.,* No. 9:23-cv-81314, Slip Op., at 16 n. 15 (S.D. Fla. Aug. 14, 2025) (Ex. 5); *Stephen v. Trader Joe's Co.*, No. 1:25-cv-10212 (D. Mass July 22, 2025) (ECF No. 47).

Defendants' arguments for dismissing the forfeiture allegations are based entirely on the fiction that Defendants did not have the fiduciary discretion that they undeniably had. Defendants' contradictions and near total lack of citations to the SAC undermines their strawman arguments. Defendants admit that "[t]he Treasury Department's proposed new regulations clarify the permissible use of forfeitures […] [t]o pay plan administrative expenses" and that "[t]he Plan further provides that forfeitures will be used to pay the Plan's administrative expenses." MTD at 20, 24. Accordingly, the discretion in this case is readily distinguishable from cases challenging settlor mandates to only use forfeitures to offset employer contributions where those plaintiffs may have "ignore[d] decades of settled law." MTD at 19 (quoting *Hutchins II*, 767 F. Supp. 3d at 922-

23). Thus, unlike those cases, Plaintiffs are not asking for "greater benefit than the Plan provides" nor insisting that Defendants to defy any governing laws or the Plan. MTD at 18. Defendants also admit that Plaintiffs allege "offsetting employer contributions might not violate ERISA" in some circumstances, MTD at 25 (citing SAC ¶ 152), but contradict themselves, without any reference to the SAC, to state that Plaintiffs seek to render the "option to pay for administrative expenses under the Plan a duty under ERISA" in all circumstances. MTD at 27. Defendants' arguments fail under the "context specific" analysis. Order at 6.

### 1. The Plan language

"To be sure, when Defendants designed the 401(k) Plan, and in doing so directed that 'Forfeitures may be used to pay administrative expenses *or* to reduce Employer Contributions,' they were acting as settlors." *Buescher*, 2025 WL 1927503 *11 (citing *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996)); *see also* MTD at 23 (stating that the Plan and terms were designed by the settlor). Yet, "when the time came to actually exercise the discretion provided by the Plan, to determine whether forfeitures would be allocated toward Plan expenses or toward offsetting [ITW]'s contributions, the decision was clearly made in a fiduciary capacity." *Id.*; *see also Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935, 943 (N.D. Cal. 2024) ("Rather than challenging any decision regarding the design of the Plan (which would be a settlor function), [Plaintiffs] challenge[] [Defendants'] 'decisions regarding how to apply forfeited contributions after they have been paid to the Plan and have become 'plan assets.'"). Defendants' decision-making regarding forfeitures and use of their discretion was clearly a fiduciary, not a settlor, function.

The only limit on fiduciary discretion regarding forfeitures was that if SAS decided to pay plan expenses from sources "outside the trust" (*i.e.*, not forfeitures) then the forfeitures could not be used to pay Plan expenses. SAC, ¶¶ 147-49 (quoting Plan Doc., at 51). Defendants are only

-22-

correct in two respects: (1) "unless SAS volunteers to pay Plan-related expenses, those expenses will be paid by Plan participants" and (2) "The Plan further provides that forfeitures will be used to pay the Plan's administrative expenses and/or to reduce SAS's matching contributions." MTD at 29. Defendants' cherry picking of Plan language ignores the key provision that the "[d]etermination" to "adjust[]" participants' accounts based on "[f]orfeitures, payments […] and special charges" is a matter of discretion grated to the fiduciaries by the settlor. SAC, ¶ 59 (quoting Plan Doc., at 29); *see also* "§ 1002(34) ("forfeitures of accounts of other participants [] may be allocated to such participant's account."). Ultimately, Plan expenses are borne by participants' accounts wherein the fiduciaries may adjust the payments made from participants' accounts using forfeitures. As alleged in the SAC, sometimes using forfeitures to offset employer contributions rather than expenses can satisfy the exclusive benefits rule, but those circumstances were not present during the Class Period, nor did Defendants prudently and loyally "investigate whether there was a risk that SAS would be unable to satisfy its contribution obligations if forfeitures were used to pay Plan expenses." *See* SAC, ¶¶ 152-55.

