**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| JOHN STANA and RANDALL WAGNER, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>    v.<br><br>SAS INSTITUTE INC., THE BOARD OF DIRECTORS OF SAS INSTITUTE INC., THE RETIREMENT COMMITTEE OF SAS INSTITUTE INC., and JOHN DOES 1-30,<br><br>       Defendants. | Case No. 5:24-CV-00105-D |

**REPLY IN SUPPORT OF DEFENDANTS'**
**<u>MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

Pressly M. Millen (NC Bar No. 16178)
**WOMBLE BOND DICKINSON (US) LLP**
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone: 1.919.755.2135
Facsimile: 1.919.755.6067
press.millen@wbd-us.com

Deborah S. Davidson
Matthew A. Russell
**MORGAN, LEWIS & BOCKIUS LLP**
110 North Wacker Drive
Chicago, IL 60606
Telephone: 1.312.324.1000
Facsimile: 1.312.324.1001
deborah.davidson@morganlewis.com
matthew.russell@morganlewis.com

Jared R. Killeen
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, PA 19103
Telephone: 1.215.963.5000
Facsimile: 1.215.963.5001
jared.killeen@morganlewis.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT ...................................................................................................... 1

      A.      Plaintiffs' Repackaged Underperformance Claim Fails as a Matter of Law. ........ 1

            1.      Plaintiffs' "Process Allegations" Cannot Save Their Claim...................... 1

            2.      Plaintiffs Do Not Allege Meaningful Benchmarks or Significant
                 Underperformance. ................................................................................... 4

      B.      Plaintiffs' Forfeiture Claims Fail as a Matter of Law. ........................................... 7

            1.      Plaintiffs Seek a Greater Benefit Than the Plan Provides. ........................ 7

            2.      The Court Should Reject Plaintiffs' Invitation to Ignore the Legal
                 Backdrop Addressing Permissible Use of Forfeitures. .............................. 8

            3.      Plaintiffs Challenge Settlor Conduct ....................................................... 11

            4.      Plaintiffs Do Not Plausibly Allege Any Breach of Fiduciary Duty......... 12

            5.      Plaintiffs Do Not State an Anti-Inurement Claim.................................... 15

            6.      Plaintiffs' Failure-to-Monitor Claim Fails............................................... 15

III.    CONCLUSION................................................................................................... 15

**Page(s)**

CASES

*Albert v. Oshkosh Corp.*,
47 F.4th 570 (7th Cir. 2022) ...............................................................................................4

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
137 F.4th 1015 (9th Cir. 2025) ...........................................................................................5

*Armenta v. WillScot Mobile Mini Holdings Corp.*,
2025 WL 2645518 (D. Ariz. Sept. 15, 2025)..............................................................7, 9, 12

*Ash v. PowerSecure Int'l, Inc.*,
2015 WL 5444741 (E.D.N.C. Sep. 15, 2015)......................................................................5

*Barragan v. Honeywell Int'l Inc.*,
2025 WL 2383652 (D.N.J. Aug. 18, 2025) ...........................................................8, 11, 12, 13

*Bozzini v. Ferguson Enters. LLC*,
2025 WL 1547617 (N.D. Cal. May 29, 2025).....................................................................13

*Bracalente v. Cisco Sys., Inc.*,
2024 WL 2274523 (N.D. Cal. May 20, 2024) .....................................................................4

*Buescher v. North American Lighting, Inc.*,
2025 WL 1927503 (C.D. Ill. June 30, 2025) ...................................................................9, 10

*Cain v. Siemens Corp.*,
2025 WL 2172684 (D.N.J. July 31, 2025)............................................................................9

*Cano v. The Home Depot, Inc.*,
2025 WL 2589567 (N.D. Ga. Aug. 26, 2025) ..................................................................8, 12

*Chao v. Malkani*,
452 F.3d 290 (4th Cir. 2006) ............................................................................................15

*Dimou v. Thermo Fisher Sci. Inc.*,
2025 WL 2611240 (S.D. Cal. Sept. 9, 2025)..................................................................7, 9, 13

*Doll v. Evergy*,
No. 25-cv-00043 (W.D. Mo. Sept. 10, 2025) ...................................................................3, 4

*Estay v. Ochsner Clinic Found.*,
2025 WL 2644782 (E.D. La. Sept. 15, 2025)..................................................................7, 13

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) ...................................................................................................14

*Fulton v. FCA US LLC*,
No. 24-cv-13159 (E.D. Mich. Sept. 30, 2025) ..........................................................4

*Greenbrier Hotel Corp. v. Unite Here Health*,
719 F. App'x 168 (4th Cir. 2018) .............................................................................11

*Hall v. Capital One Fin. Corp.*,
2023 WL 2333304 (E.D. Va. Mar. 1, 2023) ..........................................................5, 6

*Hughes v. Nw. Univ.*,
595 U.S. 170 (2022) ....................................................................................................3

*Hutchins v. HP Inc.*,
No. 25-826 (9th Cir. July 9, 2025) ...............................................................10, 11, 13

*Hutchins v. HP Inc.*,
737 F. Supp. 3d 851 (N.D. Cal. 2024) ...................................................................9, 14

*Hutchins v. HP Inc.*,
767 F. Supp. 3d 912 (N.D. Cal. 2025) ...................................................................9, 13

*In re LinkedIn ERISA Litig.*,
2021 WL 5331448 (N.D. Cal. Nov. 16, 2021) ...........................................................6

*Jones v. DISH Network Corp.*,
2023 WL 7458377 (D. Colo. Nov. 6, 2023) ...............................................................3

*Kendall v. Pharm. Prod. Dev., LLC*,
2021 WL 1231415 (E.D.N.C. Mar. 31, 2021) ...........................................................4

*Loomis v. Exelon Corp.*,
658 F.3d 667 (7th Cir. 2011) ....................................................................................11