Defendants' self-serving interpretation of the Plan Doc. is owed no deference. The Fourth Circuit instructs that "ERISA plans are contractual documents which […] apply the rule of *contra proferentum* and construe the terms strictly in favor of the" participants. *Johnson v. Am. United Life Ins. Co.*, 716 F.3d 813, 819-20 (4th Cir. 2013). In forfeiture cases specifically, courts do not dismiss claims based on plan language disputes. "At this stage, Plaintiff has stated sufficient facts to support the claim that Defendants were exercising discretion as fiduciaries" and therefore, the Court does not need to resolve "arguments made by both parties [that] involve questions about how to interpret the Plan." *Becerra*, 3:24-cv-921, Slip Op. at 6; *see also Stewart*, No. 9:23-cv-81314, Slip Op., at 16 n. 15 ("At this stage at least, the Court will not simply defer to the

Committee's interpretation and dismiss Plaintiff's forfeiture theory.").

SAS, acting in a settlor capacity, granted discretion to the fiduciaries which imposed a conflict of interest that does not exist in other cases where there was no grant of discretion. For instance, in *Naylor*, "the Plan *requires*, without any discretion reserved to the Defendant" how forfeitures were to be used, and "it is unclear how under these Plan provisions *any* forfeiture amount during the relevant years could have been directed towards any other purpose than offsetting contributions." *Naylor v. BAE Sys., Inc.*, 24-cv-00536, 2024 WL 4112322 (E.D. Va. Sept. 5, 2024),*6 (emphasis in original), *see also id.*, at **4, 5 (That plan stated "forfeitures 'shall' be used to reduce future employer contributions" and then "excess forfeitures are carried forward and used as employer contributions in succeeding payroll periods until depleted.").[5] Likewise, in *Hutchins II*, opposite of here, the plan language stated that "the fiduciary allocation decision is restricted" by the "*complete and unfettered* discretion" of "HP acting as settlor*" and* "reserves to HP, *as settlor*, the decision to defray administrative costs" using forfeitures, meaning there was effectively no fiduciary discretion. *Hutchins v. HP Inc.*, 767 F. Supp. 3d 912, 922, 927 (N.D. Cal. 2025) (*Hutchins II*) (empahsis added); *but see* SAC, ¶¶ 157 ("the Plan grants Defendants discretion to use forfeitures to pay Plan expenses"). The plan language in *Hutchins II* is also why the Secretary of Labor's brief in the *Hutchins II* appeal does nothing to help Defendants. *See* Brief for the U.S. Sec'y of Labor, as Amici Curiae Supporting Respondents, *Hutchins v. HP Inc.*, No. 25-826, Dkt. No. 24 (9th Cir. July 9, 2025) ("DOL Br."). In fact, the Department of Labor has itself

---

[5] *See also McWashington v. Nordstrom, Inc.*, No. 24-cv-1230, 2025 WL 1736765, at *13 (W.D. Wash. June 23, 2025) ("the Plan document dictates that they be applied" in a specific order); *Nykiel v. Smith & Nephew, Inc.*, No. 24-12247, 2025 WL 2347549, at *3 (D. Mass. July 11, 2025), (same); *Wright v. JPMorgan Chase & Co*, No. 2:25-cv-00525, 2025 WL 1683642, at *4 (C.D. Cal. June 13, 2025) ("the Plan does *not* in fact allow Defendants to use forfeited funds to pay participants' share of administrative expenses.").

successfully brought claims to restore "forfeited funds the Secretary [of labor] says should've gone into [participant] accounts." *Su v. Allen*, No. 17-cv 784, 2023 WL 6323310, at *2 (W.D. Ky. Sept. 28, 2023). This accords with ERISA' "context specific" inquiry. Order at 6. The amicus poignantly narrowed its position to "*the manner alleged in this case*," and based on "the [HP] Plan's *particular* terms." DOL Br. at 1, 14 (emphasis added). Defendants rely on cases without fiduciary discretion rather than attempt to distinguish cases with similar theories of liability.[6] Defendants' sources are misplaced due to this Plan's language and particularized facts which accord with, rather than "limit[]" "SAS' decision-making" as a settlor. MTD at 26.