*Macias v. Sisters of Charity of Leavenworth Health Sys.*,
No. 23-cv-01496 (D. Colo. July 24, 2025) .................................................................4

*Madrigal v. Kaiser Found. Health Plan, Inc.*,
2025 WL 1299002 (C.D. Cal. May 2, 2025) ............................................................13

*Matney v. Barrick Gold of N. Am.*,
80 F.4th 1136 (10th Cir. 2023) ..................................................................................4

*McManus v. Clorox Co.*,
2024 WL 4944363 (N.D. Cal. Nov. 1, 2024) ...........................................................15

*McManus v. Clorox Co.*,
  2025 WL 732087 (N.D. Cal., March 3, 2025) ........................................................................13

*McWashington v. Nordstrom, Inc.*,
  2025 WL 1736765 (W.D. Wash. June 23, 2025) ...............................................................12, 13

*Meiners v. Wells Fargo & Co.*,
  898 F.3d 820 (8th Cir. 2018) ..............................................................................................4, 5

*Middleton v. Amentum Parent Holdings, LLC*,
  2025 WL 2229959 (D. Kan. Aug. 5, 2025) ...............................................................................9

*Naylor v. BAE Systems, Inc.*,
  2024 WL 4112322 (E.D. Va. Sept. 5, 2024) ...........................................................................12

*Perez-Cruet v. Qualcomm Inc.*,
  2024 WL 2702207 (S.D. Cal. May 24, 2024) .........................................................................10

*Rodriguez v. Intuit Inc.*,
  744 F. Supp. 3d 935 (N.D. Cal. 2024) ..............................................................................13, 15

*Sievert v. Knight-Swift Transp. Holdings, Inc.*,
  780 F. Supp. 3d 870 (D. Ariz. 2025) ..................................................................................9, 13

*Smith v. CommonSpirit Health*,
  37 F.4th 1160 (6th Cir. 2022) ..............................................................................................4, 5

*Stewart v. Nextera Energy, Inc.*,
  No. 9:23-cv-81314 (S.D. Fla. Aug. 14, 2025) .......................................................................13

*Su v. Allen*,
  2023 WL 6323310 (W.D. Ky. Sept. 28, 2023) ..................................................................10, 11

*Trauernicht v. Genworth Financial Inc.*,
  2023 WL 5961651 (E.D. Va. Sept. 13, 2023) ...........................................................................3

*Tullgren v. Booz Allen Hamilton*,
  2023 WL 2307615 (E.D. Va. Mar. 1, 2023) ...................................................................5, 6, 15

*Walsh v. Allen*,
  2022 WL 256312 (W.D. Ky. Jan. 26, 2022) ...........................................................................11

*Wright v. JPMorgan Chase & Co.*,
  2025 WL 1683642 (C.D. Cal. June 13, 2025) .....................................................................9, 13

*Zak v. Chelsea Therapeutics International, Ltd.*,
  780 F.3d 597 (4th Cir. 2015) ...................................................................................................5

**STATUTES**

29 U.S.C. § 1104(a)(1)..................................................................................................................14

29 U.S.C. § 1204(a) ...................................................................................................................10

Case 5:24-cv-00105-D-RN    Document 43    Filed 10/23/25    Page 6 of 22

## I. INTRODUCTION

Plaintiffs' Opposition confirms they cannot state a claim under ERISA. The Second Amended Complaint restyles the same flawed underperformance allegations this Court rejected in dismissing Plaintiffs' original challenge to the JPM TDFs because investment underperformance, "without more, cannot support a breach of prudence claim." Order at 9. Plaintiffs now stake their case on "process allegations" that SAS violated the Plan's IPS when it selected and maintained the JPM TDFs as Plan investments. But the Court already rejected this theory as duplicative of Plaintiffs' underperformance allegations, *see* Order at 11, and Plaintiffs do not explain why the Court should reach a different conclusion this time. They also are wrong that their "process allegations" excuse them from pleading meaningful comparators for the JPM TDFs or alleging the funds significantly underperformed—two more reasons their underperformance claim fails.

The Opposition likewise cannot save Plaintiffs' forfeiture claims. The majority of courts addressing similar claims have dismissed them because ERISA does not mandate using forfeitures to provide additional benefits beyond what a plan promises, and requiring otherwise would contravene the statute's purpose and decades of settled law and regulatory authority. The same reasoning forecloses Plaintiffs' claims here. The Opposition mostly ignores this consensus and asks the Court to follow a handful of distinguishable outlier decisions. But this case mirrors the overwhelming majority that have been dismissed, and the Opposition offers no reason why this Court should not follow those decisions and dismiss Plaintiffs' forfeiture claims too.

## II. ARGUMENT

### A. Plaintiffs' Repackaged Underperformance Claim Fails as a Matter of Law.

#### 1. Plaintiffs' "Process Allegations" Cannot Save Their Claim.

Plaintiffs concede they cannot state a claim by challenging only the JPM TDFs' performance, and contend that "[t]he heart of [their] claims is that Defendants' *processes* were

imprudent, not simply that the JPM TDFs underperformed." Opp. at 8. Plaintiffs argue SAS "violated" its IPS by maintaining the JPM TDFs in the Plan, *Id.* at 4, because the JPM TDFs "materially underperformed" in violation of IPS guidelines, SAC ¶ 114.