### 2. The governing laws

Plaintiffs' theory of liability is not that defendants violated or would need to violate any governing law or the Plan. Defendants concede that "Treasury regulations have expressly authorized […]that forfeitures 'may be used to pay for a plan's administrative expenses and/or to reduce employer contributions.'" MTD at 20. Like the Plan language, neither governing law *requires* a course of action, nor do Plaintiffs allege as much. Yet, without any cite to the SAC,

---

[6] Defendants cite to several cases where the courts have granted leave to amend to add the type of particularized allegations found here because the governing laws did not foreclose the claims. *See Cano v. The Home Depot, Inc.*, No. 24-cv-03793, 2025 WL 2589567, at *4, 6 (N.D. Ga. Aug. 26, 2025) (refuting the same settlor arguments, and holding "none of these regulations are dispositive"); *Barragan v. Honeywell Int'l Inc.*, No. 24-cv-4529, 2024 WL 5165330, at *3 n. 5, 6 (D.N.J. Dec. 19, 2024) (*Barragan I*) ("The Court disagrees with Honeywell that U.S. Department of Treasury regulations bar Barragan's theory of liability" and an anti-inurement claim may still be plausible although "forfeited amounts do not leave the Plan and are used to satisfy Honeywell's obligations according to the Plan's language."); *Bozzini v. Ferguson Enters. LLC*, No. 22-cv-05667, 2025 WL 1547617, at *2 (N.D. Cal. May 29, 2025) (granting leave to amend despite tax law argument); *Fumich v. Novo Nordisk* Inc., No. 24-cv-9158, 2025 WL 2399134, at *6–7 (D.N.J. Aug. 19, 2025) (granting leave to amend); *Madrigal v. Kaiser Found. Health Plan, Inc.*, 24-cv-05191, 2025 WL 1299002, at *3 (C.D. Cal. May 2, 2025) (same); *Cain v. Siemens Corp.*, No. 24-cv-8730, 2025 WL 2172684, at *6 (D.N.J. July 31, 2025) (same); *Dimou v. Thermo Fisher Sci. Inc.*, No. 23-cv-1732, 2024 WL 4508450 (S.D. Cal. Sept. 19, 2024) (same); *Estay v. Ochsner Clinic Found.*, No. 25-cv-507, 2025 WL 2644782, at *3 (E.D. La. Sept. 15, 2025) (same).

Defendants advance a strawman argument that "Plaintiffs' theory, therefore, would mean the Treasury Department continues to authorize a practice that simultaneously constitutes a violation of ERISA" and the "'exclusive benefit' requirement" the governing laws have in common. MTD at 21. To the contrary, the exclusive benefits rule required Defendants to approach their conflicts of interest with due care and loyalty, which, had they done so, would have revealed that during the Class Period using forfeitures to offset employer contributions was not in the sole and best interest of the participants. Hence why courts routinely hold that simply because the "Treasury regulations and [ERISA] would generally permit employers to structure plans to allow forfeitures to cover contributions does not establish that […] using forfeitures to offset [the Company's] mandatory Matching Contributions within the parameters of this specific Plan […] was permissible, lawful, or inconsistent with a finding that [Defendants] violated ERISA's" other provisions. *Rodriguez*, 744 F.Supp.3d at 947; *see also Perez-Cruet*, 2024 WL 2702207, at *7 (same); *Buescher*, 2025 WL 1927503, at *11 (same).[7] Despite Defendants' misconstruction of the holding in *Hutchins I*, the court actually held that "[N]either [the existing regulation,] 26 C.F.R. § 1.401 7(a)[,] nor the proposed Treasury regulation … forecloses Plaintiff's theory as a matter of law." *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 859 (N.D. Cal. 2024) (*Hutchins I*). Dissimilar cases involving *non-discretionary* plan language have rightly held that the governing laws foreclosed claims against settlor functions, because theorizes that defendants should have ignored *the settlor's mandate*

---

[7] These holdings accord with the well settled ERISA legal principle that conduct "consistent with the provisions of the Plan and with ERISA […] does not mean that a fiduciary's acts […] may deviate from ERISA's command that a 'fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries.'" *Bussian*, 223 F.3d at 295 (quoting § 1104(a)(1)); *Sacerdote v. New York Univ.*, 9 F.4th 95, 111 (2d Cir. 2021) ("Simply concluding that [this allocation] is appropriate [in other cases] does not speak to [this] in a particular case."); *Braden*, 588 F.3d at 597 ("Not every potential lawful explanation for the defendant's conduct renders the plaintiffs theory implausible.").

would be a categorical defiance of the governing laws.[8] That is not the case here.