Plaintiffs' manufactured "process allegations" cannot salvage their claim. The Court already rejected the same theory because it "repackages [Plaintiffs'] deficient underperformance argument," and SAS could not have "violated" the IPS because that document "did not require [SAS] to offload the JPM funds." Order at 10-11. Plaintiffs do not dispute these findings, but insist "the SAC adds additional provisions and details to robustly bolster" their claim. Opp. at 9. That is wrong. The only additional IPS provision Plaintiffs cite is one stating that Plan investments' "[p]erformance should be equal to or greater than the median return for an appropriate peer group or universe and equal or greater than the return of an appropriate, style and capitalization specific benchmark over the trailing three- and five-year periods." SAC ¶ 85 (quoting IPS at 8).[1] This provision does not change the analysis. Like the other IPS provisions Plaintiffs identified, it does not require SAS to jettison the JPM TDFs based on their performance. Indeed, it says nothing at all about removing funds from the Plan, let alone mandate removal based solely on returns. To the contrary, the IPS does not obligate the fiduciaries to act in any way. It instead makes clear that, "*[i]n [their] discretion*," the fiduciaries "*may* decide to place a fund on a 'watch list' if the fund has not met its performance objectives." Dkt. No. 19-1, IPS at 10 (emphasis added). Thus, Plaintiffs still "cite no IPS provision that any defendant violated by adding the JPM funds to the Plan" or keeping the funds in the line-up. Order at 11. Because that is the "heart" of their imprudence claim, the claim fails as a matter of law.

---

[1] Otherwise, the First and Second Amended Complaints highlight the *same provisions* of the IPS stating SAS should "[m]aximize return within reasonable and prudent levels of risk," "[p]rovide returns comparable to returns for similar investment options," and "[p]eriodically evaluat[e] the investment performance of each fund in the Plans." Compare FAC ¶ 32 with SAC ¶¶ 34, 84.

2

Plaintiffs' strained reading of the IPS shows their theory is implausible. The Opposition mischaracterizes the IPS as mandating that all Plan investments "<u>must</u> beat or exceed the[ir] benchmark," Opp. at 19, so that "even a ***slight degree of underperformance violates the IPS***," *id*. at 5 (emphasis added). That invented standard—which contradicts the measured approach set forth in the IPS and recognized under the law—would require a plan fiduciary to jettison any plan investment that *slightly underperforms*, or else face a lawsuit challenging its fiduciary process. Plaintiffs' theory of liability contravenes ERISA and the Supreme Court's guidance that courts must give due regard to "the range of reasonable judgments a fiduciary may make." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022).

The Opposition's case law is distinguishable. Plaintiffs rely heavily on *Trauernicht v. Genworth Financial Inc.*, 2023 WL 5961651 (E.D. Va. Sept. 13, 2023). But in *Trauernicht*, unlike here, the plaintiffs alleged specific process breaches based on fact discovery, including committee meeting minutes that allegedly showed the plan's committee did not regularly discuss the BlackRock TDFs' performance or assess the funds' performance relative to benchmarks stated in the IPS. 2023 WL 5961651, at *8-11. The same is true of *Jones v. DISH Network Corp.*, 2023 WL 7458377, at *1, *3 (D. Colo. Nov. 6, 2023) ("*Jones II*") (finding years of committee meeting minutes "do not reflect substantive discussion of the Freedom Funds or their performance issues."), and *Doll v. Evergy*, No. 25-cv-00043, Slip. Op., at 2-4 (W.D. Mo. Sept. 10, 2025) (relying on detailed minutes and materials showing committee did not follow IPS). Here, Plaintiffs do not (and could not) make the same allegations and the IPS did not require the Plan fiduciaries to remove the JPM TDFs (as the Court already held). Thus, Plaintiffs' "process allegations" are more like the IPS-related allegations rejected by other courts because they do not support an imprudence claim.

3

*See, e.g.*, *Bracalente v. Cisco Sys., Inc.*, 2024 WL 2274523, at \*6-7 (N.D. Cal. May 20, 2024).[2]

> ### 2. *Plaintiffs Do Not Allege Meaningful Benchmarks or Significant Underperformance.*

Plaintiffs also fail to state a claim because they do not plausibly allege their proposed comparators are "meaningful benchmarks." The Opposition suggests this determination is a fact question, and Plaintiffs need not allege meaningful benchmarks because they offer "process allegations." *See* Opp. at 11-12. These arguments cannot be squared with this Court's opinion that a plaintiff challenging a plan investment option "must provide a 'meaningful benchmark' for comparison." *Kendall v. Pharm. Prod. Dev., LLC*, 2021 WL 1231415, at \*6 (E.D.N.C. Mar. 31, 2021) (quoting *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018)).[3]

To provide meaningful benchmarks for the JPM TDFs, Plaintiffs must at least allege "whether the Comparator TDFs use 'through' or 'to' retirement glidepaths; whether the Comparator TDFs invest only in actively-managed or passively-managed funds; or how the

---

[2] The Opposition's other case law is also distinguishable. In *Fulton v. FCA US LLC*, No. 24-cv-13159 (E.D. Mich. Sept. 30, 2025), defendants offered *custom* TDFs with none of the hallmarks of the well-established and highly rated JPM TDFs. *See* Mem. at 12 (describing JPM TDFs' favorable Morningstar rankings and high asset levels). The court concluded plaintiffs plausibly pleaded the custom TDFs were imprudent because they meaningfully underperformed not only the S&P Index and five specific comparators, but *also* their own custom benchmark and the median returns of all peer TDFs. *Fulton*, No. 24-cv-13159, Slip Op., at 5-7. In contrast, Plaintiffs here admittedly allege almost *nothing* about the JPM TDFs' custom benchmark (*see* SAC ¶¶ 88-89) or the broader TDF peer universe. And *in Macias v. Sisters of Charity of Leavenworth Health Sys.*, No. 23-cv-01496 (D. Colo. July 24, 2025), the court held plaintiffs stated a plausible challenge to the JPM TDFs by alleging in combination that the committee failed to follow the IPS, the JPM TDFs underperformed certain comparators that also used a "through" glidepath, the JPM TDFs consistently took more risk than the comparators while achieving lower returns, and the JPM TDFs underperformed various indices and comparators by as much as 3.14%. *Id.* at 4-24. Plaintiffs here make no such allegations.