### 3.    Defendants' breaches

"A fiduciary's duty of care overlaps the duty of loyalty." *Bussian*, 223 F.3d at 299. Appellate courts agree that "[t]he presence of conflicting interests imposes on fiduciaries the obligation to take precautions to ensure that their duty of loyalty is not compromised." *Id.* ("To ensure that actions are in the best interests of plan participants and beneficiaries, fiduciaries under certain circumstances may have to 'at a minimum' undertake an 'intensive and scrupulous independent investigation of [the fiduciary's] options.'"); *see also Martin v. Feilen*, 965 F.2d 660, 670 (8th Cir. 1992) ("When a fiduciary has dual loyalties, the prudent person standard requires that he make a careful and impartial investigation of all investment decisions."); *Leigh v. Engle,* 727 F.2d 113, 125–26 (7th Cir.1984) (similar). Here, Defendants' "use of the assets entrusted to them falls substantially short of that exacting standard." *Leigh*, 727 F.2d at 132. Rather than making broad *per se* allegations that "allocation of forfeitures toward offsetting employer contributions [i]s always a breach of the fiduciary duty of loyalty[,]" Plaintiffs plausibly allege that breaches occurred "in this particular case." *Buescher*, 2025 WL 1927503, at *11.

Under "the congressional imposition of a broad duty of loyalty upon fiduciaries of employee benefit plans […] courts assess 'whether the item in question may be used to the benefit (*financial or otherwise*) of the fiduciary at the expense of plan participants or beneficiaries.'"

---

[8] "Under 29 C.F.R. § 2510.3-102(a)(1), courts generally recognize that employer contributions become 'plan assets' when paid into the plan, as the forfeited amounts were." *Walsh v. Allen*, No. 3:17-cv-784, 2022 WL 256312, at *4 (W.D. Ky. Jan. 26, 2022); *see also Rodriguez*, 744 F. Supp. 3d at 943 (once "forfeited contributions [] have been paid to the Plan and [they] become 'plan assets'" rather than remain employer's property). Defendants do not cite actual law or legislative history for their incorrect misrepresentation that "forfeited contributions are still employer contributions, made at a prior time but no longer allocated or belonging to any individual plan participant." MTD at 19.

*Metzler v. Solidarity of Lab. Organizations Health & Welfare Fund*, No. 95-cv-7247, 1998 WL 477964, at *7 (S.D.N.Y. Aug. 14, 1998), *aff'd sub nom. Herman v. Goldstein*, 224 F.3d 128 (2d Cir. 2000) (emphasis added). Choosing to allocate over $4 million to the Company's contributions, which aid the company in retaining top talent and provides tax breaks, while allocating nothing toward plan expenses otherwise borne by participants for five out of six years, *see* SAC ¶¶ 159-60, plausibly infers that the Company acted in its "own self-interests and failed to consider the interests of the Plan and its participants." *McManus II*, 2025 WL 732087, at *2; *see also*; *Spano v. The Boeing Co.*, 633 F.3d 574, 582 (7th Cir. 2011) ("[M]any employers dangle the carrot of employer matching at some level."). Indeed, in 2018 $1,834,408 in forfeitures went entirely unallocated toward either option while participants paid Plan expenses. *Id.*, ¶ 159.

Like the defendants in *Buescher*, Defendants unavailingly, "consistently describe[s] Plaintiff's position in these or similar terms: 'According to Plaintiff, forfeitures can *never* be used to offset employer contributions.'" *Buescher*, 2025 WL 1927503, at *10 (emphasis in original). The court in *Buescher* did not fall for this ploy. Exactly like here, "Plaintiff is not asserting a categorical rule that employers must pay plan expenses. Nor would his claim effectuate such a result. Far more narrowly, he is merely arguing that" fiduciary discretion in how to use forfeitures "must be made in accordance with ERISA's fiduciary directives." *Id.*, at *11. The court laid out the various forfeiture case holdings relating to different theories issued up to that point including, *Hutchins I* and *II*, *McManus I* and *II*. *See id.*, at **12-15. In applying the legal framework, the court upheld the allegations because that complaint, like the SAC, alleged specific dollar amounts and a failure to address the conflict of interest where, "using forfeitures to offset its own contributions would always be in [the company's] best interest" unless "there is a risk that [the company] may be financially unable to satisfy its matching or discretionary contribution

obligations" but "[a]bsent such a risk, however, the use of forfeitures to pay Plan expenses is in participants' best interests." *Id.*, at \*3; s*ee also,* SAC, ¶¶ 150-162 (alleging the same); *see also Parker*, 2025 WL 1173011, at \*6 ("specific dollar amounts" and "conflict of interest" allegations may be plausible); *Stewart*, No. 23-cv-81314, at 13 (same); *McManus II*, 2025 WL 732087 (successfully alleging procedural failures to guard against conflicts of interest). Rather than advance any "overbroad" theory, MTD at 27, Plaintiffs plausibly allege that Defendants committed breaches by failing "to engage in a reasoned and impartial decision-making process" and failed "to consider whether participants would be better served by another use of these Plan assets after considering all relevant factors." *Rodriguez*, 744 F. Supp. 3d at 945.