[3] *See also Smith v. CommonSpirit Health*, 37 F.4th 1160, 1167 (6th Cir. 2022); *Albert v. Oshkosh Corp.*, 47 F.4th 570, 581 (7th Cir. 2022); *Meiners*, 898 F.3d at 822; *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1148 (10th Cir. 2023). Plaintiffs make no effort to address this case law, and instead rely only on *Doll*, an out-of-circuit decision that found "significant allegations of wrongdoing eliminate[d] the need to infer a fiduciary breach through use of meaningful benchmarks." *Doll*, No. 25-cv-00043, Slip. Op., at 6. But *Doll* cites no authority for this exception and the plaintiffs' "significant allegations of wrongdoing" were based on discovery showing the committee ignored its IPS—allegations Plaintiffs cannot make here. *See supra* 3.

Comparator TDFs' underlying equity and bond funds are allocated [.]" *Hall v. Capital One Fin. Corp.*, 2023 WL 2333304, at \*6 (E.D. Va. Mar. 1, 2023); *Tullgren v. Booz Allen Hamilton*, 2023 WL 2307615, at \*6 (E.D. Va. Mar. 1, 2023).[4] Tellingly, the Opposition all but abandons the Comparator TDFs, suggesting "the Court need not dwell on" them. Opp. at 15. Plaintiffs do not dispute that unlike the JPM TDFs, all the Comparator TDFs use a "through" strategy, which alone disqualifies them as "meaningful benchmarks." *See* Mem. at 15. Plaintiffs also do not address the Comparator TDFs' materially different investment strategies and asset allocations, insisting they do not need to "provide a detailed explanation on the differences between the [JPM] TDFs and the Comparator TDFs." Opp. at 18. But that is not what this Court said, and Plaintiffs' inability (or unwillingness) to satisfy the "meaningful benchmark" pleading requirement dooms their claim.[5]

This leaves only the two "JPMorgan designated" benchmarks: the S&P Index and the Composite Benchmark. *See* Opp. at 3. Plaintiffs argue these benchmarks "show that by the

---

[4] SAS did not "misrepresent" *Meiners* to suggest the "meaningful benchmark" standard requires allegations that "the allocation of bonds must be identical." *See* Mem. at 16 n.19 (describing *Meiners* as holding "Vanguard TDFs were not a proper comparator for Wells Fargo TDFs in part due to different allocations to bonds"). *Meiners* makes clear that offering a meaningful benchmark requires more than declaring that two funds are "similar" or identifying other funds with "some similarities." *Meiners*, 898 F.3d at 823. As other Circuits after *Meiners* have held, "truly comparable" investments cannot have "different aims, different risks, and different potential rewards," and "simply labeling funds as 'comparable' or 'a peer' is insufficient to establish that those funds are meaningful benchmarks." *See, e.g.*, *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1023 (9th Cir. 2025) (citation omitted).

[5] Plaintiffs object (Opp. at 8) to Defendants' use of the Morningstar Reports (Dkt. Nos. 38-5 & 38-6) and the Department of Labr Tip Sheet (Dkt. No 38-4) that contain information about the JPM TDFs and Comparator TDFs, although they did not object when Defendants offered the same documents with their previous motion to dismiss. *See* Dkt. No. 22. Plaintiffs rely on *Zak v. Chelsea Therapeutics International, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015), to suggest the Court should not take judicial notice of these documents. But as this Court has explained elsewhere, such reliance is misplaced. *See Ash v. PowerSecure Int'l, Inc.*, 2015 WL 5444741, at \*5 (E.D.N.C. Sep. 15, 2015). The district court in *Zak* relied on the defendants' submission of SEC filings in finding the plaintiffs failed to adequately plead scienter, but the Fourth Circuit reversed because the plaintiffs did not actually allege scienter as part of their claims. 780 F.3d at 606. Here, in contrast, Plaintiffs expressly plead that the Comparator TDFs are "meaningful benchmarks" for the JPM TDFs, and because "meaningful benchmarks" are integral to Plaintiffs' imprudent-investment claim, the Court may take judicial notice of information about the Comparator TDFs. Indeed, courts routinely consider similar documents in resolving motions to dismiss ERISA imprudence claims. *See, e.g.*, *CommonSpirit*, 37 F.4th at 1168; *Hall*, 2023 WL 2333304, at \*6 n.5.

5

investment managers' own standards, the JPM TDFs were subpar[.]" *Id.* at 9. But Plaintiffs cannot offer the Composite Benchmark as a "meaningful benchmark" because the Second Amended Complaint alleges almost nothing about the Composite Benchmark's holdings or performance, let alone meaningfully compare its performance with that of the JPM TDFs. Instead, Plaintiffs dismiss the Composite Benchmark as less "reliable" than the S&P Index and cast it aside in favor of allegations about the S&P Index's performance. SAC ¶¶ 88-90. Plaintiffs' speculative contention that "it is highly likely that the JPM TDFs underperformed against the Composite Benchmark throughout the Class Period" (Opp. at 5) falls far short of supporting their imprudence claim.[6]

That means Plaintiffs' comparative performance allegations rest entirely on the S&P Index. Plaintiffs' acknowledgment that, unlike the JPM TDFS, the S&P Index "includes both 'to' and 'through' glide path series," SAC ¶ 109, disqualifies it as a meaningful comparator, *see* Mem. at 15. Nonetheless, Plaintiffs argue the S&P Index is apt because the IPS mandates "the JPM TDFs' returns must be equal to or greater than the . . . S&P Index over the trailing three- and five-year periods." Opp. at 3. But that is wrong. The IPS does not mention the S&P Index at all, let alone *require* the JPM TDFs to outperform it. *See* Dkt. No 19-1, IPS generally. Therefore, Plaintiffs' case law finding that an index expressly identified in an IPS is a "meaningful benchmark" is inapposite. *See* Opp. at 13-15. More to the point, the S&P Index is not an apt comparator because like other indices it is not an investible fund, does not share the same overall purpose and strategy as the JPM TDFs, and reflects only the aggregate performance of myriad different investments and strategies. *In re LinkedIn ERISA Litig.*, 2021 WL 5331448, at *8-9 (N.D. Cal. Nov. 16, 2021); *see also Hall*, 2023 WL 2333304, at *7; *Tullgren*, 2023 WL 2307615, at *7.