### 4. Defendants Violated ERISA's Anti-Inurement Provision

"The purpose of [ERISA's] anti-inurement provision, in common with ERISA's other fiduciary responsibility provisions, is to apply the law of trusts to discourage abuses such as self-dealing, imprudent investment, and misappropriation of plan assets, by employers and others." *Yates v. Hendon*, 541 U.S. 1, 23 (2004). The full provision states that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the ***exclusive*** purposes of providing benefits to participants in the plan and their beneficiaries ***and defraying reasonable expenses*** of administering the plan." 29 U.S.C. § 1103(c)(1) (emphasis added). Fiduciaries "violate ERISA's anti-inurement provision" when a decision to use "Plan assets would benefit [the Company]" rather than exclusively for the Plan and participants. *Chao v. Malkani*, 452 F.3d 290, 298 (4th Cir. 2006). Like in *Chao*, "Defendants' requested offset [using plan assets] would violate ERISA's anti inurement provision, because Plan assets would benefit [the Company]." *Id*. Forfeitures specifically, "may not be used to benefit the employer/fiduciary by reducing its own financial burden […] when done at the expense of not defraying the administrative costs borne by

participants." *Perez-Cruet*, 2024 WL 2702207, at *6 (upholding anti-inurement claims); *see also Rodriguez*, 744 F. Supp. 3d at 947 (same); *Becerra*, 3:24-cv-921, Slip Op. at 7 (same).

Defendants aver incorrect mischaracterizations of the law. Like here, the defendants in *Becerra* argued "anti-inurement rules are not triggered so long as forfeitures remain in the Plan" and relied on the *settlor* discussion in *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432 (1999). *Becerra*, No. 3:24-cv-921, Slip Op. at 7; *see also* MTD at 29 (arguing the same). The court rejected this premise, because, like here, "Defendants are using forfeitures to reduce their own funding obligations and save money" for the company, which is "a purpose other than paying obligations to Plan beneficiaries" who pay plan expenses. *Id.,* at 7; *see also Rodriguez*, 744 F.Supp.3d at 947 ("[u]nlike in *Hughes [Aircraft]*, the plaintiff here does allege that the Company used 'assets for a purpose other than to pay its obligations to the Plan's beneficiaries'"); *see also Perez-Cruet*, 2024 WL 2702207, at *4 (similarly distinguishing *Hughes Aircraft*).

Defendants also attempt to characterize this company benefit as "incidental", MTD at 30, but the Fourth Circuit Court of Appeals disagrees. *See Chao*, 452 F.3d at 294 ("Defendants' repeated efforts to plunder the Plan's assets and minimize their own liabilities demonstrate that they were administering the Plan neither for the sole benefit of Plan participants and beneficiaries.").[9] Plaintiffs' anti-inurement claims are plausible.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court deny Defendants' motion to dismiss in its entirety, or in the alternative, grant leave to amend.

Dated: October 2, 2025                                        Respectfully submitted,

---

[9] Defendants also rely on cases granted leave to amend because the anti-inurement claims were possible and the 40 year old case of *Holliday v. Xerox Corp.*, 732 F.2d 548 (6th Cir. 1984), that did not involve the same theory of liability as here and is less controlling that *Chao*.

-30-

/s/ Mark K. Gyandoh
Mark K. Gyandoh
PA Attorney ID #88587
(Admitted *Pro Hac Vice*)
**CAPOZZI ADLER, P.C.**
312 Old Lancaster Road
Merion Station, PA 19066
Telephone: (610) 890-0200
Email: markg@capozziadler.com

Peter A. Muhic
**MUHIC LAW LLC**
923 Haddonfield Road
Suite 300
Cherry Hill, NJ  08002
Telephone: (856) 324-8252
Email: Peter@muhiclaw.com

John Szymankiewicz
**MATHESON & ASSOCIATES, PLLC**
127 West Hargett Street, Suite 100
Raleigh, NC 27601
Telephone: (919) 335-5291
Email: john@mathesonlawoffice.com

*Attorneys for Plaintiffs
and the Putative Class*

-31-

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 2, 2025, a true and correct copy of the foregoing document was filed with the Court's ECF system, which will send notice of such filing to all counsel of record.

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh

-2-