---

[6] Plaintiffs say they "were unable to access" information about the Composite Benchmark's performance throughout the putative class period (Opp. at 5), but their own Second Amended Complaint cites to a document containing performance data for the Composite Benchmark. *See* SAC ¶ 88 n.11.

6

Finally, the Court held that Plaintiffs "failed to plausibly allege[] underperformance" in the first place because "alleged underperformance [] between one and four percent of a benchmark [] fails to state a plausible ERISA claim" as a matter of law. Order at 9-10. Instead of addressing this fatal pleading flaw, Plaintiffs claim "the degree of underperformance is less important because of the SAC's sufficient process allegations." Opp. at 18. But no federal Circuit has adopted Plaintiffs' self-serving framework and, regardless, Plaintiffs' "process allegations" are *not* sufficient to support their claim. *See supra* 1-4. In the end, Plaintiffs do not and cannot plead that the JPM TDFs significantly underperformed, and so their imprudence claim fails.

**B.      Plaintiffs' Forfeiture Claims Fail as a Matter of Law**.

Most courts addressing forfeiture claims like those in the Second Amended Complaint have dismissed them. *See* Mem. at 3 n.3 (collecting cased). In fact, since SAS filed its opening brief, several more courts have joined the growing majority.[7] This Court should do the same.

### *1.      Plaintiffs Seek a Greater Benefit Than the Plan Provides.*

Plaintiffs insist that they are not asking for greater benefits than the Plan provides. Opp. at 22. But they concede that (i) they received all employer contributions required by the Plan; and (ii) it is perfectly lawful for SAS to decide that Plan-related costs will be borne by participants. By asking the Court to hold that ERISA entitles them to free administrative services, Plaintiffs clearly seek benefits the Plan does not provide. Their reasoning is explicit: whenever "SAS had sufficient cash and equivalents on hand to satisfy its contribution obligations to the Plan," SAC ¶ 161, it was obligated to enhance the benefits of all Plan participants by paying Plan-related expenses. By

---

[7] *See Armenta v. WillScot Mobile Mini Holdings Corp.*, 2025 WL 2645518 (D. Ariz. Sept. 15, 2025), and *Estay v. Ochsner Clinic Found.*, 2025 WL 2644782 (E.D. La. Sept. 15, 2025). Another court that previously dismissed similar claims without prejudice dismissed the amended complaint with prejudice. *Dimou v. Thermo Fisher Sci. Inc.*, 2025 WL 2611240 (S.D. Cal. Sept. 9, 2025) ("*Dimou II*"), *appeal filed*, No. 25-6364 (9th Cir. Oct. 9, 2025).

Plaintiffs' logic, ERISA mandates that if SAS can afford to provide Plan participants with more valuable benefits, it *must* do so. This proposition is inconsistent with ERISA. As other courts have held, it would impose a "new mandate" that employers use forfeitures to pay plan expenses even if doing so "would result in an override" of plan provisions that themselves require participants to bear those costs. *Barragan v. Honeywell Int'l Inc.*, 2025 WL 2383652, at *3-4 (D.N.J. Aug. 18, 2025) ("*Barragan II*"), *appeal filed*, No. 25-2609 (3d Cir. Aug. 22, 2025); *see* Mem. at 17-19. That is exactly what Plaintiffs ask the Court to do here.

### 2. The Court Should Reject Plaintiffs' Invitation to Ignore the Legal Backdrop Addressing Permissible Use of Forfeitures.

SAS' opening brief recounted an uninterrupted six-decade history of rules, regulations, and other legal guidance that has allowed defined contribution plans to use forfeitures just as SAS does. Mem. at 19-23. The Opposition largely ignores this legal backdrop, and avoids addressing any of the relevant rules and regulations directly. Instead, Plaintiffs misleadingly suggest that most courts have given the Treasury regulations and IRS authority no weight. Opp. at 25 n.6, 26. For example, Plaintiffs selectively quote *Cano v. The Home Depot, Inc.*, 2025 WL 2589567, at *6 (N.D. Ga. Aug. 26, 2025), *appeal filed sub nom. Guadalupe Cano v. Does 1 to 10*, No. 25-13158 (11th Cir. Sept. 11, 2025), to suggest the court flatly rejected Treasury authority because "none of these regulations are dispositive." In reality, however, the court held that "[t]hough none of these regulations are dispositive, *they provide a regulatory framework around employee benefit plans which has not precluded the use of forfeited funds to reduce employer contributions*." *Id.* (emphasis added). The court concluded: "***Given this history, Cano can hardly say that it was unreasonable or imprudent for Home Depot to act both consistently with its own Plan documents and consistently with regulations that have been effective for decades***." *Id.* (emphasis added). The same is true of the other cases the Opposition mischaracterizes as rejecting Treasury and IRS

authority.[8] Plaintiffs' artful cropping cannot elide the fact that numerous courts have relied on this regulatory authority in dismissing similar claims.[9]

Indeed, the same cases that Plaintiffs mischaracterize or ignore help explain why the Opposition's emphasis on SAS' alleged "conflict of interest" makes no sense. *See* Opp. at 2 (arguing "conflict of interest" is the "cornerstone" of Plaintiffs' forfeiture allegations). According to Plaintiffs, SAS' decision to use forfeitures to pay Plan benefits represented an intractable conflict of interests because "using forfeitures to reduce the Company's contributions was in the best interest of the Company [as it] would decrease company costs for employer contributions." *Id.* at 6-7. But as one court put it, "[t]o find that Defendant's decision to use forfeited assets to reduce its own contributions is motivated by self-interest and violates its duties of loyalty or prudence would *contravene decades of federal regulations suggesting that such a decision is entirely permissible.*" *Sievert*, 780 F. Supp. 3d at 878 (emphasis added). That holds true here too.

The Opposition cites a few outlier cases that declined to consider the regulatory backdrop, Opp. at 26, but none of those cases helps Plaintiffs. To start, *Buescher v. North American Lighting, Inc.*, 2025 WL 1927503 (C.D. Ill. June 30, 2025), avoided confronting the regulatory guidance cited by the defendants by concluding that "Defendants might have a point" if "Plaintiff was indeed arguing that allocation of forfeitures toward offsetting employer contributions was always a breach

---

[8] *See, e.g.*, *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 863 (N.D. Cal. 2024) ("*Hutchins I*") ("Although neither authority forecloses Plaintiff's theory as a matter of law, the Court agrees with Defendants that these authorities may be considered as persuasive authority in evaluating the plausibility of Plaintiff's claims.").

[9] *See, e.g.*, *Hutchins v. HP Inc.*, 767 F. Supp. 3d 912, 922-23 (N.D. Cal. 2025) ("*Hutchins II*"), *appeal pending*, No. 25-826 (9th Cir. Feb. 7, 2025) (same theory of liability "is implausible in light of the long history of using forfeitures to reduce employer contributions."); *Wright v. JPMorgan Chase & Co.*, 2025 WL 1683642, at *4 (C.D. Cal. June 13, 2025), *appeal pending*, No. 25-4235 (9th Cir. July 9, 2025); ("Plaintiff's theory [] fails because it contravenes ERISA and decades of settled precedent."); *Cain v. Siemens Corp.*, 2025 WL 2172684, at *5 (D.N.J. July 31, 2025) (similar); *Middleton v. Amentum Parent Holdings, LLC*, 2025 WL 2229959, at *15 (D. Kan. Aug. 5, 2025) (similar); *Sievert v. Knight-Swift Transp. Holdings, Inc.*, 780 F. Supp. 3d 870, 878 (D. Ariz. 2025) (similar); *Armenta*, 2025 WL 2645518, at * 5 (similar); *Dimou II*, 2025 WL 2611240, at *6 (similar).

9

of the fiduciary duty of loyalty," but that "Plaintiff's position is more narrow" because he alleged the defendants must use forfeitures to pay plan expenses only when the company was financially healthy. 2025 WL 1927503, at \*11. As explained in this reply and in SAS' opening brief, the theory of liability in *Buescher*, which is the same theory that Plaintiffs offer here, is no more "narrow" than the theory rejected by the majority of courts. At bottom, the *Buescher* plaintiff—like these Plaintiffs—sought to impose a categorical limitation on the use of forfeitures that lacks any support in ERISA or the governing plan document. And, regardless, even if Plaintiffs' theory were "narrow" (which it is not), the *Buescher* court did not explain why a narrower theory would render decades of regulatory guidance irrelevant. It would not.

Plaintiffs' reliance on *Perez-Cruet v. Qualcomm Inc.*, 2024 WL 2702207 (S.D. Cal. May 24, 2024), is also misplaced. That court found the proposed Treasury regulation unpersuasive because "the regulation is proposed by the Secretary of the Treasury rather than the Secretary of the Department of Labor." *Id.* at \*7. But the court failed to acknowledge that pension plans fall within the regulatory authority of both the DOL and the Treasury Department, and ERISA requires those departments to coordinate when enforcing statutes. *See* 29 U.S.C. § 1204(a). As the DOL recently confirmed in its *Hutchins* amicus brief, "[t]he established understanding for . . . decades has been that defined contribution plans . . . may allocate forfeited employer contributions to pay benefits for remaining participants rather than using those funds to defray administrative expenses." Brief for the U.S. Sec'y of Labor, as Amici Curiae Supporting Respondents, *Hutchins v. HP Inc.*, No. 25-826, (9th Cir. July 9, 2025), Dkt. No. 24.1 at 1 ("DOL Br.").

Plaintiffs mostly ignore the DOL's position, asserting only that the DOL "has itself successfully brought claims to restore 'forfeited funds the Secretary [of Labor] says should've gone into [participant] accounts.'" Opp. at 24-25 (quoting *Su v. Allen*, 2023 WL 6323310, at \*2

(W.D. Ky. Sept. 28, 2023)). Taken out of context, this language is misleading. In the *Allen* family of cases, the DOL alleged that defendants *violated the plan document* by using forfeitures to reduce employer contributions, contrary to a plan provision stating that "forfeitures will be used to pay Plan expenses." *Walsh v. Allen*, 2022 WL 256312, at *5 (W.D. Ky. Jan. 26, 2022). Because the plan's terms required its fiduciaries to use forfeitures to pay plan expenses, those payments were a benefit provided by the plan. Here, Plaintiffs do not and cannot allege that SAS failed to follow the Plan's provisions. The DOL's positions in *Allen* and *Hutchins* underscore that ERISA has never been interpreted as precluding the use of forfeitures in the way Plaintiffs claim.

### 3. *Plaintiffs Challenge Settlor Conduct*

Plaintiffs' claims also fail because they challenge settlor—rather than fiduciary—conduct. *See* Mem. at 23-25. Plaintiffs concede SAS acted as a settlor when directing that forfeitures may be used to pay Plan benefits. Opp. at 22. They also acknowledge SAS' decisions over whether to charge Plan expenses to participants (or instead volunteer to pay such costs itself) are settlor decisions. *Id.* at 6. At bottom, these are the very decisions Plaintiffs challenge.

Plaintiffs allege SAS cannot fund employer contributions with forfeitures unless "SAS would be unable to satisfy its contribution obligations[.]" SAC ¶ 152. But as discussed, the law is clear that decisions about an employer's finances—i.e., how it uses its money and whether (and how much) it contributes to the Plan—are settlor decisions, not fiduciary ones. *Loomis v. Exelon Corp.*, 658 F.3d 667, 671 (7th Cir. 2011); *Greenbrier Hotel Corp. v. Unite Here Health*, 719 F. App'x 168, 180 (4th Cir. 2018). Plaintiffs' theory abrogates this basic principle and would void the Plan provision anticipating that participants will pay Plan costs. In short, Plaintiffs' theory impermissibly "override[s]" Plan provisions and requires SAS to alter the benefit scheme it effectuated as settlor. *Barragan II*, 2025 WL 2383652, at *4.

The Opposition's primary rejoinder is that the Plan also states "[t]he determination by the

Plan Administrator of the adjustments to the Individual Account balances for Employer Contributions, Forfeitures, payments, earnings and losses, and special charges will be conclusive." *See* Opp. at 23; SAC ¶ 59 (quoting Plan Doc. at 29). But this provision alone does not singlehandedly transform decisions about the Plan's funding and benefits from settlor decisions into fiduciary ones. "To the extent that Defendant established the Plan terms, it did so in its capacity as a 'settlor,' which does not give rise to fiduciary duties under ERISA." *Naylor v. BAE Systems, Inc.*, 2024 WL 4112322, at *7 (E.D. Va. Sept. 5, 2024). The same principle applies here.

### 4. *Plaintiffs Do Not Plausibly Allege Any Breach of Fiduciary Duty.*

Even if Plaintiffs challenged fiduciary conduct, they do not plausibly allege a breach of ERISA's duties of prudence or loyalty (Mem. at 25-28), and nothing in the Opposition changes that conclusion. Plaintiffs argue SAS relies on distinguishable cases where the plan documents *mandated* that the defendants use forfeitures to pay plan expenses, whereas the SAS Plan gives SAS discretion to use forfeitures either to pay Plan benefits *or* pay Plan expenses. Opp. at 21-24. Plaintiffs contend SAS' alleged discretion separates this case from those others, but Plaintiffs are wrong. Most of the forfeiture cases dismissed so far involve plan documents containing language similar to the language here—i.e., providing forfeitures may either be used to pay benefits *or* employer contributions. *See, e.g.*, *Armenta*, 2025 WL 2645518, at *3-4 (dismissing claims where "Plan terms permit the administrator to reallocate forfeitures to both administrative expenses and plan contributions"); *Barragan II*, 2025 WL 2383652, at *1 ("[t]he Plan gives Honeywell 'options' as to how to reallocate forfeitures"); *Cano*, 2025 WL 2589567, at *4 ("[t]he Plan allowed Home Depot to choose" how to use forfeitures ); *McWashington v. Nordstrom, Inc.*, 2025 WL 1736765, at *13 (W.D. Wash. June 23, 2025) (similar).[10] These courts held the defendants did not breach

---

[10] The Opposition claims that in *McWashington* the plan document dictates forfeitures must be applied "in a specific order." Opp. at 24 n.5. That is incorrect. As *McWashington* explains, only *non-forfeiture* funds

ERISA's fiduciary duties by using forfeitures to pay contributions instead of plan expenses.[11]

In contrast, the Opposition relies on cases where the plan document dictated that forfeitures *must* be used to pay plan expenses first. *See Stewart v. Nextera Energy, Inc.*, No. 9:23-cv-81314, Slip. Op. at 12 (S.D. Fla. Aug. 14, 2025) (plan provided forfeitures "*shall* be applied to reduce Plan administrative expenses" before being applied to reduce employer contributions); *McManus v. Clorox Co.*, 2025 WL 732087, at *3 (N.D. Cal., March 3, 2025) (employer's matching contributions were *mandatory* so that defendant's decision to use forfeitures toward that obligation resulted in fewer contributions to the plan than promised ); *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935, 944 (N.D. Cal. 2024) (plaintiff plausibly alleged defendants violated plan document). Thus, these cases are inapposite and do not support Plaintiffs' fiduciary-breach claims.[12]

Plaintiffs also insist they are not seeking a blanket prohibition on using forfeitures to reduce SAS' employer contributions, but rather ask the Court to order SAS to use forfeitures for their preferred purpose only when SAS can afford to do so. Opp. at 27-29. Plaintiffs' theory remains no less overbroad or implausible than the one rejected in *Hutchins II* and other cases.[13] As in those cases, Plaintiffs ask the Court to mandate that SAS use forfeitures to provide Plan participants the

---

in the plan's suspense account are subject to this requirement, while *forfeiture* funds "shall be used to reduce the Employer contribution obligations or to pay expenses of Plan administration, as determined by the Retirement Committee in its sole discretion." 2025 WL 1736765, at *13.

[11] *See also Hutchins II*, 767 F. Supp. 3d at 919 (HP "has control over how those forfeited matching contributions are used"); *Dimou II*, 2025 WL 2611240, at *2 (similar); *Estay*, 2025 WL 2644782, at *3 (similar); *Bozzini v. Ferguson Enters. LLC*, 2025 WL 1547617, at *2 (N.D. Cal. May 29, 2025) (similar); *Madrigal v. Kaiser Found. Health Plan, Inc*., 2025 WL 1299002, at *3 (C.D. Cal. May 2, 2025) (similar).

[12] And unlike *Perez-Cruet*, there are no allegations that SAS owed any "delinquent" contributions, in violation of its obligations under the Plan. Pl.'s Opp'n to Defs' Mot. for Reconsideration, *Perez-Cruet v. Qualcomm Inc.*, No. 3:23-cv-01890 (S.D. Cal. July 22, 2024) Dkt. 24 at 9 (distinguishing *Hutchins* because *Perez-Cruet* involved "delinquent contributions").

[13] *See also Barragan II*, 2025 WL 2383652, at *4-5 (dismissing fiduciary-breach claims based on Hutchins' reasoning); *Bozzini*, 2025 WL 1547617, at *2 (same); *Wright*, 2025 WL 1683642, at *5 (same); *Dimou II*, 2025 WL 2611240, at *6 (same); *Madrigal*, 2025 WL 1299002, at *5 (same); *McWashington*, 2025 WL 1736765, at *14-15 (same); *Sievert*, 780 F. Supp. 3d at 877-78 (same).

13

benefit of free administrative services. Plaintiffs' mandate would limit SAS' settlor authority to make decisions about Plan contributions and expenses in violation of ERISA. Plaintiffs' theory is not narrow at all but a wholesale limitation on SAS' decision-making.

SAS' opening brief explained how the duty of prudence and a fiduciary's actions must be evaluated "under the circumstances then prevailing." 29 U.S.C. § 1104(a)(1)(B). Here, those circumstances include decades of legal guidance supporting SAS' use of forfeitures, including existing and proposed Treasury regulations, common practice, and Congressional guidance. Those circumstances also include the Plan document itself, which fiduciaries are obligated to follow. *Id*. § 1104(a)(1)(D). Indeed, Plaintiffs concede that using forfeitures as SAS did was permissible under the Plan. These prevailing circumstances render Plaintiffs' claim implausible.[14]

Plaintiffs' loyalty claim also fails because it relies on a selective reading of 29 U.S.C. § 1104(a)(1). That provision instructs fiduciaries to act for "the exclusive purpose" of both "providing benefits to participants" and "defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). Using forfeitures to offset employer contributions fulfills the duty of loyalty. It is clearly in the "interest" of any participant who receives reallocated contributions forfeited by other participants. And "the fact that reallocation of the forfeited amounts will reduce the amount that [SAS] contributes as matching contributions in the future does not make" the process illegal. *Hutchins I*, 737 F. Supp. 3d at 868. Nor is it plausible that paying benefits to participants, as the Plan expressly allows, could be "self-dealing," given the settled practice and regulatory history summarized above.

---

[14] Plaintiffs' only response is that ERISA "makes clear that the duty of prudence trumps the instructions of a plan document." Opp. at 21 (citing *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 420 (2014)). But *Dudenhoeffer* addressed a different issue, where an employee stock ownership plan squarely contradicted a competing duty of diversification codified expressly in ERISA, 29 U.S.C. § 1104(a)(1)(C). That is not true here, where the duty Plaintiffs allege—to use forfeitures to pay plan-related expenses—is indisputably not stated in ERISA's text.

### 5. Plaintiffs Do Not State an Anti-Inurement Claim.

Plaintiffs' own authority recognizes that "anti-inurement claims require 'a removal of plan assets for the benefit of the plan sponsor or anyone other than the plan participants,'" and that allegations that a defendant "received indirect and incidental benefits" are insufficient. *McManus v. Clorox Co.*, 2024 WL 4944363, at *7 (N.D. Cal. Nov. 1, 2024) (citation omitted); *see* Mem. at 28-30. Plaintiffs' claim fails for that straightforward reason.

The Opposition relies on several distinguishable cases. For example, Plaintiffs liken this case to *Chao v. Malkani*, 452 F.3d 290 (4th Cir. 2006), which held the defendants violated ERISA's anti-inurement provision by using plan assets to their own benefit. *Id.* at 298. But *Chao* is nothing like this case. In *Chao,* the plaintiffs alleged defendants "*attempt[ed] to raid the plan's assets and deprive employees of vested benefits*." *Id.* at 291 (emphasis added). The court concluded the defendants' actions "constitute[d] an egregious misuse of authority" because they made "repeated efforts to plunder the Plan's assets" by *removing money from the plan* that was meant to be used to pay *promised benefits* to participants. *Id.* at 291-294. In stark contrast to *Chao,* Plaintiffs here do not (and could not) allege that SAS removed any assets from the Plan, and SAS is using the disputed forfeitures to *pay* benefits under the Plan.[15]

### 6. Plaintiffs' Failure-to-Monitor Claim Fails

Plaintiffs' duty-to-monitor claim is wholly derivative of their other claims, and because those claims fail, Count IV does as well. *Tullgren*, 2023 WL 2307615, at *8.

## III. CONCLUSION

The Court should dismiss the Second Amended Complaint with prejudice.

---

[15] As another example, in *Rodriguez*, the plaintiff plausibly alleged a breach of the anti-inurement provisions because the plan explicitly *prohibited* the use of forfeitures to reduce employer contributions. 744 F. Supp. 3d at 946. There are no such allegations here (nor does the Plan document prohibit such use).

Dated: October 23, 2025

*/s/ Deborah S. Davidson*
Deborah S. Davidson (*pro hac vice*)
Matthew A. Russell (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
110 N. Wacker Drive
Chicago, IL 60606
Telephone: 1.312.324.1000
Facsimile: 1.312.324.1001
deborah.davidson@morganlewis.com
matthew.russell@morganlewis.com

Jared R. Killeen (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, PA 19103
Telephone: 1.215.963.5000
Facsimile: 1.215.963.5000
jared.killeen@morganlewis.com

Pressly M. Millen (NC Bar No. 16178)
**WOMBLE BOND DICKINSON LLP**
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone:  919.755.2135
Facsimile:  919.755.6067
press.millen@wbd-us.com

*Attorneys for Defendants*